IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –x
                                                          :
HOWARD HESS DENTAL LABORATORIES                           :
INCORPORATED and PHILIP GUTTIEREZ d/b/a                   :
DENTURES PLUS, on behalf of themselves and all others     :
similarly situated,                                       :
                                                          :
             Plaintiffs,                                  :        C.A. No. 99-255 (SLR)
                                                          :
       -against-                                          :
                                                          :
DENTSPLY INTERNATIONAL, INC.,                             :
                                                          :
             Defendant.                                   :
                                                          :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –x


**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF**

Pamela S. Tikellis (No. 2172)
Robert J. Kriner, Jr. (No. 2546)
A. Zachary Naylor (No. 4439)
CHIMICLES & TIKELLIS LLP
One Rodney Square
P.O. Box 1035
Wilmington Delaware 19801
(302) 656-2500

Thomas A. Dubbs (NY Bar No.4868)
Richard T. Joffe (NY Bar No. 2712)
LABATON SUCHAROW & RUDOFF LLP
100 Park Avenue
New York, New York 10017-5563
(212) 907-0700

October 23, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING ...................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 5

STATEMENT OF FACTS ................................................................................................ 7

ARGUMENT ........................................................................................................................ 9

I.    SUMMARY JUDGMENT IS APPROPRIATE WHERE, AS HERE, THERE ARE
      NO GENUINE ISSUES OF MATERIAL FACT ............................................... 9

II.   DENTSPLY IS LIABLE FOR MONOPOLY MAINTENANCE IN VIOLATION
      OF SECTION 2 OF THE SHERMAN ACT ...................................................... 10

      A.    The Elements of Monopoly Maintenance ................................................ 10

      B.    The Elements and Application of Collateral Estoppel ......................... 10

      C.    Dentsply is Collaterally Estopped from Contesting its Liability For
            Monopoly Maintenance in Violation of Section 2 of the Sherman Act ............ 12

            1.    The Third Circuit Decision Holds Dentsply Liable for the Violation
                  Here at Issue ........................................................................................ 12

            2.    The Elements of Collateral Estoppel Based On the Third Circuit
                  Decision are Satisfied ........................................................................ 13

III.  PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF AGAINST
      DENTSPLY'S UNLAWFUL CONDUCT ........................................................... 15

      A.    Availability of Injunctive Relief Under Section 16 of the Clayton Act ........ 15

            1.    Standing Requirements are Reduced for Injunctive Relief Under the
                  Antitrust Laws ...................................................................................... 15

            2.    Private Plaintiffs may be Granted Injunctive Relief Even Against
                  Conduct Already Enjoined on Behalf of the Government .............. 16

            3.    The Public Interest Must be Central to any Determination Regarding
                  Whether to Grant an Injunction Against a Statutory Violation ....... 18

      B.    The Requirements for Injunctive Relief are Satisfied Here ................. 19

1.    Plaintiffs are Threatened by Injury Proximately Resulting from Dentsply's Unlawful Conduct..................................................................... 19

    (a)    Plaintiffs Have Been Injured by Dentsply's Unlawful Conduct ........ 19

    (b)    There is a Cognizable *Threat* of Injury to Plaintiffs............................ 20

2.    The Public Interest Supports Granting Plaintiffs Injunctive Relief................ 22

IV.    PROPOSED RELIEF.......................................................................................... 24

    A.    Injunctive Provisions Similar to Those Already Granted to the Government .......... 24

    B.    Additional Provisions Not Already Contained in the Government's Injunction ..................................................................................................... 25

CONCLUSION ................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page**

### CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................................ 10

*Bell v. Dow Chem. Co.,*
847 F.2d 1179 (5th Cir. 1988) ................................................................................................ 20

*Brewer v. Southern Union Co.,*
607 F. Supp. 1511 (D. Colo. 1984) ......................................................................................... 23

*Burlington N.R.R. Co. v. Hyundai Merch. Marine Co.,*
63 F.3d 1227 (3d Cir. 1995) .................................................................................................... 11

*California v. American Stores,*
495 U.S. 271 (1990) ................................................................................................................ 29

*Commodity Futures Trading Comm'n v. Hunt,*
591 F.2d 1211 (7th Cir. 1979) ................................................................................................ 15

*Eastman Kodak Co. v Technical Servs., Inc.,*
504 U.S. 451 (1992) ................................................................................................................ 10

*Eazor Express, Inc. v. Gen. Teamsters Local 326,*
388 F. Supp. 1264 (D. Del. 1975) ...................................................................................... 11, 14

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.,*
424 F.3d 363 (3d Cir. 2005) .................................................................................................. 3, 6

*Illinois Brick v. Illinois,*
431 U.S. 720 (1977) ........................................................................................................ 3, 7, 15

*Int'l Salt Co. v. United States,*
332 U.S. 392 (1947) ................................................................................................................ 28

*Massachusetts v. Microsoft Corp.,*
373 F.3d 1199 (D.C. Cir. 2004) ..................................................................................... 17 18, 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ............................................................................................................. 9, 10

*McCarthy v. Recordex Serv., Inc.,*
80 F.3d 842 (3d Cir. 1996) ...................................................................................................... 16

*Mid-West Paper Prods. Co. v. Cont'l Group, Inc.,*
   596 F.2d 573 (3d Cir. 1979) ............................................................................. *passim*

*Molnar v. Wibbelt,*
   789 F.2d 244 (3d Cir. 1986) ..........................................................................7, 9, 24

*Montana v. United States,*
   440 U.S. 147 (1979) ................................................................................................ 10

*In re Nat'l Credit Mgmt. Group, LLC,*
   21 F. Supp. 2d 424 (D.N.J. 1998) ..................................................................... 19, 21

*Nat'l RR Passenger Corp. v. Pa. Pub. Util. Comm'n,*
   342 F.3d 242 (3d Cir. 2003) .............................................................................. *passim*

*Nat'l Soc'y of Prof'l Eng'rs v. United States,*
   435 U.S. 679 (1978) ................................................................................................ 28

*Nationwide Mutual Ins. Co. v. Automotive Serv. Councils, Inc.,*
   490 F. Supp. 282 (D. Del. 1980) ........................................................................... 19

*New York v. Julius Nasso Concrete Corp.,*
   202 F.3d 82 (2d Cir. 2000) ...........................................................................5, 11, 14

*New York v. Microsoft Corp.,*
   224 F. Supp. 2d 76 (D.D.C. 2002) ................................................................... 17, 18

*Parklane Hosiery Co., Inc. v. Shore,*
   439 U.S. 322 (1979) .....................................................................................11, 12, 13, 14

*Pennsylvania Coal Ass'n v. Babbitt,*
   63 F.3d 231 (3d Cir. 1995) ..................................................................................... 10

*Stone & Webster, Inc. v. Shaw Group, Inc.,*
   No. 00-2142 (PJW), ADV. 01-2766 (PJW), Civ. 04-834-SLR,
   2005 WL 1036556 (D. Del. May 3, 2005) ............................................................ 9

*The Serpa Corp. v. Mcwane, Inc.,*
   199 F.3d 6 (1st Cir. 1999) ..................................................................................... 19

*United States v. Borden Co.,*
   347 U.S. 514 (1954) ........................................................................................6, 16, 20

*United States v. Dentsply Int'l, Inc.,*
   277 F. Supp. 2d 387 (D. Del. 2003), *rev'd*, 399 F.3d 181 (3d Cir. 2005),
   *cert. denied*, 126 S. Ct. 1023 (2006) ............................................................... *passim*

*United States v. Dentsply Int'l, Inc.,*
   399 F.3d 181 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 1023 (2006) ................... *passim*

*United States v. Dentsply Int'l, Inc.*,
   No. CIV. A. 99-005-SLR, 99-255-SLR, 99-854-SLR,
   2001 WL 624807 (D. Del. Mar. 30, 2001) .................................................................... 3

*United States v. Dentsply Int'l, Inc.*,
   126 S. Ct. 1023 (2006) ........................................................................................... *passim*

*United States v. Dentsply Int'l, Inc.*,
   No. Civ. A. 99-005(SLR), 2006 WL 2612167 (D. Del. Apr. 26, 2006) ........................ *passim*

*United States v. Microsoft Corp.*,
   231 F. Supp. 2d 144 (D.D.C. 2002) ........................................................................ 17, 18

*Warfarin Sodium Antitrust Litig.*,
   214 F.3d 395 (3d Cir. 2000) .......................................................................... 5, 15, 24

*Westwood Lumber Co. v. Weyerhaeuser Co.*,
   No. CV 03-551 PA, 2003 WL 24892052 (D. Or. Dec. 29, 2003) ................................. 11

*Wilk v. AMA*,
   895 F.3d 352 (7th Cir. 1990) ....................................................................................... 21

*Wolstein v. Docteroff*,
   133 F.3d 210 (3d Cir. 1997) .......................................................................... 11, 14, 20

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ................................................................................................. *passim*

## STATUTES

15 U.S.C. § 1 ............................................................................................................................ 1

15 U.S.C. § 2 ............................................................................................................................ 1

15 U.S.C. § 14 .......................................................................................................................... 1

15 U.S.C. § 26 ...................................................................................................................... 6, 12

## RULES

Fed. R. Civ. P. 56(e) ............................................................................................................... 10

**OTHER AUTHORITY**

2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 326a (2d ed. 2000) ................................ 29

2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 335a (2d ed. 2000) ................................ 16

*Developments in the Law: Injunctions*, 78 Harv. L. Rev. 994 (1965)................................................. 26

8 Julian O. von Kalinowski, Peter Sullivan, Maureen McGuirl,
  *Antitrust Laws and Trade Regulation*, § 172.02[1] (2006) ...................................................... 16

Plaintiffs have been injured, and are threatened with recurring injury by Defendant Dentsply's conduct that, in a separate suit brought by the Government, has been held by the Third Circuit to violate the federal antitrust laws.  Based upon the Government's judgment and other findings of fact by this Court, Plaintiffs are entitled to summary judgment on their claim against Dentsply for exclusive dealing/monopoly maintenance, and are entitled to an injunction prohibiting the recurrence of Dentsply's unlawful conduct.

## NATURE AND STAGE OF THE PROCEEDING

On April 21, 1999, Plaintiffs filed the Complaint herein against the sole Defendant, Dentsply Int'l, Inc.  D.I. 1.

The Complaint pleads causes of action, based on Dentsply's exclusive dealing, for monopoly maintenance, attempt to monopolize, and conspiracy to monopolize, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and restraint of trade in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14.  D.I. 1, at 18-25.

The Complaint alleges that the relevant market is "the market for prefabricated, artificial teeth in the United States," alleges that each of the named Plaintiffs is a dental laboratory purchaser of artificial teeth manufactured by Dentsply, and purports to bring this action as a class action on behalf of all dental laboratories who have purchased Dentsply teeth through Dentsply dealers, or lost the opportunity to buy other manufacturers' teeth, during the period from January 1, 1987, through the filing of the Complaint.  D.I. 1, ¶¶ 4-5, 8, 10.

The Complaint asks for both damages and equitable relief—the latter including an injunction as well as a declaratory judgment.  D.I. 1, ¶¶ 58, 64, 71, 80, 86 and Prayer for Relief.

Although other private parties attempted to bring suit against Dentsply for the same violations alleged herein, each such other suit was eventually terminated before judgment on the

merits, and Plaintiffs are the only private litigants still maintaining suit against Dentsply for its exclusive dealing practices in violation of Section 2 of the Sherman Act.

Several months prior to Plaintiffs filing the Complaint, on January 5, 1999, the Government filed suit against Dentsply regarding the same exclusive dealing conduct alleged herein. *See* Affidavit of Richard T. Joffe, filed herewith ("Joffe Aff.") Ex. A. The Government's complaint pled just a single cause of action under Section 2 of the Sherman Act—alleging Dentsply has "abused its monopoly power in the relevant market"—and a single, separate cause of action for violation of both Section 1 of the Sherman Act and Section 3 of the Clayton Act—alleging that Dentsply's conduct caused a substantial lessening of competition and unreasonably restrained trade in the relevant market. Like Plaintiffs' complaint, the Government's complaint alleged that the relevant market is "the sale of prefabricated, artificial teeth in the United States." The Government's complaint requested only equitable relief. Joffe Aff., Ex. A, at Introductory Para., ¶¶ 5, 40-44, & Request for Relief.

Although the Complaint herein adds causes of action not pled by the Government—i.e., for attempt to monopolize and conspiracy to monopolize—and asks for relief not asked for by the Government—i.e., money damages—the allegations of unlawful conduct by Dentsply are the same in both complaints. In his Opinion, dated October 29, 1999, determining Dentsply's motion for consolidation of pretrial proceedings in this case, the Government's case, and a third case then pending, Senior District Judge Murray M. Schwartz stated that there was a "virtual correspondence of the substantive antitrust allegations in the three cases," and that such allegations in the three complaints were "nearly identical." D.I. 64, at 7, 9.

Despite the identical nature of the substantive allegations pled by Plaintiffs herein and by the Government in its own case, the Government opposed the motion by Dentsply to consolidate, and

Judge Schwartz denied the motion, stating that consolidation would be contrary to "a clear public policy of prioritizing prompt resolution of Government antitrust claims." D.I. 64, at 4, 12.[1]

On April 3, 2000, Dentsply moved for summary judgment against Plaintiffs on, among other grounds, that Plaintiffs lacked standing under the rule of *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), to recover damages from Dentsply, because only Dentsply's dealers are direct purchasers from Dentsply.

In a Memorandum Opinion and Order, dated March 30, 2001, the Court granted Dentsply's motion "to the extent that the *Hess* plaintiffs seek damages." *United States v. Dentsply Int'l, Inc.*, No. CIV. A. 99-005-SLR, 99-255-SLR, 99-854-SLR, 2001 WL 624807, at *13 (D. Del. Mar. 30, 2001); D.I. 182, at 33. The Court also held that "[Dentsply's] motion is denied to the extent that [the *Hess* plaintiffs] seek injunctive relief." 2001 WL 624807, at *13; D.I. 182, at 33.

As this Court is aware, by Order, dated January 28, 2004, the Court certified for interlocutory appeal to the Third Circuit its order dismissing Plaintiffs' damages claims against Dentsply. D.I. 234.

On September 21, 2005, the Third Circuit issued its decision regarding Plaintiffs' appeal, which, among other things, affirmed the Court's decision dismissing Plaintiffs' damages claims herein against Dentsply. *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363 (3d Cir. 2005).

While the issues regarding Plaintiffs' standing to sue Dentsply for damages were being resolved herein, the Government's case against Dentsply was being resolved on the merits.

---

[1] Because counsel for the Government represented to Plaintiffs that consolidation of Government cases with the cases of private plaintiffs is contrary to the policy of the Antitrust Division of the Department of Justice, Plaintiffs took no position on the motion.

After a bench trial, the Court entered judgment for Dentsply. *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 453 (D. Del. 2003) ("Trial Court Decision"), *rev'd*, 399 F.3d 181 (3d Cir. 2005).

The Government appealed, and the Third Circuit reversed, holding that Dentsply's exclusive dealing had "effectively choked off the market for artificial teeth" made by Dentsply's competitors, and that Dentsply is liable for violating Section 2 of the Sherman Act, and instructed the District Court to enter an injunction. *United States v. Dentsply*, 399 F.3d 181, 196-97 (3d Cir. 2005) ("Third Circuit Decision").

Dentsply petitioned for certiorari, and its petition was denied. *See United States v. Dentsply Int'l, Inc.*, 126 S. Ct. 1023 (2006).

On April 26, 2006, the Court issued a final judgment granting the Government an injunction against Dentsply's exclusive dealing practices. *United States v. Dentsply Int.'l, Inc.*, No. Civ. A. 99-005(SLR), 2006 WL 2612167 (D. Del. Apr. 26, 2006). In the briefing regarding the Government's motion for entry of the final judgment, the Government proposed that the injunction have a term of 10 years, Dentsply responded that the injunction should have a term of five years (Joffe Aff., Ex. B, at 1-2), and the Court, without elaborating on its rationale, granted an injunction of 7 and 1/2 years, 2006 WL 2612167, at *4.

By Order, dated August 22, 2006, the Court ordered the parties herein to "meet and confer on how to proceed," and to file written proposals with the Court. D.I. 250.

By letter filed with the Court, dated September 1, 2006, Plaintiffs informed the Court that the parties herein "have agreed to proceed by briefing Plaintiffs' proposed motion for summary judgment," requesting "an injunction and related relief, based on the fact that, in the Government's case, Dentsply has already been found liable for the violation alleged by the *Hess* plaintiffs." Plaintiffs' letter also stated the briefing schedule to which the parties had agreed. D.I. 252.

## SUMMARY OF ARGUMENT

Dentsply has long dominated the industry of manufacturing artificial teeth, with a 75%-80% share of the market.

Plaintiffs are dental laboratories, and dental laboratories are the ultimate consumers of artificial teeth.

Plaintiffs have brought a claim herein against Dentsply for monopoly maintenance regarding the market for the sale of artificial teeth in the United States, in violation of Section 2 of the Sherman Act, based on Dentsply's exclusive dealing practices involving its dealers.

Dentsply's liability for this violation has already been established in a separate suit brought by the United States Department of Justice against Dentsply, and determined by a decision of the Third Circuit Court of Appeals. *United States v. Dentsply*, 399 F.3d 181, 196-97 (3d Cir. 2005).

All the elements necessary for the application herein of collateral estoppel based on the Third Circuit's decision are present. *Nat'l RR Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 252 (3d Cir. 2003).

Therefore Dentsply is collaterally estopped from contesting its liability herein for monopoly maintenance in violation of Section 2 of the Sherman Act. *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 85 (2d Cir. 2000).

Under Section 16 of the Clayton Act, in order for a private plaintiff to show its "entitlement to injunctive relief" under the federal antitrust laws, such plaintiff need only demonstrate "(1) threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged antitrust injury." *Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000).

Moreover, the public interest must be taken into account, when determining whether to grant an injunction to prohibit violation of the antitrust laws, and enforcement of the antitrust laws is in the public interest. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 131 (1969). Still

further, although the Government has already been granted an injunction against Dentsply's unlawful conduct, such a circumstance is no bar to private plaintiffs also being granted an injunction against the same conduct. *United States v. Borden Co.*, 347 U.S. 514, 517-18, 520 (1954); *Mid-West Paper Prods. Co. v. Cont'l Group, Inc.*, 596 F.2d 573, 594-95 (3d Cir. 1979).

Here, the Third Circuit has already held that dental laboratories have been injured by Dentsply's violation of Section 2 of the Sherman Act, and has implicitly held that there is a cognizable threat that the injury will recur. *United States v. Dentsply*, 399 F.3d at 190-91, 194, 196-97. Moreover, Dentsply's conduct provides substantial reason to believe that its violation of Section 2 will recur. Still further, the threat of injury to Plaintiffs is magnified because, in *Howard Hess Dental Laboratories, Inc. v. Dentsply*, 424 F.3d 363, 384 (3d Cir. 2005), the Third Circuit has already determined that, as *indirect* purchasers from Dentsply, Plaintiffs are barred from ever recovering any damages for any injury they might suffer as a result of Dentply's exclusive dealing/monopoly maintenance.

Here too, even though an injunction of limited duration against Dentsply's unlawful conduct has already been granted to the Government, the public interest will be served by also granting an injunction to Plaintiffs. The public interest will be served by granting Plaintiffs such an injunction because, first, the injunction granted to the Government is of limited duration and omitted to enjoin certain conduct crucial to preventing a recurrence of Dentsply's unlawful conduct, and, second, because, as the ultimate consumers of Dentsply's teeth, Plaintiffs and other dental laboratories are uniquely well positioned to monitor Dentsply's relevant conduct, and because there are 7,000 dental laboratories in such a position.

Therefore Plaintiffs are entitled to summary judgment on their claim for monopoly maintenance in violation of Section 2 of the Sherman Act, and an injunction against Dentsply's

unlawful conduct. *Molnar v. Wibbelt*, 789 F.2d 244, 249 (3d Cir. 1986) (affirming grant of summary judgment and injunctive relief to plaintiff).

Plaintiffs request that they be granted an injunction that contains some, but not all, of the terms contained in the injunction already granted to the Government in *United States v. Dentsply*, No. Civ. A. 99-005 (SLR), along with certain *other* terms not already contained in the Government's injunction.

## STATEMENT OF FACTS

"Dentsply has long dominated the [artificial tooth manufacturing] industry [with] a 75%-80% share on a revenue basis." Third Circuit Decision, 399 F.3d at 184. "[Dental] laboratories are the ultimate consumers because they buy the teeth at the point in the process where they are incorporated into another product." *Id.* at 188.[2]

Dentsply sells its teeth to dental dealers, "[t]he dealers, in turn, supply the teeth . . . to dental laboratories." *Id.* at 184. Although an "insignificant number" of "Dentsply's competitors" sell "directly to the dental laboratories," it is "impractical for a manufacturer to rely on direct distribution to the laboratories in any significant amount." *Id.* at 193. "The undeniable reality . . . is that dealers have a controlling degree of access to the laboratories." *Id.* at 193.

"[T]he relevant market here is the sale of artificial teeth in the United States both to laboratories and to the dental dealers." *Id.* at 188.

"[T]he dealer field has experienced significant consolidation." *Id.* at 185. The particular dealers who sell Dentsply's teeth are "the key dealers." *Id.* at 190. Dentsply dealers have a

---

[2] Dentsply does not contest that Plaintiffs are dental laboratory purchasers of Dentsply's teeth. Indeed, when Plaintiffs appealed the Court's *Illinois Brick* decision to the Third Circuit, Dentsply contributed to the Joint Appendix examples of invoices for sales of Dentsply teeth to Plaintiff Hess. *See* Joffe Aff., Ex. C.

"dominant position" as a "gateway to the laboratories." *Id.* at 195. "*The reality in this case is that the firm that ties up the key dealers rules the market.*" *Id.* at 190. (emphasis added).

Since at least the late 1980's Dentsply has applied an exclusive dealing policy that has "tie[d] up the key dealers," *id.*, and thus "choked off the market" from other manufacturers, *id.* at 196. *See* 277 F. Supp. 2d 387, at 415 (in 1988, Dentsply terminated Frink Dental, because Frink began selling the teeth of a competitor of Dentsply).

Dentsply's exclusive dealing policy includes its termination of any Dentsply dealer who adds to its tooth lines any line of a competitor of Dentsply:

> For more than fifteen years, Dentsply has operated under a policy that discouraged its dealers from adding competitors' teeth to their lines of products. In 1993, Dentsply adopted 'Dealer Criterion 6.' It provides that . . . authorized [Dentsply] dealers 'may not add further tooth lines to their product offering.' [Dentsply's relationship with a dealer] is essentially terminable at will. Dealer Criterion 6 was enforced against dealers with the exception of those who had carried competing products before 1993 and were 'grandfathered' for sales of those products. Dentsply rebuffed attempts by those particular distributors to expand their lines of competing products beyond the grandfathered ones.

Third Circuit Decision, 399 F.3d at 185.

Dentsply's exclusive dealing policy also includes Dentsply's requirement that any new dealer agree "not to handle competitors' teeth," before Dentsply will authorize the dealer to carry Dentsply's teeth. *Id.* at 190.

"There is no ground to doubt the effectiveness of the exclusive dealing arrangement." *Id.* at 193. Given Dentsply's dominant market share, its "all-or-nothing" policy "create[s] a strong economic incentive for dealers to reject competing lines in favor of Dentsply's teeth." *Id.* at 195-96. As a result, Dentsply has achieved "supremacy over the dealer network and it was at that crucial point in the distribution chain that monopoly power over the market for artificial teeth was established." Id. at 190.

Dentsply's exclusive dealing has had anti-competitive effects. It "helps keep sales of competing teeth below the critical level necessary for any rival to pose a real threat to Dentsply's market share. *Id.* at 191. In addition, it artificially raises the prices for artificial teeth. *Id.* at 190-91 ("experts for both parties testified that were Dealer Criterion 6 abolished, prices would fall"). Also of great importance here, it "limits the choices of products open to dental laboratories, the ultimate users." Id. at 194.

Finally, "[t]he record amply supports the District Court's conclusion that Dentsply's alleged justification was pretextual and did not excuse its exclusionary practices." *Id.* at 197.

"Dentsply's exclusionary policies and particularly Dealer Criterion 6 violated Section 2 [of the Sherman Act]." *Id.* at 196. In other words, Dentsply's "maintenance of its monopoly by unfair practices" violated Section 2 of the Sherman Act. *Id.*

## ARGUMENT

### I.

### SUMMARY JUDGMENT IS APPROPRIATE WHERE, AS HERE, THERE ARE NO GENUINE ISSUES OF MATERIAL FACT

The Third Circuit has held that "summary judgment is appropriate if, after all reasonable inferences are drawn in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Molnar v. Wibbelt*, 789 F.2d 244, 249 (3d Cir. 1986) (affirming grant of summary judgment *and* injunctive relief to plaintiff).

In deciding a motion for summary judgment, "[t]he moving party bears the burden of proving that no genuine issue of material fact exists." *Stone & Webster, Inc. v. Shaw Group, Inc.*, No. 00-2142 (PJW), ADV. 01-7766 (PJW), Civ. 04-834-SLR, 2005 WL 1036556, at *5 (D. Del. May 3, 2005) (Robinson, C.J.) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986)). "If the moving party has demonstrated an absence of material fact, the nonmoving party

then 'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.*

(citing *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)))." "The court will 'view the

underlying facts and all reasonable inferences therefrom in the light most favorable to the party

opposing the motion.'" *Id.* (quoting *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.

1995))." "The mere existence of some evidence in support of the nonmoving party, however, will

not be sufficient for denial of a motion for summary judgment; there must be enough evidence to

enable a jury reasonably to find for the nonmoving party on that issue." *Id.* (citing *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## II.

## DENTSPLY IS LIABLE FOR MONOPOLY MAINTENANCE IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT

### A.    The Elements of Monopoly Maintenance

The Third Circuit has held that, under Section 2 of the Sherman Act, a claim for monopoly

maintenance consists of "two elements:  (1) possession of monopoly power and (2) '[willful]

maintenance of that power as distinguished from growth or development as a consequence of a

superior product, business acumen, or historic accident.'" Third Circuit Decision, 399 F.3d at 186

(quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 480 (1992)) .  Where the first

element—monopoly power—is  present, exclusive dealing arrangements will satisfy the second

element, providing that the exclusive dealing arrangements have an "anti-competitive effect." *Id.* at

187.  If these elements are established, the defendant can escape liability only if it can prove that it

has a legitimate "business justification" for the exclusionary practices.  *Id.*

### B.    The Elements and Application of Collateral Estoppel

Under the doctrine of "collateral estoppel," "once an issue is actually and necessarily

determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits

based on a different cause of action involving a party to the prior litigation." *Montana v. United States*,

440 U.S. 147, 153 (1979).  Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Even "a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding. *Parklane*, 439 U.S. at 326 (reversing denial of partial summary judgment to stockholder class, and basing reversal on judgment after nonjury trial, in another action, in favor of SEC); *see Nat'l RR Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 246, 253, 260 (3d Cir. 2003) (affirming order that, based on offensive collateral estoppel, partly granted motion for preliminary injunction); *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995) (reversing refusal to apply offensive collateral estoppel).

Summary judgment may be granted based on collateral estoppel.  *Wolstein v. Docteroff*, 133 F.3d 210, 212-14, 217 (3d Cir. 1997) (granting plaintiff summary judgment, based on offensive collateral estoppel); *see Parklane*, 439 U.S. at 326 (reversing denial of partial summary judgment to stockholder class, and basing reversal on judgment after nonjury trial, in another action, in favor of SEC); *Eazor Express, Inc. v. Gen. Teamsters Local 326*, 388 F. Supp. 1264, 1265, 1269 (D. Del. 1975) (granting summary judgment to plaintiff on issue of liability, based on prior decision of NLRB enforced by the Court of Appeals for the Third Circuit).

Moreover, "courts often apply issue preclusion in antitrust cases."  *Westwood Lumber Company, Inc. v. Weyerhaeuser Co.*, No. CV 03-551 PA, 2003 WL 24892052, at *3 (D. Or. Dec. 29, 2003).

Indeed, based on collateral estoppel, courts grant summary judgment in antitrust cases.  *See New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 85 (2d Cir. 2000) (based on collateral estoppel, affirming order granting summary judgment to plaintiff "on the issue of antitrust liability," and

leaving issue of damages for trial); *Westwood Lumber*, 2003 WL 24892052, at *6-8, (granting summary

judgment to plaintiff on liability for monopolization).

When determining the preclusive effect of a prior federal action,

> [t]he elements for collateral estoppel are satisfied when: (1) the issue
> sought to be precluded [is] the same as that involved in the prior
> action (2) that issue [was] actually litigated; (3) it [was] determined by
> a final and valid judgment; and (4) the determination [was] essential
> to the prior judgment.

*Nat'l RR Passenger Corp.*, 342 F.3d at 252.[3]

**C.      Dentsply is Collaterally Estopped from Contesting its Liability
For Monopoly Maintenance in Violation of Section 2 of the Sherman Act**

> **1.      The Third Circuit Decision Holds Dentsply
> Liable for the Violation Here at Issue**

Count II of the Complaint alleges that Dentsply is liable for "monopolization in violation of

Section 2 of the Sherman Act," based on its policy of exclusive dealing with its dental dealers.

D.I. 1, at 18-19.  As shown in detail by the FACTS section, *supra*, Dentsply has already been held

liable for this violation by the Third Circuit.

Specifically, both elements of the violation of monopolization in violation of Section 2 (also

called "monopoly maintenance") have been established:

(1)  Through Dentsply's "supremacy over the dealer network . . . monopoly power over the

market for artificial teeth was established."  399 F.3d at 190.

(2)  Dentsply has "[maintained] its monopoly by unfair practices."  Id. at 196.

Moreover, the Third Circuit has explicitly held that "Dentsply's exclusionary policies and

particularly Dealer Criterion 6 violated Section 2 [of the Sherman Act]."  *Id.* at 196.

---

[3] A court may decline to apply offensive collateral estoppel, under certain circumstances that
would make such application "unfair" to the defendant.  *Parklane Hosiery Co.*, 439 U.S. at 331.

2.    **The Elements of Collateral Estoppel Based
On the Third Circuit Decision are Satisfied**

Dentsply is collaterally estopped from contesting herein its liability for monopolization in violation of Section 2, because all the elements of collateral estoppel, based on the Third Circuit Decision, are satisifed. *See Nat'l RR Passenger Corp.*, 342 F.3d at 252 (stating the elements required for collateral estoppel).

(1)  "The issue sought to be precluded," Dentsply's liability for monopolization in violation of Section 2 of the Sherman Act, based on Dentsply's exclusive dealing, is precisely "the same as that involved in the prior action," *id.*, as shown by Judge Schwartz's finding that the substantive allegations in the Government's complaint and the Complaint herein are "nearly identical." D.I. 64, at 7, 9.

(2)  There can be no dispute that the issue was "actually litigated."  342 F.3d at 252; *see* Trial Court Decision, 277 F. Supp. 2d at 389-390-448 (making 369 findings of fact).

(3)  There can be no dispute that the issue "was determined by a final and valid judgment." 342 F.3d at 252.  The issue was determined by the Third Circuit, and Dentsply's petition for certiorari was denied. *See United States v. Dentsply*, 126 S. Ct. 1023 (2006).

(4)  The determination was, by necessity, "essential to the prior judgment,"  342 F.3d at 252, since the prior judgment—that Dentsply is liable for monopoly maintenance in violation of Section 2 of the Sherman Act—is precisely the issue here sought to be precluded.

Moreover, under the circumstances here, there is nothing unfair about applying collateral estoppel to Dentsply. *See Parklane Hosiery*, 439 U.S. at 330-31 (listing factors that could make application of collateral estoppel unfair).

First, Plaintiffs could *not* "easily have joined in the earlier action."  The Government opposed consolidating the actions, and the District Court denied consolidation (D.I. 64, at 7, 9),

and, given the lengthy litigation that resulted regarding Plaintiffs' lack of standing under *Illinois Brick*, even in hindsight, the District Court's decision appears justified.

Second, given the extent of Dentsply's actual efforts to defend itself against the Government's suit, no one can reasonably argue that Dentsply had "little incentive to defend vigorously" against the prior suit. 439 U.S. at 330-31. Moreover, because Plaintiffs brought this suit in 1999, and trial in the Government's case did not begin until 2002 (*see* docket in 99-cv-005), it *cannot* be said that *this* suit was "not foreseeable" by Dentsply. *See* 439 U.S. at 330-31.

Third, "the judgment relied upon as a basis for the estoppel"—i.e., the Third Circuit Decision—is not "inconsistent" with any "previous judgment[] in favor of the defendant." *See* 439 U.S. at 330-31.

Fourth, and finally, "the second action"—i.e., the action herein—does not provide Dentsply with any "procedural opportunities unavailable in the first action that could readily cause a different result." *Id.*

Therefore, collateral estoppel, based on the Third Circuit Decision, applies. *Nat'l RR Passenger Corp.*, 342 F.3d at 252.

Accordingly, summary judgment should be granted to Plaintiffs, holding Dentsply liable for monopolization in violation of Section 2 of the Sherman Act. *Wolstein* 133 F.3d at 212-14, 217 (granting plaintiff summary judgment, based on offensive collateral estoppel); *Parklane*, 439 U.S. at 326 (reversing denial of partial summary judgment to stockholder class, and basing reversal on judgment after nonjury trial, in another action, in favor of SEC); *Julius Nasso Concrete Corp.*, 202 F.3d at 85 (based on collateral estoppel, affirming order granting summary judgment to plaintiff "on the issue of antitrust liability"); *Eazor Express, Inc.* 388 F. Supp. at 1265, 1269 (granting summary judgment to plaintiff on issue of liability, based on prior decision of NLRB enforced by the Court of Appeals for the Third Circuit).

# III.

## PLAINTIFFS ARE ENTITLED TO INJUNCTIVE
## RELIEF AGAINST DENTSPLY'S UNLAWFUL CONDUCT

**A.**     Availability of Injunctive Relief Under Section 16 of the Clayton Act

    **1.**     **Standing Requirements are Reduced for**
          **Injunctive Relief Under the Antitrust Laws**

The Third Circuit has held that, under Section 16 of the Clayton Act, in order for a private

plaintiff to show its "entitlement to injunctive relief," such plaintiff must demonstrate "(1)

threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged antitrust

injury." *Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000).

No other elements need be demonstrated by plaintiff.

For example, under Section 16 of the Clayton Act, there is *not* any requirement that plaintiffs

prove "irreparable injury." *Mid-West Paper Prods. v. Cont'l Group, Inc.*, 596 F.2d 573, 594 n. 85 (3d Cir.

1979) ("contrary to defendants' assertions that plaintiffs must prove irreparable injury, the proper

standard is that articulated in *Zenith Radio Corp.*"); *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395

U.S. 100, 130 (1969) (under Section 16 of the Clayton Act, for a plaintiff to obtain injunctive relief,

"he need only demonstrate a significant threat of injury from an impending violation of the antitrust

laws or from a contemporary violation likely to continue or recur"); *see also Commodity Futures Trading

Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) ("[a]ctions for statutory injunctions need not

meet the requirements for an injunction imposed by traditional equity jurisprudence").

Similarly, whether a plaintiff is entitled to injunctive relief does *not* depend on whether the

plaintiff has standing to sue for damages; therefore, a plaintiff who, under the rule of *Illinois Brick*, is

barred from suing for damages may still be entitled to injunctive relief. *See Warfarin Sodium Antitrust

Litig.*, 214 F.3d at 399, 402 (reversing dismissal of claim for injunctive relief, and holding plaintiff

class "has satisfied the requirements for standing for injunctive relief under Section 16," despite the

fact that the class "fits the stereotypical indirect purchaser mold" and therefore lacks standing to sue for damages); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842 (3d Cir. 1996) (reversing summary judgment for defendant on plaintiffs' claim for injunctive relief, and holding "plaintiffs need not satisfy *Illinois Brick*'s 'direct purchaser' requirement in order to seek injunctive relief"); *Mid-West Paper Prods.*, 596 F.2d at 594-95 (same).

2.   **Private Plaintiffs may be Granted Injunctive Relief Even Against Conduct Already Enjoined on Behalf of the Government**

Plaintiffs are not barred from obtaining injunctive relief merely because the same or similar relief has already been obtained by the Government in a separate suit against the same defendant. As the Supreme Court has held, "[t]he private-injunction action[, under Section 16 of the Clayton Act,] *supplements* Government enforcement of the antitrust laws . . . . These private and public actions were designed to be *cumulative*, not mutually exclusive." *United States v. Borden Co.*, 347 U.S. 514, 517-18, 520 (1954) (emphasis added) (where defendants "already are enjoined [by relief granted in a private suit] from performing all acts specified by the Government in its prayer for relief," holding that, nevertheless, "district judge abused his discretion in refusing the Government an injunction solely because of the existence of the private decree"); *accord* 8 Julian O. von Kalinowski, Peter Sullivan, Maureen McGuirl, *Antitrust Laws and Trade Regulation*, § 172.02[1] (2006) ("Congress intended private injunctive relief to be cumulative with injunctive actions by the Department of Justice and private treble damage actions in the enforcement of the antitrust laws").

Indeed, in the suits brought against Microsoft, in 1998, one by the Government, and another by the several states, the "private" plaintiffs[4] were essentially granted an injunction against the exact same conduct that had just been enjoined by a consent decree on behalf of the Government.

---

[4]  *See* 2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 335a, at 286 n. 1 (2d ed. 2000) ("Everyone other than the federal government falls in the 'private' plaintiff category, which thus includes a state attorney general invoking federal antitrust law—whether on behalf of the state or of its citizens").

In the Microsoft litigation, two suits were brought in the District Court for the District of Columbia—one by the Government, and, the other, by 18 states and the District of Columbia—both of which alleged violations of Sections 1 and 2 of the Sherman Act, arising from the same business practices of Microsoft. *Compare United States v. Microsoft Corp.*, 231 F. Supp. 2d 144, 150 (D.D.C. 2002) (the "Government Case"), *with New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 86 (D.D.C. 2002) (the "States Case"); *see Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1203-04 (D.C. Cir. 2004) (appeals from both cases); *see also* 231 F. Supp. 2d at 150 (the States Case also alleged "corresponding provisions of their various state laws").

Initially, the two Microsoft cases were consolidated, and they proceeded to a trial on the merits, which resulted in a judgment against Microsoft. 373 F.3d at 1205; 231 F. Supp. 2d at 150; 224 F. Supp. 2d at 86. However, the Court of Appeals reversed in part, vacated the remedial decree, and remanded to the District Court—which ordered the parties to enter settlement negotiations. 373 F.3d at 1205; 231 F. Supp. 2d at 150; 224 F. Supp. 2d at 86.

"The United States and Microsoft were able to reach a resolution in *United States v. Microsoft Corp.* . . . in the form of a proposed consent decree, filed with the Court as the 'Revised Proposed Final Judgment' on November 6, 2001." 231 F. Supp. 2d at 150. Nine of the states joined in that consent decree, but the other nine and the District of Columbia "refused to enter into the consent decree," so the district court bifurcated the proceedings, 373 F.3d at 1205, and the non-settling states resumed litigating the remedy, 224 F. Supp. 2d at 87.

The proposed final judgment in the Government's Case was, for all practical purposes, effective immediately:

> Pursuant to the stipulation filed with the Court on November 6,
> 2001, Microsoft began complying with portions of the proposed final
> judgment on December 16, 2001, as if "it were in full force and
> effect." . . . On August 28, 2002, the United States submitted a
> "Notice" to the Court advising "the Court of Microsoft's compliance
> with various milestones established by the Second Revised Proposed
> Final Judgment."

231 F. Supp. 2d at 151 n.2.

Nevertheless, approximately one year after Microsoft had begun complying with the

proposed final judgment entered in the Government's Case, the same Court and same judge issued a

final judgment in the States Case, awarding an injunction to the states—i.e., the private plaintiffs.

224 F. Supp. 2d at 266-277.

Moreover, "[t]he judgment entered by the district court in [the States Case] closely parallels

the consent decree negotiated by the United States." 373 F.3d at 1204; *see* 373 F.3d at 1233. The

only significant difference is that there are a few respects in which the injunction granted to the

states is slightly more restrictive of Microsoft's conduct. *See* 373 F.3d at 1245; *see also* 373 F.3d at

1250 (affirming both the remedial order in the States Case and the "order approving the consent

decree in the public interest" in the Government Case).

### 3.     The Public Interest Must be Central to any Determination Regarding Whether to Grant an Injunction Against a Statutory Violation

The Supreme Court has stated that

> the purpose of giving private parties treble-damage and injunctive
> remedies was not merely to provide private relief, but was to serve as
> well the *high purpose of enforcing the antitrust laws.* [citation omitted]
> Section 16 should be construed and applied with this purpose in
> mind, and with the knowledge that the remedy it affords, like other
> equitable remedies, is *flexible and capable of nice adjustment* and
> reconciliation between the public interest and private needs as well as
> between competing private claims. [citations omitted] Its *availability
> should be 'conditioned by the necessities of the public interest which Congress has
> sought to protect.'*

*Zenith Radio Corp.*, 395 U.S. at 131 (emphasis added); *accord In re Nat'l Credit Mgmt. Group, LLC*, 21 F. Supp. 2d 424, 440 (D.N.J. 1998) ("[w]here an injunction is sought pursuant to a statutory provision . . . . the public interest must be examined"); *see also Nationwide Mutual Ins. Co. v. Automotive Service Councils, Inc.*, 490 F. Supp. 282, 286 (D. Del. 1980) (the goal of ensuring compliance with the antitrust laws "stands clearly in the public interest").

The Third Circuit has considered, in dicta, the situation where the Government has already obtained injunctive relief similar to that requested by private plaintiffs, and has stated that "the district court may wish to consider whether any meaningful difference exists in the present case 'with respect to the parties capable of enforcing' the injunction, or whether the reality here is that 'one injunction is as effective as 100.'" *Mid-West Paper Prods.*, 596 F.2d at 594 n.85. In other words, where unlawful conduct has already been enjoined by an injunction enforceable by the Government, but where a private party threatened by the unlawful conduct is, in at least some way, better able than the Government to enforce an injunction against such conduct, an injunction also should be granted to the private party.

**B.    The Requirements for Injunctive Relief are Satisfied Here**

     **1.    Plaintiffs are Threatened by Injury Proximately
    Resulting from Dentsply's Unlawful Conduct**

          **(a)    Plaintiffs Have Been Injured by Dentsply's Unlawful Conduct**

The Third Circuit has already held that dental laboratories—which includes Plaintiffs—have been injured by Dentsply's violation of Section 2 of the Sherman Act.

First, the Third Circuit Decision holds that Dentsply's exclusive dealing caused substantial anti-competitive effects: among other things, it raised prices for artificial teeth, 399 F.3d at 190-91, and "choked off the market for artificial teeth, leaving only a small sliver for competitors," *id.* at 196. A finding of anticompetitive effects necessarily implies a finding that consumers have been hurt. *See, e.g., The Serpa Corp. v. Mcwane, Inc.*, 199 F.3d 6 (1st Cir. 1999) (holding "'[c]ompetitors and

consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury"); *Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1183 (5th Cir. 1988) (holding "[r]estraint in the market affects consumers and competitors in the market; as such, they are the parties that have standing to sue"). Moreover, "[t]here is no dispute that the laboratories are the ultimate consumers." *Id.* at 188. Therefore, Plaintiffs and other dental laboratories have been injured by Dentsply's violation of Section 2.

Second, the Third Circuit Decision specifically holds that "[a]n additional anti-competitive effect is seen in the exclusionary practice here that *limits the choices of product open to dental laboratories.*" Id. at 194.

Third, the Third Circuit's holding, both implicit and explicit, that dental laboratories have been injured by Dentsply's exclusive dealing/monopolization in violation of Section 2, was a *necessary* part of the Third Circuit Decision, because, as the Third Circuit also held, in order for exclusionary conduct to form the basis for liability under Section 2, "the exclusionary conduct must have an anti-competitive effect." Id. at 187.

Therefore, Dentsply is collaterally estopped from contesting that its violation of Section 2 of the Sherman Act has injured Plaintiffs. *Nat'l RR Passenger Corp.*, 342 F.3d at 252 (listing the elements of collateral estoppel); *Wolstein* 133 F.3d at 212-14, 217 (granting plaintiff summary judgment, based on offensive collateral estoppel).

### (b)    There is a Cognizable *Threat* of Injury to Plaintiffs

The Third Circuit Decision instructed the District Court to "to grant injunctive relief requested by the Government." 399 F.3d at 197. The Third Circuit's award of injunctive relief to the Government necessarily implies a holding by the Third Circuit "that there exists some cognizable danger of recurrent violation, something more than the mere possibility." *Borden Co.*, 347 U.S. at 520 (stating the showing that must be made by the Government, before it will be awarded an

injunction against violation of the antitrust laws); *compare Wilk v. AMA*, 895 F.3d 352, 364, 367 (7th

Cir. 1990) (under Section 16 of the Clayton Act, "[a private] party moving for an injunction must

show some cognizable danger of recurrent violation, that is something more than the mere

possibility"). Therefore, there is a threat of future injury to Plaintiffs proximately caused by

Dentsply's exclusionary conduct in violation of Section 2.

 Moreover, Dentsply's conduct provides substantial indicia that there is a reasonable

likelihood of future injury to Plaintiffs.

 First, Dentsply's violation arises not from an isolated incident, but, rather, from an ongoing

practice that has continued "[f]or more than fifteen years." 399 F.3d at 185; *see In re Nat'l Credit*

*Mgmt. Group, LLC*, 21 F. Supp. 2d at 440 (among factors relevant to determining whether "moving

party has satisfied its burden of establishing a reasonable likelihood of future violations of [a

statutory provision]," is "the isolated or recurrent nature of the infraction").

 Second, Dentsply's violation was not inadvertent. *See* 21 F. Supp. 2d at 440 ("the degree of

scienter involved on the part of the defendant" is another factor determining whether a reasonable

likelihood of future violation has been shown). As the Trial Court Decision found, "Dentsply's

intent has been exclusionary." 277 F. Supp. 2d at 419.

 Third, *even after the Third Circuit Decision*, Dentsply has refused to acknowledge the full extent

of its unlawful practices. *See* 21 F. Supp. 2d at 440 ("the defendant's recognition of the wrongful

nature of his conduct" is another factor determining whether a reasonable likelihood of future

violation has been shown). Thus, in the Government's case, in its brief in opposition to the

Government's motion to enter final judgment, Dentsply argued that "Dentsply has been operating

under the key terms of the [Government's] proposed decree for more than ten years[, i.e., since

before 1997]." *See* Joffe Aff., Ex. B, at 6. This statement by Dentsply flatly contradicted numerous

findings of the Trial Court Decision, such as: (1) in the spring of 2000, Dentsply enforced Dealer

Criterion 6 against Marcus Dental, 277 F. Supp. 2d at 417; (2) in the fall of 2000, Dentsply faxed Thompson Dental a copy of Dealer Criterion 6 after it learned that Thompson Dental was exploring taking on competitive tooth lines. *Id.* at 417-18; (3) In 2001, when Patterson Dental acquired another dealer and that dealer was selling non-Dentsply teeth, Dentsply Patterson Dental to discontinue the acquired dealer's non-Dentsply tooth line. Id. at 418; (4) Darby was forced by Dentsply to drop its Vita tooth stocks no earlier than in December 1999. *Id.* at 418; and (5) as late as in 2002, Zahn still feared losing its ability to carry Dentsply teeth if it took on a competing line, *id.* at 416. Indeed, as late as May 23, 2005, less than *one year* before Dentsply's statement to the Court referred to, *supra*, in this paragraph, Dentsply issued a press release stating that "If the decision of the Third Circuit stands, Dentsply's Trubyte division *will no longer* be able to require dealers that carry its tooth lines to not carry competitive tooth lines." *See* Joffe Aff., Ex. D at para. 1 (emphasis added).

Fourth, the threat of future harm to dental laboratories from Dentsply's exclusive dealing/monopoly maintenance is dramatically magnified by the fact that, because dental laboratories are *indirect* purchasers from Dentsply, they cannot recover *damages* from Dentsply for any harm caused by such unlawful practices. 424 F.3d at 384. Therefore, *any* injury to Plaintiffs from a future violation of Section 2 by Dentsply will be irreparable.

## 2.  **The Public Interest Supports Granting Plaintiffs Injunctive Relief**

In the circumstances here, "the high purpose of enforcing the antitrust laws" will best be served by granting Plaintiffs request for an injunction. *Zenith Radio Corp.*, 395 U.S. at 131.

This is especially true because—framing the issue in the same way that the Third Circuit framed it in *Mid-West Paper Prods.*—there is a "meaningful difference [here] 'with respect to the parties capable of enforcing' [an] injunction" against Dentsply's unlawful exclusive dealing practices. 596 F.2d at 594 n.85.

First, no one is better situated to monitor Dentsply's exclusive dealing practices than is a dental laboratory, because, as held by the Third Circuit, "the laboratories are the ultimate consumers" of artificial teeth, 399 F.3d at 188, and the exclusive dealing practices make their existence known by "limit[ing] the choices of products open to dental laboratories," id. at 194.

Second, the Government has limited resources to devote to any particular violation of the antitrust laws. *Cf. Brewer v. Southern Union Co.*, 607 F. Supp. 1511, 1532-33 (D. Colo. 1984) (noting that private individuals should be encouraged to "seek out and bring to light violations of the nation's antitrust laws," because "limited enforcement resources [are] available to the federal government"). By contrast, *there are 7,000 dental laboratories that use artificial teeth to make dentures.* 399 F.3d at 185. Moreover, every dental laboratory has a natural interest in seeing that Dentsply complies with any injunction against its exclusionary practices. If an injunction is granted herein, 7000 dental laboratories will be able to bring information about Dentsply's conduct to one or both of the Plaintiffs, knowing that the Plaintiffs will have the same motivation that any such dental laboratory has—to nip in the bud any recurring violations by Dentsply.

Thus, an injunction granted herein will be enforceable with the help of 7,000 businesses, distributed nation-wide, that have first-hand knowledge of the effects of the unlawful conduct here sought to be cured and prevented.[5]

Therefore, granting an injunction to Plaintiffs will *not* be redundant, but, rather, will substantially *enhance* the effectiveness of the injunctive relief already granted in the Government's case against Dentsply. *See Mid-West Paper Prods.*, 596 F.2d at 594 n.85; *Massachusetts v. Microsoft Corp.*, 373 F.3d at 1250 (affirming order holding that the federal government's consent decree enjoining defendant is in the public interest, and affirming order entered a year later, in a separate case, that

---

[5] Plaintiffs will publish the order or judgment granting the injunction in a newspaper with nation-wide circulation, as well as in trade publications aimed at dental laboratories.

granted a group of states essentially the same injunctive relief, against the same defendant, that had been obtained the year before by the federal government).

Because Plaintiffs are threatened with loss or injury proximately resulting from the recurrence of Dentsply's exclusive dealing/monopoly maintenance, and because the public interest supports enlisting Plaintiffs' services in enforcing the antitrust laws against such threatened violation, Plaintiffs are entitled to an injunction against Dentsply's unlawful conduct. *See Warfarin Sodium Antitrust Litig.*, 214 F.3d at 400; *Zenith Radio Corp.*, 395 U.S. at 131; *see also Molnar*, 789 F.2d at 249 (affirming grant of summary judgment *and* injunctive relief to plaintiff); *Nat'l RR Passenger Corp.*, 342 F.3d at 246, 253, 260 (affirming order that, based on offensive collateral estoppel, partly granted motion for preliminary injunction).

## IV.

## PROPOSED RELIEF

Plaintiffs request that the Court issue an order declaring that Dentsply's exclusive dealing practices have unlawfully maintained a monopoly in violation of Section 2 of the Sherman Act.

Plaintiffs also request that they be granted an injunction that contains some, but not all, of the terms contained in the injunction already granted to the Government in *United States v. Dentsply*, No. Civ. A. 99-005 (SLR), along with certain *other* terms not already contained in the Government's injunction.

### A.     Injunctive Provisions Similar to Those Already Granted to the Government

Dentsply's core exclusive dealing practices specifically should be prohibited.

Those practices involve (1) Dentsply's requirement that new dealers must drop their lines of competitive teeth before Dentsply will authorize them to sell Dentsply teeth, *see* 399 F.3d at 190, and (2) Dentsply's threat to terminate current Dentsply dealers unless they refrain from adding the tooth lines of any competitor of Dentsply's, *see* 399 F.3d at 185.

Therefore, Dentsply should be prohibited from (1) conditioning the sale of its teeth to any dealer on such dealer's refraining from, or agreeing to refrain from, selling the teeth of one or more of Dentsply's competitors, and (2) Dentsply should be prohibited from retaliating against any dealer for such dealer's carrying or selling, or agreeing to carry or sell, the teeth of one or more of Dentsply's competitors.

These prohibitions are essentially the same as the prohibitions set forth in the Court's "Final Judgment" in *United States v. Dentsply*, "Part I," paragraphs 'A' through 'C,' and the first sentence of paragraph 'D,' (*see* 2006 WL 2612167, at *1), and they should be incorporated into an injunction granted here with the same detail with which they have been set forth in the Government's injunction.

Plaintiffs are *not* asking for an injunction granted to them to incorporate any other parts of the Government's injunction, such "Part IV" of the Government's injunction, which grants the Government certain conditional access to Dentsply's records and personnel.

**B.    Additional Provisions Not Already Contained in the Government's Injunction**

1.  Plaintiffs' injunction should be a permanent injunction of unlimited duration, subject to modification upon a motion by Dentsply.  The Government's injunction has a duration of only 7 and 1/2 years, but the issue of the applicability of an injunction of unlimited term, subject to modification upon a motion, was never litigated in *United States v. Dentsply*.[6]

So long as Dentsply retains its long-lasting "predominant" market share (399 F.3d at 184, 189), and given that Dentsply's long-running "intent has been exclusionary" (277 F. Supp. 2d at 419), there is no reason to limit the duration of the prohibitions regarding Dentsply's unlawful

---

[6] In *United States v. Dentsply*, the Government proposed that the injunction have a term of 10 years, Dentsply responded that the injunction should have a term of five years (Joffe Aff., Ex. B, at 1-2), and the Court, without elaborating on its rationale, granted an injunction of 7 and 1/2 years, exactly splitting the difference between the two parties' positions, 2006 WL 2612167, at *4.

conduct. This is all the more true because the likelihood of sudden changes in Dentsply's market share cannot be presumed in an industry, like the one found here by the Third Circuit, that involves a "stagnant, no growth" market. 399 F.3d at 196.

Indeed, because "[a]lmost all courts of equity are empowered to modify an injunction when a significant change of facts has taken place," *Developments in the Law: Injunctions*, 78 Harv. L. Rev. 994, 1082 (1965), a permanent injunction should be of an unlimited duration, subject to modification if and when the relevant facts change. *Cf. Zenith Radio Corp.*, 395 U.S. at 131 n.25 (rejecting defendant's argument that developments subsequent to those in the trial record had rendered the injunction granted by the trial court unnecessary, and pointing out that defendant is "free to demonstrate in the future that the need for injunctive relief . . . has been eliminated, or that a change of circumstances . . . justifies additional modification of the injunction").

2.  Plaintiffs' injunction should require Dentsply to post the order or judgment granting the injunction on Dentsply's web-site, for the duration of the injunction. The Government's injunction requires Dentsply to distribute a copy of the Final Judgment in *United States v. Dentsply* to each Dentsply dealer, but it does not require any distribution to the dental laboratories who purchase artificial teeth. *See* 2006 WL 2612167, at *1.

Requiring posting on Dentsply's web-site of any injunction granted herein, and requiring it to remain there during the duration of the injunction, will increase the likelihood that dental laboratories, and not only dealers, will become aware of, *and be reminded of*, the injunction. Any emergence of robust competition requires that dental laboratories—the "ultimate consumers" of artificial teeth (399 F.3d at 188)—become aware, and regularly be reminded, that they now can request teeth made by Dentsply's competitors.

Moreover, there can be no assurance that Dentsply will not resume its unlawful conduct, until it has admitted to the public, and not just to its dealers, that such conduct is unlawful. *Wilk*,

895 F.3d at 368 (where defendant has not admitted the unlawfulness of its conduct, court has reason to doubt any discontinuation of such conduct has been "effective").

3. Starting within 30 days from the issuance of the injunction, and until two years and 30 days from the issuance of the injunction, Dentsply should be required to employ an *outside, independent individual or entity*, selected by Dentsply and *approved by the Court*, to monitor Dentsply's compliance with the injunction. Such monitor should have the authority to require Dentsply to take any steps he believes are necessary to comply with the injunction, and he should be required to file reports with the Court regarding Dentsply's compliance, on a quarterly basis, beginning 90 days after his appointment.

The Government's injunction requires Dentsply only to "designate" an "Antitrust Compliance Officer with responsibility for implementing an antitrust compliance program for the purpose of ensuring full compliance with [the Government's] Final Judgment." 2006 WL 2612167, at *2-3. It does not require that such person be from the outside and "independent" of Dentsply, it does not require Court approval for the choice of the person so designated, it does not clearly give such person authority to require any action by Dentsply necessary for Dentsply's compliance with the injunction, and it does not require such person to file reports with the Court.

By agreeing to the provision in the Government's injunction requiring designation of an "Antitrust Compliance Officer,"[7] Dentsply has essentially admitted to the need for an internal monitor of its compliance with any injunction against its unlawful conduct. However, the only way to ensure that such a monitor will be effective, is to make him independent of Dentsply, and responsible to the Court.

---

[7] Following the Third Circuit Decision, all terms in the Government's injunction, except for the duration of the injunction, were agreed to by Dentsply without litigation, after a negotiation between Dentsply and the Government. *See* Joffe Aff., Ex. B, at 2.

The monitor's independence will be especially necessary during the initial period of the injunction, until some new pattern of practice is at least initiated; therefore this is the one provision in Plaintiffs' proposal that would remain in place for only two years.

4.  Even if Dentsply were to allow its dealers to carry the teeth of its competitors, the change would be ineffective to open the tooth market to competition, if the dealers were still afraid to actually *offer* the competing teeth to their customers.  Moreover, no dealer would likely feel free to make such offers, if the dealer had to make such offers in Dentsply's presence.  Yet, in the absence of an injunctive provision addressing the problem, Dentsply could easily pressure a dealer into allowing Dentsply to join in such dealer's sales calls,[8] so that Dentsply could police, and restrict, the dealer's offers made to its customers.

Therefore, Dentsply should be prohibited from attending any meeting or phone call between any dental dealer and any dental laboratory, unless the dental laboratory has requested Dentsply's presence, or one or more of Dentsply's competitors is also present at the meeting or phone call.

Under this provision, Dentsply could still approach a dental laboratory alone, and a dental dealer could still approach a dental laboratory alone.  The prohibition would only apply to joint visits made simultaneously by Dentsply and a dealer to the same laboratory.  *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 698 (1978) (when issuing an injunction, a Court may prohibit otherwise lawful conduct if it "represents a reasonable method of eliminating the consequences of the illegal conduct" or preventing its recurrence); *see Int'l Salt Co. v. United States*, 332 U.S. 392, 400 (1947).

No such relief is provided in the Government's injunction.

This is a provision that Plaintiffs and other dental laboratories are uniquely well positioned to enforce.

_____

[8] Dentsply witnesses have given deposition testimony that Dentsply makes direct contacts with customers of Dentsply dealers, and participates in negotiation of three-way agreements involving Dentsply, the dealer and the laboratory. *See, e.g.*, D.I. 154, at 748, 754-55.

5.  Dentsply should be required to divest its Trubyte division, which is the division that manufactures and sells Dentsply's teeth.

Because Dentsply has such a huge share of the artificial tooth market, and because that market is a "no-growth market," Dentsply "milks" the Trubyte division for profits that it distributes to the Dentsply corporation (*see* 277 F. Supp. 2d at 422), presumably for use in parts of the corporation that generate fewer profits but have greater opportunities for growth.

Therefore, if the Trubyte division were a stand-alone company, it would have far less incentive to generate excess profits by exploiting its dominant market share in ways that violate the antitrust laws.

The Supreme Court has held that divestiture is a form of relief available to private plaintiffs under Section 16 of the Clayton Act.  *See California v. American Stores*, 495 U.S. 271, 278-85 (1990) (approving divestiture as remedy granted private party for unlawful merger); *accord* 2 Areeda & Hovenkamp, *Antitrust Law* ¶ 326a, at 258-59.

No such relief is included in the Government's injunction.

To the extent that divestiture of the Trubyte division is granted, the other terms of the injunction requested herein should apply only to the divested Trubyte company, and not to the remainder of Dentsply.

## **CONCLUSION**

For the reasons stated herein, the Court should grant Plaintiffs summary judgment on their claim against Dentsply for monopolization in violation of Section 2 of the Sherman Act, and declaratory relief and an injunction—essentially in the form requested herein.

Dated:  October 23, 2006

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (No. 2172)
Robert J. Kriner, Jr. (No. 2546)
A. Zachary Naylor (No. 4439)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware  19801
(302) 656-2500

and

LABATON SUCHAROW
    & RUDOFF LLP
Thomas A. Dubbs (NY Bar No. 4868)
Richard T. Joffe (NY Bar No. 2712)
100 Park Avenue
New York, New York  10017-5563
(212) 907-0700

Attorneys for Plaintiffs