IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD HESS DENTAL LABORATORIES INCORPORATED and PHILIP GUTTIEREZ d/b/a Dentures Plus, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 99-255-SLR |
| v. | ) ) | |
| DENTSPLY INTERNATIONAL INC., | ) ) | |
| Defendants. | ) ) ) ) ) ) | |

**DEFENDANT DENTSPLY INTERNATIONAL INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF**

Of Counsel:

Brian M. Addison
DENTSPLY INTERNATIONAL INC.
Susquehannah Commerce Center
221 W. Philadelphia Street
York, PA 17405-0872
(717) 849-4363

Margaret M. Zwisler
Eric J. McCarthy
Amanda P. Biles
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

William D. Johnston. (No. 2123)
Christian Douglas Wright (No. 3354)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Counsel for Dentsply International Inc.

Date: January 18, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

COUNTER STATEMENT OF FACTS ........................................................... 3

SUMMARY OF ARGUMENT ......................................................................... 6

ARGUMENT ...................................................................................................... 7

I. THE HESS PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF DEMONSTRATING THAT DENTSPLY IS COLLATERALLY ESTOPPED FROM CONTESTING ANTITRUST INJURY ........................................................................................................... 7

    A. Plaintiffs Bear The Burden Of Establishing The Four Elements Required To Demonstrate Collateral Estoppel ........................... 8

    B. The Third Circuit Opinion Did Not Hold That The Hess Plaintiffs Were Injured By Dentsply's Violation Of Sherman Section 2 ................... 9

    C. Plaintiffs Cannot Establish Collateral Estoppel Because The Issue Of Antitrust Injury Was Not Litigated In, Determined By, Or Essential To The Government Action ........................................ 11

II. PLAINTIFFS ALSO HAVE FAILED TO SHOW THAT THEY ARE ENTITLED TO A PERMANENT INJUNCTION ........................................ 13

    A. Plaintiffs Cannot Meet The Requirements For Injunctive Relief In The Face Of A Government Injunction That Prohibits Dentsply From Enforcing Criterion 6 ..................................................... 14

        1. The Injunction Entered In The Government Action Plainly Eliminates Any Need For Further Injunctive Relief ................... 14

        2. The *Jersey* Amended Complaint Acknowledges That Plaintiffs Do Not Face A Real Threat Of Future Injury ............... 18

    B. A Second Injunction Is Not In The Public Interest ..................... 19

    C. Plaintiffs' Claims For Additional Injunctive Relief Are Meritless And Unnecessary .................................................................... 20

CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Bell v. Dow Chem. Co.,*
     847 F.2d 1179 (5th Cir. 1988) ............................................................10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
     429 U.S. 477 (1977)...........................................................................7

*California v. Am. Stores,*
     495 U.S. 271 (1990)..........................................................................22

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
     479 U.S. 104 (1986).....................................................................7, 14

*City of Pittsburgh v. West Penn Power Co.,*
     147 F.3d 256 (3d Cir. 1998)....................................................... passim

*Ellis v. Gallatin Steel Co.,*
     390 F.3d 461 (6th Cir. 2004) ............................................................15

*Gucci America, Inc. v. Daffy's Inc.,*
     354 F.3d 228 (3d Cir. 2003)..............................................................14

*Haize v. Hanover Ins. Co.,*
     536 F.2d 576 (3d Cir. 1976)..........................................................8, 13

*Harthman v. Witty,*
     480 F.2d 337 (3d Cir. 1973)........................................................14, 18

*Hawaii v. Standard Oil Co.,*
     405 U.S. 251 (1972)..........................................................................18

*Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency,*
     126 F.3d 461 (3d Cir. 1997).............................................................8, 9

*Illinois Brick Co. v. Illinois,*
     431 U.S. 720 (1977)............................................................................3

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,*
     458 F.3d 244 (3d Cir. 2006)..............................................................13

*Kauffman v. Moss,*
  420 F.2d 1270 (3d Cir. 1970)..........................................................................9

*Kloth v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.),*
  355 F.3d 322 (4th Cir. 2004) .....................................................................8, 9

*Kurek v. Pleasure Driveway & Park Dist.,*
  583 F.2d 378 (7th Cir. 1978) ........................................................................4

*In re Microsoft Corp. Antitrust Litig.,*
  232 F. Supp. 2d 534 (D. Md. 2002)..................................................... passim

*Mid-West Paper Prods. Co. v. Continental Group Inc.,*
  596 F.2d 573 (3d Cir. 1979)........................................................................18

*New York v. Julius Nasso Concrete Corp.,*
  202 F.3d 82 (2d Cir. 2000)..........................................................................12

*New York v. Microsoft Corp.,*
  209 F. Supp. 2d 132 (D.D.C. 2002) ............................................................17

*S. Pac. Communications Co. v. AT&T,*
  567 F. Supp. 326 (D.D.C. 1983) ...................................................................8

*Serpa Corp. v. Mewane, Inc.,*
  199 F.3d 6 (1st Cir. 1999)...........................................................................10

*United States v. Borden Co.,*
  347 U.S. 514 (1954)..............................................................................16, 17

*United States v. Dentsply Int'l, Inc.,*
  126 S. Ct. 1023 (2006)..................................................................................2

*United States v. Dentsply Int'l, Inc.,*
  277 F. Supp. 2d 387 (D. Del. 2003).........................................................2, 4

*United States v. Dentsply Int'l, Inc.,*
  399 F.3d 181 (3d Cir. 2005)............................................................... passim

# OTHER AUTHORITIES

8 Julian O. von Kalinowski, Peter Sullivan, Maureen McGuirl, *Antitrust Laws and Trade Regulations*, § 172.01[1] (2006)................................................................16

43A C.J.S. *Injunctions* § 69 (2004).................................................................................14

18-132 Moore's Federal Practice, Civil § 312.03[g]...........................................................8

*Restatement (Second) of Judgments* § 27 cmt. H (1982) ...................................................13

United States Department of Justice, *Antitrust Division Manual*, IV-54 (3d ed. Feb. 1998)............................................................................................21

Defendant Dentsply International Inc. ("Dentsply") respectfully submits this brief in opposition to the motion of plaintiffs Jersey Dental Laboratories f/k/a Howard Hess Dental Laboratories, Inc. and Philip Guttierez d/b/a Dentures Plus ("Hess plaintiffs") for summary judgment and injunctive relief.

Almost six years after this Court granted Dentsply's motion for summary judgment on plaintiffs' damages claims, the Hess plaintiffs now seek to resuscitate the remaining portion of their case for injunctive relief with the transparent hope that, despite losses at every turn of their protracted litigation, they can demonstrate that they are the prevailing party and thus are entitled to recoup their attorneys' fees. The Hess plaintiffs contend that, in light of the Third Circuit's reversal of this Court's decision in the related government action, Dentsply is collaterally estopped from contesting its liability here. But neither this Court nor the Third Circuit determined that Dentsply's conduct injured dental laboratories, *i.e.*, Hess plaintiffs. That injury is an inarguable prerequisite before this Court should preclude Dentsply from judging that issue through the application of collateral estoppel. Thus, summary judgment on this ground is wrong as a matter of law. In addition, the Hess plaintiffs contend that they are entitled to injunctive relief against Dentsply's unlawful conduct. Plaintiffs, however, cannot show any threat of future injury. Almost nine months ago, this Court entered an injunction in the government case that prohibits Dentsply from enforcing Criterion 6. Accordingly, this Court should deny plaintiffs' motion.

## NATURE AND STAGE OF THE PROCEEDINGS

*The Related Government Litigation.*  On January 5, 1999, the government filed a complaint against Dentsply in this Court.  (*DOJ* D.I. 1).  The government alleged that Dentsply's policy that dental products dealers who sell Dentsply's artificial teeth to dental laboratories may not sell competing tooth lines violated Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act.  (*Id.*).  After a four-week bench trial, this Court held that Dentsply's conduct did not violate Sections 1 or 2 of the Sherman Act or Section 3 of the Clayton Act.  *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387 (D. Del. 2003).  The government appealed this Court's ruling on its Section 2 claim, and, on February 24, 2005, the Third Circuit reversed, holding that Dentsply's conduct violated Section 2 of the Sherman Act.  *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005).  On September 14, 2005, Dentsply petitioned for writ of certiorari to the United States Supreme Court.  The Supreme Court later denied Dentsply's request to review the Third Circuit's decision.  *United States v. Dentsply Int'l, Inc.*, 126 S. Ct. 1023 (2006).

On April 26, 2006, after the Supreme Court's decision on certiorari, this Court entered Final Judgment in the government action.  (*DOJ* D.I. 559).  The parties had engaged in extensive mediation efforts to reach compromise on the terms of the injunction.  (*DOJ* D.I. 546).  And, with the help of Magistrate Judge Thynge, the parties were able to reduce the number of issues in dispute to one:  the term of the Final Judgment.  This Court ultimately determined that the Final Judgment shall expire 7.5 years from the date on which it takes effect.  (*DOJ* D.I. 559, ¶VIII.B).

*The Plaintiffs' Previous Litigation ("Hess" and "Jersey").*  Dentsply adopts by reference its summary of the proceedings that it included in its brief in support of its Motion to Dismiss Counts 3 and 5 of the Jersey plaintiffs' third amended complaint. (*Jersey* D.I. 273 at 2-3).

Almost eight years ago, then proceeding under the name "Howard Hess Dental Laboratories," plaintiffs challenged Dentsply's exclusive dealing policy as violative of the antitrust laws.  *Howard Hess Dental Labs Inc. et al. v. Dentsply International, Inc.*, C.A. No. 99-255(SLR) (*Hess* D.I. 1).  Hess's action was a tag-along case to the complaint filed by the Antitrust Division of the United States Department of Justice.  The Hess plaintiffs' complaint sought damages as well as injunctive relief.  This Court granted Dentsply's motion for summary judgment on the ground that plaintiffs, as indirect purchasers of artificial teeth from Dentsply, lacked standing to bring their damages claim based on the rule established in *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977).

Since that time, plaintiffs have filed two other complaints under a different name, lost several case dispositive and other motions before this Court, and were soundly defeated on almost all of their claims at the Third Circuit.  Nevertheless, on October 23, 2006, the Hess plaintiffs revived their case by filing the summary judgment motion at issue here.  In it, they claim that they are entitled to summary judgment and injunctive relief on the basis of the Third Circuit's finding of Section 2 liability.

## COUNTER STATEMENT OF FACTS

1.      The *Hess* plaintiffs' "Statement of Facts" consists entirely of direct quotes from the Third Circuit's decision in the related government action.  Hess Br. at 7-9. Plaintiffs purport to rely on these "facts" to support their argument that Dentsply is

collaterally estopped from contesting its liability in this case. But it is well established that "it is the judgment, properly construed in the light of pertinent facts, that creates the potential for collateral estoppel, not the appellate decision affirming it." *Kurek v. Pleasure Driveway & Park Dist.*, 583 F.2d 378, 380 (7th Cir. 1978).

2.    In reversing this Court's opinion in the related government action, the Third Circuit never addressed the issue of whether dental laboratories suffered antitrust injury as a result of Dentsply's conduct. *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005). This Court did not decide that issue either. *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387.

3.    Rather, the Third Circuit found that Dentsply's Criterion 6 violated Sherman Section 2. *Dentsply*, 399 F.3d at 196.

4.    In the related government action, this Court entered the Final Judgment on April 26, 2006. (*DOJ* D.I. 559). The Final Judgment took effect on May 26, 2006.

5.    Under the terms of the Final Judgment,

    a.    "Dentsply shall not condition the sale of its teeth or any other product to a dealer, or authorize a person as a dealer of Dentsply teeth, based on that dealer's sale of non-Dentsply teeth or that dealer's consideration to sell non-Dentsply teeth." (*Id.* ¶ IA).

    b.    "Dentsply shall not take, or threaten to take," multiple "retaliatory or deterrent actions against a dealer based on that dealer's sale of non-Dentsply teeth or that dealer's consideration to sell non-Dentsply teeth," including "terminating that dealer as an authorized dealer of Dentsply's teeth or other products." (*Id.* ¶ IB(1)).

4

       c.     "Dentsply shall not require any dealer to be, or agree with any dealer that it will become, an exclusive Dentsply tooth dealer, or offer market-share discounts to any dealer." (*Id.* ¶ IC).

       d.     "Dentsply shall remove Dealer Criterion 6 from its list of requirements for dealers to be recognized and maintained as authorized Dentsply tooth dealers." (*Id.* ¶ ID).

6.    The Hess plaintiffs seek the same injunctive relief as part of their summary judgment motion as the government obtained in its case. Hess Br. at 25 ("Dentsply should be prohibited from (1) conditioning the sale of its teeth to any dealer on such dealer's refraining from, or agreeing to refrain from, selling the teeth of one or more of Dentsply's competitors, and (2) Dentsply should be prohibited from retaliating against any dealer for such dealer's carrying or selling, or agreeing to carry or sell, the teeth of one or more of Dentsply's competitors."). In fact, the Hess plaintiffs concede that "[t]hese prohibitions are essentially the same as the prohibitions set forth in the Court's Final Judgment." *Id.*

7.    On August 9, 2006, the undersigned counsel for Dentsply certified to the Antitrust Division of the United States that, pursuant to III(A) of the Final Judgment, Dentsply had "(i) designated Mr. Brian Addison as its Antitrust Compliance Officer; (ii) distributed the Final Judgment in accordance with Section II(B)(1); and (iii) developed procedures required by Section II(B)(3)." Counsel also represented that Dentsply had "forwarded the Final Judgment to its tooth dealers," and explained that the Judgment "reflects the elimination of Dealer Criterion 6 from its list of requirements for dealers to

be recognized and maintained as authorized Dentsply tooth dealers." (Ex. A, Letter dated August 9, 2006 from E. McCarthy to J. Jacobs).

8.    On September 29, 2006, Dentsply notified the Antitrust Division that, pursuant to I(E)(1) of the Final Judgment, Dentsply was terminating six dealers "as part of an overall plan to modify its method of distribution of dental products in the U.[nited] S.[tates], and not for reasons based on the dealers' sale of non-Dentsply teeth and/or their consideration to sell non-Dentsply teeth." (Ex. B, Letter dated Sept. 29, 2006 from B. Addison to J. Jacobs).

## SUMMARY OF ARGUMENT

The Hess plaintiffs contend that, because the Third Circuit determined that Dentsply is liable for monopoly maintenance in violation of Section 2 of the Sherman Act, *a fortiori* Dentsply must be liable here under the principles of collateral estoppel. In order for plaintiffs to prevail on this theory, they must show that the issue of antitrust injury at the laboratory level was previously litigated in court. In the government action, however, this Court did not consider whether dental laboratories suffered antitrust injury. The only issue before the Third Circuit was whether Dentsply maintained an unlawful monopoly in violation of Section 2 of the Sherman Act by enforcing Criterion 6. The Third Circuit had no reason to consider and did not address whether a class of private plaintiffs that was not a party to that litigation suffered antitrust injury. Plaintiffs nonetheless argue that "implicit" in the appellate holding that Dentsply violated Section 2 is a finding that laboratory consumers were necessarily harmed. That attenuated argument, if accepted, would allow the Section 2 inquiry to swallow up the antitrust injury requirement in every follow-on case brought by anyone claiming to be a consumer.

That is not the law.  Plaintiffs' ill-advised attempt to impute findings and conclusions into the Third Circuit's opinion is belied by the procedural history and the opinion itself. Because the issue of antitrust injury to dental laboratories was not litigated in, determined by or essential to the related government action, plaintiffs' argument fails as a matter of law.

Plaintiffs also erroneously contend that they satisfy the requirements for injunctive relief under Section 16 of the Clayton Act.  Even if, however, plaintiffs were injured during the time that Dentsply did enforce Criterion 6, they cannot show any threat of future injury following the entry of a government injunction that now prohibits Dentsply from engaging in that very same conduct.  Plaintiffs' failure to show "a significant threat" - let alone any threat - "of injury from an impending violation of the antitrust laws," dooms their request for injunctive relief from the start.  *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 269 (3d Cir. 1998).  Accordingly, this Court should deny plaintiffs' motion.

## ARGUMENT

### I.    THE HESS PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF DEMONSTRATING THAT DENTSPLY IS COLLATERALLY ESTOPPED FROM CONTESTING ANTITRUST INJURY

Plaintiffs' motion for summary judgment fails because neither this Court nor the Third Circuit determined that Dentsply's conduct injured plaintiffs in an antitrust sense. To establish a claim under the Clayton Act, a plaintiff must demonstrate "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 112 (1986) (extending

same requirement to plaintiffs seeking injunctive relief under § 16); *see also W. Penn Power Co.*, 147 F.3d at 265 (stating that "determining whether antitrust injury is present necessarily involves examining whether there is a causal connection between the violation alleged and the injury"). Here, plaintiffs pin their hopes on the doctrine of collateral estoppel in hopes of transforming the Third Circuit's discussion of Dentsply's liability in the related government litigation into a finding that plaintiffs suffered antitrust injury. But because the issue of antitrust injury was never litigated in the government litigation, collateral estoppel does not apply.

### A. Plaintiffs Bear The Burden Of Establishing The Four Elements Required To Demonstrate Collateral Estoppel

As the party seeking collateral estoppel, plaintiffs bear the burden of establishing that (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination of that issue was essential to the prior judgment. *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir. 1976) (reversing summary judgment in defendant-insurer's favor because issue of whether the plaintiff-insured had intentionally set a fire was never litigated); *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 475 (3d Cir. 1997) (reversing finding of collateral estoppel); *see also* 18-132 Moore's Federal Practice, Civil § 312.03[g] ("The burden of persuasion to establish the prerequisites of issue preclusion is on the party seeking preclusion.").

This "heavy burden" becomes "even more substantial where, as here, plaintiff[s] seek[ ] to invoke the doctrine offensively." *S. Pac. Communications Co. v. AT&T*, 567 F. Supp. 326, 328 n.1 (D.D.C. 1983), *aff'd* 740 F.2d 1011 (D.C. Cir. 1984); *see also Kloth v.*

*Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 355 F.3d 322, 327 (4th Cir. 2004) ("The caution that is required in application of offensive collateral estoppel counsels that the criteria for foreclosing a defendant from relitigating an issue or fact be applied strictly."). "[W]hen any one of these factors goes unsatisfied, then the application of collateral estoppel is inappropriate." *Hawksbill Sea Turtle*, 126 F.3d at 475. In the end, "reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970).

### B.    The Third Circuit Opinion Did Not Hold That The Hess Plaintiffs Were Injured By Dentsply's Violation Of Sherman Section 2

Plaintiffs' entire discussion of antitrust injury - on which its collateral estoppel argument rests - is limited to a single page of text. Hess Br. at 19-20. Notably, plaintiffs offer zero support for the proposition that the "Third Circuit has already held that dental laboratories—which includes Plaintiffs—have been injured by Dentsply's violation of Section 2." *Id.* at 19. Instead, plaintiffs misleadingly contend that the Third Circuit decision "holds that Dentsply's exclusive dealing caused substantial anti-competitive effects," including "raised prices." *Id.* The Third Circuit's discussion of anti-competitive effects, however, even if relevant to the collateral estoppel inquiry,[1] does not discuss pricing at all. Put another way, while the Third Circuit held that Criterion 6 caused anticompetitive effects, it did not find that one such anticompetitive effect was that dental

---

[1]    To the extent the Third Circuit did opine obliquely on the presence of consumer injury, any generalized statements made by the Third Circuit were not essential to its determination, "were clear dicta[, and] can not support the application of collateral estoppel." *Hawksbill Sea Turtle*, 126 F.3d at 465.

labs paid increased prices. To the contrary, the Third Circuit's discussion of "pricing" was actually contained in its earlier "market power" analysis, not in its discussion of "anticompetitive effects." 399 F.3d at 190-91. And that discussion focused exclusively on the effect Dentsply's alleged pricing power had on dealers and Dentsply's competitors. *See id.* (observing testimony of "suspect pricing," that "Dentsply had a reputation for aggressive price increases," and that "Dentsply did not reduce its prices when competitors elected not to follow its increases"). The Court made *no finding* that dental labs paid higher prices because of Dentsply's conduct, let alone suffered an injury.

Plaintiffs further contend that a general "finding of anticompetitive effects necessarily implies a finding that consumers have been hurt." Hess. Br. at 19. For this proposition, plaintiffs rely exclusively on *Serpa Corp. v. Mewane, Inc.*, 199 F.3d 6 (1st Cir. 1999), and *Bell v. Dow Chem. Co.*, 847 F.2d 1179 (5th Cir. 1988). But both courts actually *affirmed the dismissal of antitrust claims* on the ground that plaintiffs had failed to demonstrate antitrust injury. While both courts observed (unremarkably) that a proper plaintiff in a restraint of trade case would presumptively be a competitor or consumer in the affected marketplace, Hess Br. at 19 (quoting *Serpa*, 199 F.3d at 10; *Bell*, 847 F.2d at 1183), neither court reached the wholly unsubstantiated conclusion that such competitors and consumers are assumed to have suffered antitrust injury, as plaintiffs suggest. To the contrary, the First and Fifth Circuits explicitly held that, as a matter of law, any successful plaintiff must still demonstrate antitrust injury. *Id.*

Remarkably, plaintiffs place much weight on the Third Circuit's observation that "[a]n additional anti-competitive effect is seen in the exclusionary practice here that limits the choices of products open to dental laboratories, the ultimate users." 399 F.3d at

194. Plaintiffs' complaint, of course, does not allege that they were injured by having fewer product choices. And, in any event, this statement had nothing to do with whether dental labs suffered an antitrust injury but instead was made in furtherance of the Third Circuit's conclusion that Dentsply limited the ability of its rivals to access the dental dealers. *Id.*

Lastly, plaintiffs make the circular assertion that a finding of consumer injury "was a necessary part of the Third Circuit Decision" because "for exclusionary conduct to form the basis for liability under Section 2, 'the exclusionary conduct must have an anticompetitive effect.'" Hess Br. at 20. That is merely a roundabout way of stating the law: a court can only find unlawful monopoly maintenance under Section 2 where it finds not only market power, but also that the defendant used its market power in such a way that produced anticompetitive effects. Plaintiffs' suggestion that a finding of Section 2 liability in the government litigation gives this Court *carte blanche* to infer from that holding any "anticompetitive effect" it wishes is baseless.

### C. Plaintiffs Cannot Establish Collateral Estoppel Because The Issue Of Antitrust Injury Was Not Litigated In, Determined By, Or Essential To The Government Action

In a case very similar to this one, *In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp. 2d 534 (D. Md. 2002) (reversed on other grounds), the court considered whether a finding in a DOJ suit that Microsoft had violated Section 2 could collaterally estop Microsoft from contesting consumer injury in a private follow-on civil suit. In the DOJ litigation, the Court identified 395 factual findings that conclusively established Microsoft had maintained a monopoly. In follow-on litigation, a group of consumer purchasers of software attempted to invoke collateral estoppel to demonstrate that

Microsoft's conduct had injured them. The district court disagreed, finding that "[n]othing in the government case against Microsoft demonstrates that the consumer plaintiffs . . . suffered any such injuries, and their motions for partial summary judgment therefore clearly fail." *Id.* at 538.

Similarly in *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82 (2d Cir. 2000)—a case plaintiffs repeatedly cite—the Second Circuit held that the collateral estoppel effect of a finding of liability extends only to subsequent litigation pertaining to *liability*, not to litigation pertaining to other issues. In *Julius Nasso*, defendants were convicted in a prior criminal proceeding of participating in a bid rigging conspiracy. Following that verdict, the plaintiff in the civil suit moved for summary judgment as to liability *and* damages. While the district court granted New York's motion as to liability, it denied as to causation and damages. On appeal, the Second Circuit affirmed, holding that the "[S]tate bears the burden of proving causation as well as damages, because collateral estoppel does not apply to either issue." *Id.* at 88.

The same result should obtain here. Like the *Microsoft* plaintiffs, the *Hess* plaintiffs attempt to carry their burden by asking this Court to turn a blind eye to the collateral estoppel requirements and instead to read between the lines of an appellate opinion,[2] which, according to plaintiffs, "implicitly" held that dental labs suffered an antitrust injury. Hess. Br. at 19. The "issue" raised here, however—whether Dentsply injured a class of private plaintiffs by causing them to pay supracompetitive prices—is not the "same issue" that was previously litigated in the government litigation. In that

---

[2]   Of course, unlike the *Microsoft* plaintiffs, the Hess plaintiffs rely entirely on the Third Circuit's opinion in the government action, and not on this Court's findings of fact, as the basis for its collateral estoppel argument. That is not the law. *See supra* at 3-4, ¶ 1.

case, as in *Microsoft*, the "focus was on the harm to the structure of the market, that is to competition, not to particular competitors [or consumers]." 232 F. Supp. 2d at 538. The issue of whether plaintiffs suffered antitrust injury was not "actually litigated" in the government litigation; indeed, it was not even raised. Similarly, the question of plaintiffs' antitrust injury was not "determined by a valid and final judgment." And whether a plaintiff paid supracompetitive prices was not "essential to the prior judgment" finding Dentsply violated Sherman Section 2. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255 (3d Cir. 2006) (requiring finding be "necessary" to the judgment to be essential); *Haize*, 536 F.2d at 579 (3d Cir. 1976) (same); *see also Restatement (Second) of Judgments* § 27 cmt. H (1982) (to be "essential to the judgment," the judgment must be "dependent upon the determinations").

Accordingly, Dentsply is not collaterally estopped from contesting whether, as a result of its conduct, dental laboratories suffered antitrust injury. The collateral estoppel doctrine is not a mechanism for allowing antitrust plaintiffs to circumvent the requirement of establishing antitrust injury. Where, as here, the contested issue was not litigated in the previous lawsuit, collateral estoppel does not apply.

## II.    PLAINTIFFS ALSO HAVE FAILED TO SHOW THAT THEY ARE ENTITLED TO A PERMANENT INJUNCTION

Plaintiffs also cannot show any threat of future injury following the entry of a government injunction that prohibits Dentsply from enforcing Criterion 6. Thus, plaintiffs cannot satisfy the requirements for injunctive relief under Section 16 of the Clayton Act.

A.    **Plaintiffs Cannot Meet The Requirements For Injunctive Relief In The Face Of A Government Injunction That Prohibits Dentsply From Enforcing Criterion 6**

To obtain injunctive relief under Section 16 of the Clayton Act, plaintiffs must show "a significant threat of injury from an impending violation of the antitrust laws." *W. Penn Power Co.*, 147 F.3d at 254; *see also Cargill, Inc.*, 479 U.S. 104 (1986). Where no threat of future harm exists, a court should refuse any request for injunctive relief. *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 238 (3d Cir. 2003) (affirming denial of Gucci's request for an injunction against future trademark infringement because there was no real threat of future infringement). This is especially true where, as here, an injunction is already in place that prohibits the complained of conduct. 43A C.J.S. *Injunctions* § 69 (2004) ("Ordinarily, where a prior injunction has been obtained and is still in force, a second injunction in the same or another court will be refused."); *see also Harthman v. Witty*, 480 F.2d 337, 340 (3d Cir. 1973) (determining that a second injunction was "unnecessary" where an injunction granted less than two months earlier already prohibited future pollution); *cf. W. Penn Power Co.*, 147 F.3d at 267 (affirming district court's refusal to grant an injunction where defendant was legally barred from engaging in acts that would have anticompetitive effects).

1.    **The Injunction Entered In The Government Action Plainly Eliminates Any Need For Further Injunctive Relief**

The Hess plaintiffs' contention that there exists a cognizable threat of injury to plaintiffs is bizarrely premised on the facts as they existed *before* this Court entered the Final Judgment in the government action on April 26, 2006. Plaintiffs argue (1) that Dentsply's violation of Section 2 arose "from an ongoing practice that [] continued 'for more than fifteen years,'" Hess Br. at 21 (citing *Dentsply*, 399 F.3d at 185), (2) that

"Dentsply's violation was not inadvertent," *id.* at 21, and (3) that Dentsply failed to enforce key terms of the injunction in the years before it was entered, *id.* But whatever Dentsply's practice was *before* the entry of the Final Injunction has no bearing on whether plaintiffs are under a threat of injury resulting from Dentsply's conduct *now.* It is undisputed that the Final Judgment required Dentsply to eliminate Criterion 6 and precludes Dentsply from taking any retaliatory action against a dealer based on that dealer's sale of non-Dentsply teeth or that dealer's consideration to sell non-Dentsply teeth. *See supra* at 4. By awarding the government an injunction that bars Dentsply from enforcing Criterion 6 against *any dealer*, the injunctive relief necessarily eliminates the risk that Dentsply will engage in subsequent violations.[3] *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 476 (6th Cir. 2004) (reversing district court's decision to grant injunctive relief that the EPA had obtained three months earlier).

The *Gallatin Steel* opinion is highly instructive. There, plaintiff landowners sought injunctive relief against the defendant's continuing pollution even though the EPA had obtained an injunction prohibiting the same conduct only three months earlier. 390 F.3d at 474. The Sixth Circuit reversed the district court's decision to grant the requested injunctive relief because "the decrees were just three months old when the district court entered its injunction, meaning that the remedial requirements imposed by the decrees either had just been completed or had not yet been completed at all." *Id.* at 476. The court held that "[u]nder these circumstances, the district court committed reversible error in concluding that a risk of continuing irreparable harm had been shown." *Id.*

---

[3]    Plaintiffs further contend that their inability to recover money damages under *Illinois Brick* "magnifies" the threat of harm to dental laboratories from Dentsply's conduct. Hess Br. at 22. Plaintiffs' indirect purchaser status, however, is wholly irrelevant to whether a threat exists that Dentsply will engage in conduct already prohibited by the government injunction.

Plaintiffs weakly counter that they are not "barred" from obtaining injunctive relief "merely" because the same relief has been obtained by the government in a separate suit. Hess Br. at 16. Plaintiffs rely principally on *United States v. Borden Co.*, 347 U.S. 514, 517-18, 520 (1954), for the proposition that "private and public actions were designed to be cumulative, not mutually exclusive." *Id.*[4]  But in *Borden*, the *government*—not a private litigant—had requested an injunction against four defendants despite the existence of a prior decree entered against *five other* defendants in a private action. The Court observed that the "private plaintiff might find it to his advantage to refrain from seeking enforcement of a violated decree; for example, where the defendant's violation operated primarily against plaintiff's competitors." *Id.* at 519. For these and other reasons, the Court concluded, "it is likely that the public interest would not be adequately protected by the mere existence of the private decree." *Id.* The same cannot be said here, where the government obtained the injunction in the first instance and where the defendant is the *same* in both actions. Moreover, in *Borden* the Supreme Court agreed that the government has no "absolute right" to an injunction under these circumstances. *Id.* It further observed that it still had to demonstrate that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.* at 520-21. Plaintiffs cannot satisfy this burden.

Plaintiffs fare no better in their reliance on the *Microsoft* litigation. Although plaintiffs argue that the nine non-settling states in *Microsoft* were allowed to obtain

---

[4]  Plaintiffs' reliance on 8 Julian O. von Kalinowski, Peter Sullivan, Maureen McGuirl, *Antitrust Laws and Trade Regulations*, § 172.01[1] (2006) for the same proposition—that Congress intended for private relief to be cumulative—does not advance their argument any further because the authors simply cite back to *Borden*. *Id.* Moreover, just as defendants urge here, the authors emphasize that a private plaintiff seeking an injunction under Section 16 must demonstrate antitrust injury. As noted *supra*, plaintiffs here have not done so.

injunctive relief that was similar to relief the government had obtained, they conspicuously fail to cite the district court's opinion addressing the issue of collateral estoppel. *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132 (D.D.C. 2002). In that opinion, the court explicitly rejected defendant Microsoft's argument that *res judicata* barred the states from obtaining similar injunctive relief because, unlike here, the DOJ litigation was still ongoing and, as such, there had been no final judgment. 209 F. Supp. 2d at 155 n.27 ("As no judgment has been entered in *United States v. Microsoft Corp.*, at this point, the Court need not address Microsoft's argument that entry of a final judgment in *United States v. Microsoft Corp.* constitutes *res judicata* such that the Litigating States cannot obtain relief in their own case.") Put another way, unlike Dentsply, when Microsoft raised the issue of whether the states could obtain injunctive relief, it was not in a position to argue that the DOJ settlement should preclude the states from proceeding with their relief *because the DOJ settlement had not yet been approved*.

The *Microsoft* litigation is also distinguishable because the nine non-settling states and the DOJ were parties to a consolidated action. Thus, when Microsoft argued that the nine non-settling states failed to adduce sufficient antitrust injury to obtain relief, the district court held that, under the law of the case doctrine, it was bound by the D.C. Circuit's finding that the nine non-settling states had already proven injury. *Id.* at 141-42. Thus, on remand, the *only* question was whether the nine states were entitled to injunctive relief. Finally, just as in *Borden*, it was not a private litigant that sought to obtain an injunction in separate litigation, but instead was a group of states proceeding in their *parens patriae* capacity and therefore clearly litigating in the public interest. 209 F. Supp. 2d at 148-49.

17

Lastly, plaintiffs rely on *Mid-West Paper Prods. Co. v. Cont'l Group Inc.*, 596 F.2d 573 (3d Cir. 1979), for the stretched proposition that, once the government obtains an injunction, a private party should still be able to obtain a second injunction in a separate lawsuit if the private party "is, in at least some way, better able than the Government to enforce an injunction against such conduct." Hess Br. at 19. In *Mid-West Paper*, however, the Third Circuit never considered, "in dicta" (*see id.*) or otherwise, the situation at issue here because the government's action for injunctive relief was *still pending*. *Id.* at 594 n.85. Moreover, the court determined that plaintiffs should be permitted to pursue their lawsuit only if they are "still able to establish a 'significant threat of injury' under general equity principles," something the Hess plaintiffs cannot do here. *Id.* Finally, the court made clear that where, as here, "a defendant is already enjoined from engaging in the illegal activities, it would be wasteful to require it to defend another suit seeking to enjoin the same activities once again." *Id.* at 594 n.83.

Accordingly, because the Final Injunction already prohibits the complained of conduct, there is no continuing threat of a recurrent violation and no reason to enter further injunctive relief. *Harthman,* 480 F.2d at 340; *see also Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261 (1972) ("[T]he fact is that one injunction is as effective as 100, and concomitantly, that 100 injunctions are no more effective than one.").

### 2.     The *Jersey* Amended Complaint Acknowledges That Plaintiffs Do Not Face A Real Threat Of Future Injury

The Hess plaintiffs acknowledge the fact that they do not face any real threat of future injury in their most recent amended complaint. (*Jersey* D.I. 259). In their latest iteration, plaintiffs all but concede this point by changing their claim contained in the

*Hess* complaint (as well as in *Jersey I* and *Jersey II*) that they "have been unable to, *and will continue to be unable* to purchase artificial teeth" at competitive prices, (*Hess* Complaint ¶¶ 56, 78; *Jersey I* Complaint ¶¶ 86, 110; *Jersey II* Complaint ¶¶ 91, 115), to a claim that plaintiffs "have been unable to, *and may continue to be unable to*, purchase artificial teeth" at competitive prices. (*Jersey III* Complaint ¶¶ 158, 183). Similarly, although plaintiffs uniformly allege in *Hess* and subsequently in *Jersey I* and *Jersey II* that they "have been damaged, *and will continue to be damaged*," by their purchases of teeth at noncompetitive prices, (*Hess* Complaint ¶¶ 56, 78; *Jersey I* Complaint ¶¶ 86, 110; *Jersey II Complaint* ¶¶ 91, 115), they now allege in *Jersey III* only a theoretical possibility of future harm, claiming they "have been damaged, *and may continue to be damaged*," by their purchases of teeth at noncompetitive prices. (*Jersey III* Complaint ¶¶ 158, 183). The Jersey plaintiffs' hypothetical allegations that they "may" be damaged at some time in the future fall far short of alleging the necessary "significant threat of injury from an impending violation." *W. Penn Power*, 147 F.3d at 264.

## B.    A Second Injunction Is Not In The Public Interest

The Hess plaintiffs assert that the "high purpose of enforcing the antitrust laws" is best served by granting their request for further injunctive relief. Hess. Br. at 22. To this end, they claim that this Court should enable them to act in the public interest because (1) they are better situated than the federal government to know what is in the "public interest;" and (2) they are more capable of enforcing the injunction than the government. Hess Br. at 23. In fact, according to plaintiffs, by virtue of the fact that they are the ultimate consumer of artificial teeth, "no one is better suited to monitor Dentsply's exclusive dealing practices than is a dental laboratory." *Id.*

Plaintiffs are dreaming in several respects. First and most tellingly, the government, which does litigate in the public interest—and is therefore free of plaintiffs' obvious motivation to obtain more than eight years worth of attorneys' fees in this case—saw no need for the relief that plaintiffs seek. Having litigated countless Sherman Act cases, the government is in a far better position to know what is in the public interest. Second, while plaintiffs' counsel's hope to enlist the help of 7,000 U.S. laboratories to enforce a second injunction is commendable, the government is doing just fine on its own. Finally, plaintiffs' assertion that they are in the best position to enforce the injunction because they "have first-hand knowledge of the effects of the unlawful conduct here sought to be cured and prevented" is wholly unsubstantiated. Hess Br. at 23. Again, neither this Court nor the Third Circuit found that the dental labs suffered antitrust injury (*see supra*); thus, there is no factual basis for plaintiffs' claim that they have witnessed and can thus prevent anticompetitive conduct. Hess Br. at 23-24.

## C.   Plaintiffs' Claims For Additional Injunctive Relief Are Meritless And Unnecessary

The Hess plaintiffs concede that the vast majority of the relief they seek is "essentially *the same* as the prohibitions set forth in the Court's 'Final Judgment' in *United States v. Dentsply*." Hess Br. at 25 (emphasis added). Nevertheless, plaintiffs gin up five ways in which the relief they seek is not, in fact, identical to the government injunction. As demonstrated below, plaintiffs' five proposed "additional provisions" are meritless and unnecessary.

*Permanent Injunction.* Plaintiffs assert that, even though the government requested an injunction of 10 years, and even though this Court held that the injunction

should last no more than 7½ years, they are nonetheless entitled to a permanent injunction. Hess Br. at 25. On the issue of timeframe, the government had argued for an injunction lasting 10 years, its normal practice as the guardian of the public's interest in antitrust cases. (*DOJ* D.I. 553 at 6) (citing to United States Department of Justice, Antitrust Division Manual IV-54 (3d ed. Feb. 1998) (noting that a standard decree requires a ten-year term)). Not only do the Hess plaintiffs seek a remedy broader than the government's standard practice, but also make no attempt to show that, in the absence of the permanent injunction, there is a "a significant threat of injury from an impending violation of the antitrust laws." *W. Penn Power Co.*, 147 F.3d 256.

*Posting the Injunction on the Web*. Plaintiffs argue that they are entitled to a second injunction because the government injunction does not require Dentsply to post the injunction on its website. Hess Br. at 26. Plaintiffs believe that the current remedy—which requires Dentsply to distribute the injunction to its *dealers*, but not labs—provides "no assurance that Dentsply will not resume its unlawful conduct" absent a public admission of unlawful conduct. *Id.* Plaintiffs fail to acknowledge that the existing injunction and its widespread distribution serve the same purpose.

*Independent Monitor*. Plaintiffs also ask the Court to mandate that Dentsply employ an *outside* compliance monitor. Having reviewed the facts that resulted in a determination of liability, this Court and the government rightly concluded that an internal Antitrust Compliance Officer was a sufficient remedy. Plaintiffs provide no basis in fact for believing that the absence of an outside compliance monitor will increase the likelihood that Dentsply will violate the injunction.

*Phone Call and Meeting Ban.*    Plaintiffs further request that the Court ban Dentsply from participating in a phone call or meeting involving a dental dealer or dental laboratory, unless Dentsply is invited to the meeting.    To the extent plaintiffs seek to make their meetings "invitation only" to prevent Dentsply from enforcing Criterion 6 (which is now eliminated), their relief is duplicitous of the government injunction; to the extent plaintiffs want to ban Dentsply from engaging in other conduct that this Court has not otherwise found illegal, it is overbroad.

*Divestiture of Trubyte Division.*    Finally, plaintiffs request that Dentsply divest itself of the Trubyte division.    This is an extraordinary remedy which the government did not seek and which the Supreme Court has cautioned should be granted sparingly. *Caifornia v. Am. Stores*, 495 U.S. 271, 278-85 (1990) (noting that the district court's power to "order divestiture in appropriate cases brought under § 16 of the Clayton Act does not, of course, mean that such power should be exercised in every situation in which the Government would be entitled to such relief under § 15."). Moreover, it is wholly inappropriate here.    As the Supreme Court observed in *American Stores*, divestiture is generally a remedy in cases involving unlawful mergers.    495 U.S. at 295 n.28.    In those cases, divestiture serves to deprive the defendant of the market share that resulted from the illegal conduct and restores the parties to the *status quo ante*—returning each party to their pre-merger position.    Divestiture thus makes sense when there is a causal connection between the illegal conduct (the unlawful merger) and the remedy (the dissolution of that merger).    There is a complete absence of that nexus here.    Plaintiffs claim that Dentsply engaged in illegal conduct that resulted in plaintiffs paying artificially inflated prices.

The divestiture of the Trubyte division is not a proper remedy for that alleged illegal conduct.

## CONCLUSION

The Hess plaintiffs and their successors have litigated various iterations of this case for nearly eight years without a single victory on the merits, and thus desperately need an outcome that will allow them to claim the title of "prevailing party" and recoup attorney's fees. But what they do not need and what they are not entitled to as a matter of law is a second injunction. For the foregoing reasons, Dentsply requests that this Court deny plaintiffs' motion for summary judgment and injunctive relief.

Respectfully submitted,

Of Counsel:

Brian M. Addison
DENTSPLY INTERNATIONAL INC.
Susquehannah Commerce Center
221 W. Philadelphia Street
York, PA 17405-0872
(717) 849-4363

Margaret M. Zwisler
Eric J. McCarthy
Amanda P. Biles
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

William D. Johnston. (No. 2123)
Christian Douglas Wright (No. 3354)
YOUNG CONAWAY STARGATT
    & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

Counsel for Dentsply International Inc.

Date:  January 18, 2007

24

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, hereby certify that on January 18, 2007, I caused to

be electronically filed a true and correct copy of the foregoing document with the Clerk

of the Court using CM/ECF, which will send notification that such filing is available for

viewing and downloading to the following counsel of record:

> Robert J. Kriner, Jr., Esquire
> Chimicles & Tikellis LLP
> One Rodney Square
> PO Box 1035
> Wilmington, DE 19899

I further certify that on January 18, 2007, I caused a copy of the foregoing

document to be served by hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> *Christian Douglas Wright*
>
> Christian Douglas Wright (No. 3554)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6691
> cwright@ycst.com
> *Attorneys for Dentsply International, Inc.*