IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x
                                :

HOWARD HESS DENTAL LABORATORIES     :
INCORPORATED and PHILIP GUTTIEREZ d/b/a  :
DENTURES PLUS, on behalf of themselves and all others  :
similarly situated,                      :

                                :

        Plaintiffs,               :      C.A. No. 99-255 (SLR)

                                :

      -against-                 :

                                :

DENTSPLY INTERNATIONAL, INC.,         :

                                :

        Defendant.              :

                                :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

## PLAINTIFFS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION FOR
## <u>SUMMARY JUDGMENT AND INJUNCTIVE RELIEF</u>

Pamela S. Tikellis (No. 2171)
Robert J. Kriner, Jr. (No. 2546)
Scott M. Tucker (No. 4925)
CHIMICLES & TIKELLIS LLP
One Rodney Square
P.O. Box 1035
Wilmington Delaware 19801
(302) 656-2500

Thomas A. Dubbs (No.4868)
Richard T. Joffe (No. 2712)
LABATON SUCHAROW & RUDOFF LLP
100 Park Avenue
New York, New York 10017-5563
(212) 907-0700

March 2, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...............................................................................................ii

ARGUMENT...................................................................................................................2

I.    THE THIRD CIRCUIT'S DECISION IN THE GOVERNMENT'S CASE HAS
      ESTABLISHED THAT THERE IS A COGNIZABLE THREAT OF
      ANTITRUST INJURY TO PLAINTIFFS .............................................................2

      A.    Where, as Here, an Appellate Court Has Held Defendant Liable While
            Reversing the Judgment Below, the Appellate Decision is Preclusive ...........2

      B.    The Third Circuit Held, in an Essential Holding, that Dentsply's Unlawful
            Conduct Has Caused Antitrust Injury to Dental Laboratories.......................4

            1.    The Third Circuit Held That Dentsply's Exclusive Dealing Injured
                  Dental Laboratories by Limiting Their Product Choices...................5

            2.    The Issue of Whether Dental Laboratories Were Injured Was
                  Fiercely Litigated by the Parties .............................................7

            3.    As a Matter of Law, the Injury Here to Dental Laboratories is an
                  Antitrust Injury...................................................................11

            4.    Dentsply Has Not Contested that Plaintiffs are Dental Laboratories ...........12

      C.    The Complaint Alleges that Dentsply's Unlawful Conduct Injured Plaintiffs
            by Limiting Their Product Choices...........................................................12

II.   THE GOVERNMENT'S INJUNCTION DOES NOT ELIMINATE THE
      THREAT OF INJURY TO PLAINTIFFS HEREIN ................................................12

      A.    Under the *Microsoft* Cases, Plaintiffs are Entitled to an Injunction.................13

      B.    Dentsply's Cases Do Not Involve Injunctive Relief Under the Antitrust Laws.........15

      C.    Conduct of the Parties in *Jersey Dental* Supports Granting Plaintiffs  an
            Injunction...................................................................................17

      D.    The Public Interest Will Be Served by Granting Plaintiffs an Injunction...................18

      E.    The Relief Unique to Plaintiffs' Request Will Help Eliminate the Threat of
            Injury from Dentsply's Unlawful Conduct ..................................................19

CONCLUSION.................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*Brunswick Corp. v. Pueblo Bowl-O- Mat, Inc.,*
 429 U.S. 477 (1977) ........................................................................................... 5, 7, 11

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
 479 U.S. 104 (1986) ................................................................................................... 16

*Ellis v. Gallatin Steel Co.,*
 390 F.3d 461 (6th Cir. 2004) ..................................................................................... 16

*FTC v. Indiana Fed'n of Dentists,*
 476 U.S. 447 (1986) ............................................................................................. 11, 12

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
 343 F.3d 1000 (9th cir. 2003) .................................................................................... 11

*Gucci Am., Inc. v. Daffy's, Inc.,*
 354 F.3d 228 (3d Cir. 2003) ...................................................................................... 17

*Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.,*
 995 F.2d 425 (3d Cir. 1993) ........................................................................................ 5

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.,*
 423 F.3d 374 (3d Cir. 2005),
 *cert denied*, 126 S. Ct. 1581 (2006) ......................................................................7, 11

*Hartman v. Witty,*
 480 F.2d 337 (3d Cir. 1973) ...................................................................................... 17

*Hirschfeld v. Spanakos,*
 104 F.3d 16 (2d Cir. 1997) .......................................................................................... 3

*Illinois Brick v. Illinois,*
 431 U.S. 720 (1977) ..................................................................................................... 2

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,*
 458 F.3d 244 (3d Cir. 2006) ........................................................................................ 7

*Kauffman v. Moss,*
 420 F.2d 1270 (3d Cir. 1970) ...................................................................................... 7

*In re Keaty,*
 397 F.3d 264 (5th Cir. 2005) ....................................................................................... 3

*Kurek v. Pleasure Driveway & Park District,*
  583 F.2d 378 (7th Cir. 1978) ................................................................................................. 3, 4

*Kurek v. Pleasure Driveway & Park District,*
  552 F.2d 580 (7th Cir. 1977) ................................................................................................. 4

*Massachusetts v. Microsoft Corp.,*
  373 F.3d 1199 (D.C. Cir. 2004) ................................................................................. 13, 14, 15

*In re Microsoft Corp. Antitrust Litig.,*
  232 F. Supp. 2d 534 (D. Md. 2002),
  *rev'd on other grounds,* 355 F.3d 322 (4th Cir. 2004) ........................................................ 10

*Montana v. United States,*
  440 U.S. 147 (1979) .............................................................................................................. 3

*In re Nat'l Credit Mgmt. Group, LLC,*
  21 F. Supp. 2d 424 (D.N.J. 1998) ............................................................................. 17, 18, 19

*Nationwide Mut. Ins. Co. v. Auto. Serv. Councils, Inc.,*
  490 F. Supp. 282 (D. Del. 1980) ........................................................................................... 19

*New York v. Julius Nasso Concrete Corp.,*
  202 F.3d 82 (2d Cir. 2000) ............................................................................................. 10, 11

*New York v. Microsoft, Corp.,*
  209 F. Supp. 2d 132 (D.D.C. 2002) .......................................................................... 1, 13, 14, 15

*New York v. Microsoft Corp.,*
  224 F. Supp. 2d 76 (D.D.C. 2002),
  *aff'd sub nom, Massachusetts v. Microsoft,* 373 F.3d 1199 (D.C. Cir. 2004) ................... 13, 14

*Pennsylvania Dental Assoc. v. Medical Serv. Ass'n.,*
  815 F.2d 270 (3d Cir. 1987) .................................................................................................. 12

*Pleasure Driveway & Park District v. Jones,*
  367 N.E.2d 111 (Ill. App. Ct. 1977) ...................................................................................... 4

*Pittsburgh v. West Penn Power Co.,*
  147 F.3d 256 (3d Cir. 1998) ............................................................................................ 15, 16

*Reiter v. Sonotone Corp.,*
  442 U.S. 330 (1979) .............................................................................................................. 2

*United States v. Borden Co.,*
  347 U.S. 514 (1954) .................................................................................................. 1, 14, 19

*United States v. Dentsply Int'l, Inc.*,
  No. Civ. A. 99-005 (SLR), 2006 WL 2612167
  (D. Del. Apr. 26, 2006) ...............................................................................................18

*United States v. Dentsply Int'l, Inc.*,
  399 F.3d 181 (3d Cir. 2005),
  *cert. denied*, 126 S. Ct. 1023 (2006) ...................................................................... passim

*United States v. Dentsply Int'l, Inc.*,
  277 F. Supp. 2d 387 (D. Del. 2003), *rev'd*, 399F.3d 181 (3d Cir. 2005),
  *cert. denied*, 126 S. Ct. 1023 (2006) ...................................................................... passim

*United States v. Microsoft Corp.*,
  87 F. Supp. 2d 30 (D.D.C. 2000),
  *aff'd in part, rev'd in part*, 253 F.3d 34 (D.C. Cir. 2001) ........................................10

*United States v. Microsoft Corp.*,
  97 F. Supp. 2d 59 (D.D.C. 2000),
  *aff'd in part, rev'd in part*, 253 F.3d 34 (D.C. Cir. 2001) ........................................10

*United States v. Microsoft Corp.*,
  84 F. Supp. 2d 9 (D.D.C. 1999).................................................................................10

*United States v. Microsoft Corp.*,
  231 F. Supp. 2d 144 (D.D.C. 2002),
  *aff'd sub nom, Massachusetts v. Microsoft*, 373 F.3d 1199 (D.C. Cir. 2004) ...................... 13, 14

*In re Warfarin Sodium Antitrust Litig.*,
  214 F.3d 395 (3d Cir. 2000) .........................................................................................5

*Wilk v. American Med. Ass'n*,
  895 F.2d 352 (7th Cir. 1990) .........................................................................................6

*Zdanok v. Glidden Co., Durkee Famous Foods Div.*,
  327 F.2d 944 (2d Cir. 1964) ..........................................................................................3

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969) ....................................................................................................15

## STATUTES

15 U.S.C. § 2 ( Section 2 of the Sherman Act) ...............................................................5

15 U.S.C. § 4 ( Section 4 of the Clayton Act) ................................................................5

15 U.S.C. § 16 ( Section 16 of the Clayton Act) ...................................................1, 5, 14, 16

## OTHER AUTHORITY

2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 335a (2d ed. 2002)..................................13

3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 653c (2d ed. 2002)..................................20

43A C.J.S. *Injunctions* § 69 (2004)..........................................................................................................17

*Developments in the Law: Injunctions*, 78 Harv. L. Rev. 994 (1965) ................................................19

In the Government's case against Dentsply, which involved the same conduct at issue here, the Third Circuit held that Dentsply's exclusive dealing violated the antitrust laws because it "**limits the choices of products open to dental laboratories**." *United States v. Dentsply*, 399 F.3d 181, 194, 196-97 (3d Cir. 2005), *cert denied*, 126 S.Ct. 1023 (2006).

Not only has Dentsply injured dental laboratories, but also, the injury has been **intentional**. As the director of sales and marketing for Dentsply's artificial teeth division testified at trial, the purpose of Dentsply's exclusive dealing policy is that

> you don't want to give your end user, the customer, meaning a laboratory and/or a dentist, a choice. He has to buy Dentsply teeth. That's the only thing that's available.

*United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d, 387, 419 (D. Del. 2003).

Moreover, not only has Dentsply intentionally injured dental laboratories, but also, as the Third Circuit implicitly held when it instructed this Court to grant an injunction against Dentsply on behalf of the Government, there is a reasonable likelihood of future violations by Dentsply that will cause further injury to dental laboratories.

Plaintiffs are dental laboratories.

Although the Government has been granted a limited injunction against Dentsply's unlawful conduct, the Supreme Court has held that "[**t]he private-injunction action**[, under Section 16 of the Clayton Act,] **supplements Government enforcement of the antitrust laws** . . . . These private and public actions were designed to be **cumulative, not mutually exclusive**." *United States v. Borden Co.*, 347 U.S. 514, 517-18, 520 (1954) (emphasis added); *accord New York v. Microsoft Corp.*, 209 F. Supp.2d 132, 154 (D.D.C. 2002) (where injunctive relief already had been obtained by the Government, holding that injunctive relief also could be awarded to private plaintiffs, because "the Supreme Court has expressly acknowledged that the rights of private plaintiffs pursuant to Section 16 of the Clayton Act are meant to 'supplement [ ] Government enforcement of the antitrust laws").

Congress's intention that injunctive relief under the antitrust laws be granted cumulatively—*i.e.*, to private parties as well as to the Government—is especially relevant here, because Plaintiffs are consumers. As the Supreme Court has held, "Congress designed the Sherman Act as a 'consumer welfare prescription.'" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343-44 (1979).

Not only are Plaintiffs entitled to share in such cumulative relief as is appropriate under the antitrust laws, but also, Plaintiffs still are threatened with injury. Dentsply exhibits neither contrition nor even awareness that its conduct has been unlawful. Far from expressing any regret for having injured Plaintiffs, Dentsply bases its opposition to Plaintiffs' motion on a transparently meritless argument that the issue of harm to dental laboratories has never been decided or even litigated. The threat to Plaintiffs is especially serious, because, as indirect purchasers from Dentsply under the rule of *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), it's unlikely that Plaintiffs will ever be able to recover damages from Dentsply, if and when Dentsply injures them again.

Granting injunctive relief to Plaintiffs also will serve the public interest. As held by both this Court and the Third Circuit, dental laboratories are "the relevant consumers," 399 F.3d at 188 (quoting 277 F. Supp. 2d at 396). Therefore, Plaintiffs are better situated than anyone else is, to monitor Dentsply's conduct.

## ARGUMENT

## I. THE THIRD CIRCUIT'S DECISION IN THE GOVERNMENT'S CASE HAS ESTABLISHED THAT THERE IS A COGNIZABLE THREAT OF ANTITRUST INJURY TO PLAINTIFFS

### A. Where, as Here, an Appellate Court Has Held Defendant Liable While Reversing the Judgment Below, the Appellate Decision is Preclusive

Dentsply argues that the Third Circuit's opinion cannot be preclusive because, according to Dentsply, only a decision issued by a lower court can be preclusive.

Dentsply is wrong.

The determination of an issue will provide sufficient basis for collateral estoppel, so long as

the issue has been "determined by a court of competent jurisdiction," *Montana v. United States*, 440 U.S. 147, 153 (1979).

Where, as here, the appellate court has **reversed** the judgment of the trial court, and, therefore, the relevant issue has been determined by the appellate court, the appellate decision provides a fully sufficient basis for collateral estoppel. *See In re Keaty*, 397 F.3d 264, 266-68, 272 (5th Cir. 2005) (where Louisiana trial court denied motion for imposing sanctions, and **Louisiana Court of Appeal reversed** and held that party's conduct "was sanctionable," and where, subsequently, federal bankruptcy court refused to give preclusive effect to the decision of the Louisiana Court of Appeal, **Fifth Circuit held** "[w]e conclude that the bankruptcy court erred in not giving preclusive effect to the state appellate court's findings," because "the state appellate court ruled expressly on, and thus determined, the sanctions issue"); *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944 (2d Cir. 1964) (Friendly, J.) (where district court ruled for defendant on breach of contract claim, and **Second Circuit reversed** on issue of liability and remanded for trial of damages; and where, on remand, and **also** in a new, different case brought by different plaintiffs against the same defendant, district court heard new evidence regarding liability, **Second Circuit held** that its prior decision "precluded [defendant] from offering new evidence to contest [liability] not only against the five original plaintiffs but against the [plaintiffs in the second case] as well").[1]

The **sole** case relied on by Dentsply, *Kurek v. Pleasure Driveway & Park District*, 583 F.2d 378 (7th Cir. 1978), regards a prior **affirmance**—not a prior reversal—and, to the extent that *Kurek* said the prior affirmance was not preclusive, that statement was nothing but **dicta**.

First, in *Kurek*, where defendants unsuccessfully argued to the Seventh Circuit for preclusion

---

[1] Here, the Third Circuit not only reversed the judgment on liability, but also instructed the District Court to "grant injunctive relief requested by the Government." 399 F.3d at 197.

*See also Hirschfeld v. Spanakos*, 104 F.3d 16, 20 (2d Cir. 1997) (reversing because District Court failed to give preclusive effect to determination made by Second Circuit).

based on an opinion of the Illinois Court of Appeals, unlike here, the opinion of the Illinois Court of Appeals was an affirmance. *Id.* at 380 (noting that *Pleasure Driveway & Park District v. Jones*, 367 N.E. 2d 111 (Ill. App. Ct. July 18, 1977), "affirm[ed] the judgment" of an Illinois state trial court, regarding claim based on "right to petition").[2]

Second, in the *Kerkuk* decision, the Seventh Circuit did not make any holding regarding the preclusion issue, because the argument for preclusion based on the decision of the Illinois Court of Appeals had not yet been raised in the district court. *Id.* at 379 (explaining that the case was on remand from the Supreme Court, which had reviewed only the Seventh Circuit's prior decision, *Kurek v. Pleasure Driveway & Park District*, 552 F.2d 580 (7th Cir. May 26, 1977), which, as can be seen by comparing the dates of the opinions, was decided **prior** to the decision by the Illinois Court of Appeals). In the decision cited by Dentsply, the only **holding** by the Seventh Circuit was that "the district court must determine for itself whether estoppel is justified in plaintiffs' federal claims." 583 F.2d at 380. Anything else said by the Seventh Circuit was mere dicta.

### B.    The Third Circuit Held, in an Essential Holding, that Dentsply's Unlawful Conduct Has Caused Antitrust Injury to Dental Laboratories

Dentsply argues that "the issue of antitrust injury to dental laboratories was not litigated in, determined by or essential to the related Government action." Dentsply's Br. at 7.

Dentsply's argument is both wrong and misleading.

Dentsply's argument is wrong, because, as demonstrated, *infra*, the Third Circuit did determine that Dentsply's unlawful exclusive dealing caused antitrust injury to dental laboratories.

Dentsply's argument is also **misleading**, because there is no requirement that an antitrust plaintiff seeking an injunction prove that it has suffered a past injury, whether antitrust or otherwise.

---

[2] Even the Illinois Court of Appeals had not viewed itself as doing anything more than affirming the judgment determined below. *See Pleasure Driveway*, 367 N.E. 2d at 117 ("the trial court's judgment in favor of plaintiff on the defendants' [right to petition] counterclaim was well supported by both the law and the evidence").

"While relief sought pursuant to section 4 of the Clayton Act requires proof of loss . . . injunctive relief under section 16 only requires a **threat** of loss." *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399 (3d Cir. 2000) (emphasis added).

Thus, the Third Circuit's holding that dental laboratories have suffered antitrust injury as a result of Dentsply's exclusive dealing is important here, not because Plaintiffs must prove a past injury to any particular dental laboratory, but, rather, because the past injury to dental laboratories, as a group, establishes that the threat of future injury from Dentsply's unlawful conduct is a threat of future antitrust injury to every dental laboratory, including Plaintiffs. 214 F.3d at 399.[3]

1.    **The Third Circuit Held That Dentsply's Exclusive Dealing
    Injured Dental Laboratories by Limiting Their Product Choices**

As a threshold matter, the Third Circuit explicitly held that "the 'labs are the relevant consumers for prefabricated artificial teeth.'" 399 F.3d at 188 (quoting 277 F. supp. 2d at 396).[4]

The Third Circuit then explicitly determined that dental laboratories have been injured by Dentsply's exclusive dealing. This determination, based on strenuous litigation of the issue by the parties, was essential to a more comprehensive holding—namely, that Dentsply's exclusive dealing caused anticompetitive effects—which, in turn, was essential to the Third Circuit's ultimate holding—that Dentsply was liable for violating Section 2 of the Sherman Act.

As the Third Circuit explained, the presence of anti-competitive effects is one of the two essential elements of a violation of Section 2, based on exclusive dealing:

---

[3] As Plaintiffs demonstrated in their Opening Brief, the Third Circuit's award of injunctive relief to the Government necessarily implies a holding by the Third Circuit that Dentsply's unlawful conduct poses a threat of antitrust injury sufficient to support an award of injunctive relief to private plaintiffs. *See* D.I. 257, at 20-24.

[4] Together with the judgment that Dentsply was liable, this holding, even without more, would have been enough to establish that dental laboratories suffered antitrust injury, because, as the Third Circuit elsewhere has held, the "requirement [of antitrust injury under *Brunswick Corp.*] is generally met if the plaintiff is a 'competitor or a consumer in the relevant market.'" *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993).

> A prerequisite for such a violation is a finding that monopoly power
> exists [citation omitted].  In addition, **the exclusionary conduct
> must have an anti-competitive effect**.

*Id.* at 187 (emphasis added).

The Third Circuit stated its holding that Dentsply's exclusive dealing has anti-competitive effects in a section of its opinion titled, appropriately, "Anti-Competitive Effects."  *Id.* at 192-96.  In this section, the Third Circuit discussed two different kinds of anticompetitive effects.

First, the Third Circuit held that Dentsply's exclusive dealing injures competition:  "[b]y ensuring that the key dealers offer Dentsply teeth [to laboratories] either as the only or dominant choice, Dealer Criterion 6 . . . helps keep sales of competing teeth below the critical level necessary for any rival to pose a real threat to Dentsply's market share, *id.* at 191.

Second, under a heading titled "Limitation of Choice," the Third Circuit held that Dentsply's exclusive dealing also injures dental laboratories:

> **An additional anti-competitive effect is** seen in the exclusionary
> practice here that **limits the choices of products open to dental
> laboratories, the ultimate users**.  A dealer locked into the Dentsply
> line is unable to heed a request for a different manufacturers' product
> and, from the standpoint of convenience, that inability to some
> extent **impairs the laboratory's choice in the marketplace**.

*Id.* at 194; *see Wilk v. American Med. Ass'n*, 895 F.2d 352, 371 (7th Cir. 1990) (affirming injunctive relief because it will "eliminate such anticompetitive effects of the boycott as interfering with consumers' free choice in choosing a product").

The Third Circuit's opinion does not anywhere suggest that **either** of these effects—*i.e.*, the effect on competitors, or the effect on dental laboratories—was superfluous to its holding that Dentsply's exclusive dealing had anticompetitive effects.  Indeed, the fact that the title of the section includes the **plural** word—"effects"—underscores that the holding was that Dentsply's exclusive dealing had multiple anticompetitive effects, including the injury that it caused to dental laboratories as well as the injury that it caused to Dentsply's competitors.

Reinforcing the conclusion that the injury to dental laboratories was an essential part of the holding regarding anticompetitive effects is the fact that, elsewhere, the Third Circuit has held that a showing of injury to **consumers** is essential to proof of an antitrust violation. *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 385 (3d Cir. 2005) (under *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), "**antitrust plaintiffs must show** a causal connection between the defendant's anti-competitive conduct and **injury to consumers**[; i]njury to competitors does not suffice").

Even if the two anti-competitive effects—injury to Dentsply's competitors, and injury to dental laboratories—were meant by the Third Circuit to be alternative holdings, nevertheless, as a matter of law, each such alternative holding was essential to the Third Circuit's judgment, and therefore has preclusive effect. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255-56, (3d Cir. 2006) (giving "preclusive effect" to "alternative holding," stating that "clear rule" is preferable to "case-by-case evaluation," and therefore also holding that "we adopt the view . . . that permit[s] the application of issue preclusion to alternative findings").[5]

### 2. The Issue of Whether Dental Laboratories Were Injured Was Fiercely Litigated by the Parties

Not only was the Third Circuit's holding that dental laboratories have been injured essential to its judgment, but also, the issue of whether dental laboratories were injured was fiercely litigated by the parties to the Government's case, during both the trial and the appeal.

---

[5] The clarity with which the Third Circuit specifically addressed the issue of injury to dental laboratories contrasts sharply with the circumstances in the case relied on by Dentsply, *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir. 1970). *See* Dentsply's Br. at 9. In *Kauffman*, defendant law officers wanted to preclude the issue of whether they had conspired to obtain a conviction by knowingly using **perjured testimony**, and wanted to base preclusion on nothing more than the judgment of conviction itself—which was nothing but a jury's "general verdict of guilty"—and wanted to do so "without examination of the record." *Id.* at 1271, 1275. Unlike here, where the Third Circuit specifically and clearly addressed the issue of harm to dental laboratories, in *Kauffman*, it was impossible to tell from a jury's "general verdict of guilty"—and "without examination of the record"—whether the jury had decided that "every witness" was truthful, much less whether the veracity of the witnesses "had been adequately put in issue." *Id.* at 1271, 1271 n.10.

The Government's Proposed Findings of Fact and Conclusions of Law made clear that "[dental l]abs are the relevant consumer for prefabricated artificial teeth." Ex. A. at 16.

The Government's "Brief in Support of its Proposed Findings of Fact and Conclusions of Law," then argued that the Government had proven "anticompetitive effects" by two kinds of "direct evidence," each of which was evidence of harm to dental laboratories. Ex. B at 35-39.

The very first kind of anticompetitive effect was "frustration of consumer preferences." *Id.* at 35. In its Proposed Findings & Conclusions, the Government argued "**consumer preferences** in today's market **are being frustrated**. Some **labs** that want to buy the teeth of Vita, Ivoclar and others, are not buying them because those teeth are not available through the same dealers selling Trubyte teeth." Ex. A. at 6-7 (emphasis added). "Dentsply's conduct has **reduced consumer choice** and prevented **labs** from buying their preferred brands through their preferred distribution channel. . . . Dentsply **prevented these lab customers from getting what they wanted** from where they wanted it." *Id.* at 131 (emphasis added). "Dentsply's conduct  has caused significant anticompetitive harm in the market:  **frustrated consumer choice**, higher prices, and inferior quality and service." *Id.* at 213 (opening sentence of final paragraph; emphasis added).[6]

In Dentsply's brief in support of its own Proposed Findings of Fact, Dentsply first noted that "the parties here agree that **dental laboratories are the customers** in the artificial tooth

---

[6]  The second kind of anticompetitive effect that the Government argued it had proven was "supracompetitive prices" charged to dental laboratories. Ex. B at 38 ("[i]n the absence of Dentsply's exclusionary conduct, prices will fall because consumers [not dealers] will become more price sensitive once multiple brands become available through the dealer distribution channel that consumers prefer." The Third Circuit found it "noteworthy that experts for both parties testified that were Dealer Criterion 6 abolished, prices would fall." 399 F.3d at 190-91. The prices referenced by the Third Circuit were the prices charged to laboratories, as shown by the fact that, not only did the Government argue for an effect on consumer prices, but also, Dentsply's rebuttal was framed in terms of consumer prices. *See* Ex. D (Dentsply's brief), at 66 (citing to Dentsply's Proposed Findings of Fact ¶¶ 270-71); Ex. C, at ¶ 270, ¶ 270 n.30, ¶ 271 (comparing Dentsply's "suggested **lab price** rate" with "Vident's lowest 'Discounted **Lab Price**'") (emphasis added).

market," Ex. D, at 4 (emphasis added), and then argued that the Government had failed to prove harm to dental laboratories.

In a section titled "The Agency Failed to Prove a Plausible, Palpable Adverse Effect on Competition," Dentsply argued that "[t]he agency has no evidence from a single dental lab that it was unable to get the rival teeth that it needed; rather, the evidence demonstrates that for the most part there is no demand for the teeth." Ex. D, at 43. "The agency did not present evidence from a single dental laboratory that it had refrained from purchasing or reduced its purchases of rival tooth lines because those tooth lines were not available from authorized Trubyte dealers." *Id.* at 45.

In its Reply, the Government reiterated that the anticompetitive effect of Dentsply's exclusive dealing was proven by two kinds of direct evidence: "Dentsply has **frustrated consumer preferences** and raised prices." Ex. E, at 23 (emphasis added).

The Government stressed that "ensuring that anticompetitive conduct does not frustrate consumer choice is one of the fundamental goals of the antitrust laws," and that "[e]ven Dentsply's expert, Dr. Marvel, acknowledged that **frustrated consumer preferences is anticompetitive, even absent complete foreclosure**." Ex. E at 17-18 (emphasis added). "The evidence is clear that Dentsply's conduct has frustrated consumer preferences. . . . The consumer harm that has occurred has been substantial and has related to important attributes of product quality." *Id.*, at 15-16. For example, "[d]ealers were receiving requests from **lab customers** who **wanted to buy Vita teeth** from them, but Dentsply prevented dealers from adding the Vita line." *Id.* at 16 (emphasis added).[7]

On appeal, the Government reiterated that laboratories' requests to dealers for non-Dentsply teeth had been frustrated, citing examples from the record that subsequently were

---

[7] According to Dentsply, eight dental laboratories testified live at trial, and eighteen more dental laboratory witnesses were deposed prior to trial. Ex. D, at 10. In addition, a Government expert conducted a "survey of dental labs," which the Court ultimately ruled inadmissible, but only after extensive litigation concerning its merits. *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 435, 454 (D. Del. 2003); Ex. A, at 47-65; Ex. D, at 45-48; Ex. E, at 41-46.

relied on by the Third Circuit in its holding that Dentsply's exclusive dealing had anti-competitive

effects. *See* Ex. F (Government's opening appellate brief) at 31, 31 n.19.

Dentsply responded that the District Court had found "no reduction in consumer choice,"

Ex. G (Dentsply's appellate brief) at 44, that there was no evidence of "restricted consumer choice,"

*id.* at 56, that "the government had failed to provide any evidence that dental labs 'feel precluded

from dealing with other manufacturers,'" *id.* at 28, and that "no lab testified that it would not buy

the rivals' teeth because Dentsply's dealers did not carry them," *id.* at 54-55.

Thus, clearly, the issue of whether dental laboratories were injured was thoroughly litigated,

and then determined by the Third Circuit as an essential part of its judgment. Nothing could be

more contrary to judicial efficiency and justice than to require that this issue be tried a second time.[8]

---

[8] Dentsply bases its entire argument against preclusion on a single district court decision from
another circuit that was reversed on other grounds, *In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp.
2d 534 (D. Md. 2002), *rev'd on other grounds*, 355 F.3d 322 (4th Cir. 2004). In that case, Microsoft had
been held liable in a Government case brought in the District of Columbia, and, subsequently, the
District Court for the District of Maryland held that the issue of injury to certain consumers and
competitors had not yet been determined. *Id.* at 535, 538 (reviewing argument for estoppel based on
*United States v. Microsoft*, 84 F. Supp. 2d 9 (D.D.C. 1999), 87 F. Supp. 2d 30 (D.D.C. 2000), and 97 F.
Supp. 2d 59 (D.D.C. 2000), *all of which aff'd in part, rev'd in part*, 253 F.3d 34 (D.C. Cir. 2001)).
However, **unlike here**, the District of Maryland plaintiffs were seeking damages, 232 F. Supp. 2d at
538, and therefore, unlike here, were required to prove a **past** injury to them **individually**.

Moreover, the District of Maryland opinion relied on by Dentsply did **not** hold that the issue of
antitrust injury to consumers can never be precluded based on a judgment in a prior Government
action; rather, it simply held that, **unlike here**, nothing in the Government's *Microsoft* case indicated
that the issue of past injury to the private plaintiffs had yet been determined. *See* 232 F. Supp. 2d at
538 (stating that "[t]he issue as to [one of the plaintiffs] is closer").

Still further, in the Government's *Microsoft* case, an **immensely complex** case, with three
separate but related district court decisions regarding, in turn, findings of fact, conclusions of law,
and a remedy, **unlike in the Government's case against Dentsply**, neither the district court nor
the court of appeals ever issued a holding defining **a discrete group** of individuals as the relevant
consumers or competitors. *Compare Dentsply*, 399 F.3d at 188 (defining "the relevant consumers" as
"dental laboratories" (relying on 277 F. Supp. 2d at 396)); *Dentsply*, 277 F. Supp. 2d at 391 (finding
that "[f]or purposes of this case, eight manufacturers [of artificial teeth] are particularly relevant"),
*with Microsoft*, 87 F. Supp. 2d at 55 (Government's case, noting that "**millions of citizens**" in **each
state** "utilize PCs running on Microsoft software," without defining any particular group as the
"relevant consumers") (emphasis added).

By contrast, in *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, (2d Cir. 2000), where the

3.      **As a Matter of Law, the Injury Here to
Dental Laboratories is an Antitrust Injury**

An antitrust injury is an injury "that flows from that which makes defendants' acts unlawful[;

t]he injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts

made possible by the violation." *Brunswick Corp.*, 429 U.S. at 489.  Where, as here, the injury

suffered by dental laboratories—limitation of product choice—has been held to be an

"anti-competitive effect" of defendants illegal conduct, obviously the threatened injury to Plaintiffs

"flows from that which makes defendants' acts unlawful," and therefore is an antitrust injury.

Moreover, the Third Circuit has held that, as a matter of law, where, as here, a consumer is

injured as a result of a monopolist's exclusion of its competitors from the market, such injury to the

consumer is an antitrust injury.  *Harrison Aire, Inc.*, 423 F.3d at 386 (buyer sufficiently alleged

antitrust injury, because "exclusion of competitors, to the detriment of consumers, is the sort of

harm the antitrust laws are intended to prevent").

Still further, the specific injury of limiting consumer choice is a classic form of antitrust

injury.  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1011, 1014 (9th cir. 2003) ("customer"

adequately alleged antitrust injury because "[o]ne form of antitrust injury is '[c]oercive activity that

prevents its victims from making free choices between market alternatives'"); *see FTC v. Indiana Fed'n*

*of Dentists*, 476 U.S. 447, 692 (1986) ("an agreement limiting consumer choice by impeding the

'ordinary give and take of the market place' cannot be sustained under the Rule of Reason")

---

Government had obtained a criminal conviction of defendants for bid-rigging (*id.* at 84), when
private plaintiffs (the State of New York) brought their own action against the same defendants for
"**injunctive relief** and damages" (*id.* at 85; emphasis added), the district court held that defendants
were collaterally estopped "from contesting their involvement in the bid rigging conpsiracy **and the
conspiracy's impact on the State**" (*id.* at 85; emphasis added), and excluded from the preclusive
effect of the Government conviction only "the fact of **damages**" and the amount of **damages** (*id.*
at 86; emphasis added).  The Second Circuit then affirmed the entire ruling "as to collateral
estoppel." *Id.* at 86.  Here, where Plaintiffs are not seeking damages, the Third Circuit's
determination that dental laboratories were injured by Dentsply's exclusive dealing should be given
the same preclusive effect that *Julius Nasso* gave to "the conspiracy's impact on the State."  *Id.* at 85.

(unanimous decision); *accord Pennsylvania Dental Assoc. v. Medical Serv. Ass'n*, 815 F.2d 270, 275-76 (3d Cir. 1987) (quoting *Indiana Fed'n of Dentists*).

### 4.    Dentsply Has Not Contested that Plaintiffs are Dental Laboratories

Plaintiffs have shown, and Dentsply has never disputed, that Plaintiffs are dental laboratories who have purchased Dentsply teeth. *See* D.I. 257 at 7 n.2; D.I. 258 at Ex. C; *see also* Ex. H hereto. Therefore, the threat of antitrust injury to dental laboratories is also a threat to Plaintiffs.[9]

### C.    The Complaint Alleges that Dentsply's Unlawful Conduct Injured Plaintiffs by Limiting Their Product Choices

With what appears to be complete disregard for its own credibility, Dentsply argues that "Plaintiffs' complaint, of course, does not allege that they were injured by having fewer product choices." Dentsply's Br. at 11.

Contrary to Dentsply's assertion, the Complaint alleges that "Dentsply's exclusion of its rivals has resulted in higher prices **and loss of customer choice**" (¶ 49) (emphasis added), and that "Plaintiffs and the other members of the Plaintiff Class have each been proximately injured in their business and property as a result of the conduct alleged herein" (¶ 52).

## II.    THE GOVERNMENT'S INJUNCTION DOES NOT ELIMINATE THE THREAT OF INJURY TO PLAINTIFFS HEREIN

**Under the antitrust laws**, the mere existence of an injunction enforceable by the Government does not, without more, preclude an award of injunctive relief to private plaintiffs regarding substantially the same wrongful conduct. *See* D.I. 257, at 16-18.

---

[9] Dentsply argues that a holding here of collateral estoppel on the issue of antitrust injury would unfairly eliminate the requirement of showing antitrust injury for "anyone claiming to be a consumer." Dentsply's Br. at 6. Dentsply is wrong. Such a holding would apply only to dental laboratories, "the relevant consumers for prefabricated artificial teeth." 399 F.3d at 188 (quoting 277 F. Supp. 2d at 396). Moreover, every dental laboratory who purchased Dentsply teeth during the period of Dentsply's exclusive dealing policy is a member of the proposed Plaintiff Class herein. Cmpl. ¶ 10. Dentsply can eliminate the possibility of there being what Dentsply calls "follow-on" suits, by simply requesting that the proposed Plaintiff Class be certified.

A.     **Under the *Microsoft* Cases, Plaintiffs are Entitled to an Injunction**

The double injunctive decrees entered against Microsoft—one, on behalf of the

Government, and, the other, on behalf of private plaintiffs—show that, where, as here, the private

plaintiffs are consumers who brought their suit essentially concurrently with the Government's suit,

the private plaintiffs will be granted an injunction, even if similar relief, enforceable by the

Government, has been in place for as much as a year. *See* D.I.  257, at 16-18 (explaining

circumstances and nature of injunctive decrees entered in *United States v. Microsoft Corp.*, 231 F. Supp.

2d 144, 151 n.2 (D.D.C. 2002) ("Government Case"), and *New York v. Microsoft Corp.*, 224 F. Supp.

2d 76, 266-77 (D.D.C. 2002) ("States Case")); *see* 277 F. Supp.2d at 389 (January 5, 1999, is when

Government filed suit against Dentsply); *Hess* D.I. 1 (April 21, 1999, is when Plaintiffs filed suit).[10]

Dentsply attempts to distinguish *New York v. Microsoft Corp.* on the ground that, when the

States were granted their injunction, although Microsoft already was complying with an almost

identical consent agreement executed with the Government (*see* 231 F. Supp. 2d at 151 n.2;

*Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1204 (D.C. Cir. 2004)), according to Dentsply, the

consent agreement had not yet been incorporated into a final judgment.  Dentsply's Br., at 17.

Assuming, *arguendo*, that a final judgment had not yet been entered, this is nothing but a

technicality.  Microsoft was constrained by a consent agreement with the Government, which

Microsoft, as well as the Government, had proposed to the court as the final decree.  231 F. Supp.

---

[10] Dentsply simply ignores the fact that the court in the States' case considered the States to be "private parties." *New York v. Microsoft Corp.* 209 F. Supp. 2d at 153-54; *see also* 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 335a, at 286 n.1 (2d ed. 2000) (under the federal antitrust laws, "[e]veryone other than the federal government fall in the 'private' plaintiff category, which thus includes a state attorney general invoking federal antitrust law—whether on behalf of the state or of its citizens").

Moreover, in *New York v. Microsoft Corp.*, the States were, essentially, consumers, because they brought their claims in their capacity as *parens patriae*, which, as the court held, rests upon a theory of "harm to the welfare of that state's citizens, rather than harm to the proprietary interest of the state." *New York v. Microsoft, Corp.*, 209 F. Supp. 2d 132, 150 (D.D.C. 2002).

2d at 151. By the time the same court issued an almost identical injunction to the States in their

separate case, Microsoft had been bound to the consent agreement for an entire year.[11]

Moreover, the decision that Dentsply relies on for its assertion that no final judgment had

yet been entered in the Government's case, *New York v. Microsoft*, 209 F. Supp. 2d 132 (D.D.C. June

12, 2002), was issued five months *prior* to the decision in which the States actually were granted their

injunction, *New York v. Microsoft*, 224 F. Supp. 2d 76, 86, 179 (D.D.C. Nov. 1, 2002) ("injunctive

decree entered as the remedy"), *aff'd*, 373 F.3d 1199 (D.C. Cir. 2004). On the very same day that the

States were granted their injunction, in the Government's separate case, the **same** court

"conditionally approve[d] the proposed consent decree **as the final judgment**." *United States v.*

*Microsoft*, 231 F. Supp. 2d 144, 202 (D.D.C. Nov. 1, 2002), *aff'd*, 373 F.3d 1199 (D.C. Cir. 2004).[12]

Still further, in the States' case, the court specifically justified granting injunctive relief to the

States on the ground that "the Supreme Court has expressly acknowledged that the rights of private

plaintiffs pursuant to Section 16 of the Clayton Act are meant to 'supplement [ ] Government

enforcement of the antitrust laws.'" 209 F. Supp. 2d 132, 153-54 (quoting *Borden*, 347 U.S. at 518).[13]

---

[11] The fact that the two *Microsoft* cases had, for a while, been consolidated has no significance.
As the decision relied on by Dentsply held, "consolidation 'does not merge the suits into a single
cause, or change the rights of the parties.'" *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 147
(D.D.C. 2002).

[12] Moreover, the only condition imposed by the court on the Government's consent agreement
was that it be modified to give the court "jurisdiction to take action *sua sponte* in conjunction with the
enforcement of the decree." *Id.* Thus, at the time when the States were being granted their own
separate injunction, everyone knew that the pre-existing consent agreement in the Government's
case would not be modified in the future, except by a term that would make enforcement of the
Government's injunction even stricter. *See also* 373 F.3d at 1236 (noting that the district court's
authority to review the Government's consent agreement was "limited" and "narrow").

[13] Dentsply also attempts to distinguish *New York v. Microsoft Corp.*, on a ground that, according
to Dentsply, in *New York v. Microsoft Corp.*, the Circuit Court had already found that the states "had
proven injury," and thus, according to Dentsply, "on remand, the only question was whether the
nine states were entitled to injunctive relief." Dentsply's Br., at 17. **However**, the same is true here,
because, as demonstrated, *supra*, the Third Circuit already has held that Dentsply's exclusive dealing
caused antitrust injury to dental laboratories, and the only question for the Court is whether Plaintiff
dental laboratories are entitled to an injunction. **Moreover**, Dentsply fails to mention that, in *New*

**B.    Dentsply's Cases Do Not Involve Injunctive Relief Under the Antitrust Laws**

Because this case is brought under the antitrust laws, and because this case was brought essentially concurrently with the Government's case against Dentsply, the likelihood of future injury to dental laboratories implicitly found by the Third Circuit—when it instructed this Court to grant the Government an injunction—is not, with respect to Plaintiffs, diminished, merely because the Government's injunction has now been granted. *See Massachusetts v. Microsoft Corp.*, 373 F.3d at 1250 (affirming order holding that Government's consent decree enjoining Microsoft was in the public interest, and, simultaneously, affirming order entered **a year later,** in the separate case brought against Microsoft by the States, which granted essentially the same injunctive relief to the States that had been approved one year earlier on behalf of the Government).[14]

Dentsply has not cited **any** antitrust decision in which injunctive relief was denied to private plaintiffs because similar relief had previously been awarded to the Government.

The only antitrust case discussed by Dentsply in its argument regarding injunctions, *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998), did not even involve any injunction granted to the Government, and, for other reasons as well, has no relevance here. *See, e.g., id.* at 269 ("[w]e make clear that this ruling is fact specific to . . . 'regulated utility monopolies'").

In *W. Penn Power*, the City of Pittsburgh sought to enjoin two utility companies from merging, and sought damages for an allegedly collusive pre-merger agreement between the two

---

*York v. Microsoft Corp.*, the Circuit Court made no explicit holding regarding antitrust injury; rather, the decision relied on by Dentsply merely found an "implicit" holding of antitrust injury based on the appellate court's holding of liability. 209 F. Supp. 2d 140. Thus, if there is any difference between that case and this one, **this one** has the more explicit holding that persons such as Plaintiffs have suffered antitrust injury.

[14] *Cf. Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 131 n.25 (1969) (in antitrust case, rejecting argument that developments after those in the trial record had rendered injunction unnecessary, and pointing out that defendant is "free to demonstrate in the future that the need for injunctive relief . . . has been eliminated, or that a change of circumstances . . . justifies additional modification of the injunction").

companies, on the ground that the merger and agreement lessened competition.  147 F.3d at 258, 262, 266.  The Third Circuit held that, in the electric utility industry, "the competitive process does not even exist because of regulatory restraints."  *Id.* at 267.  The court did **not** conclude that Pittsburgh faced no threat of injury from defendants' conduct; rather, the court concluded that "any injury to the City did not result from a lessening of competition . . . . [rather, it] is an injury visited upon [Pittsburgh] by the regulated nature of utility services."  *Id.* at 266.

Here, by contrast, as demonstrated, *supra*, the threat of injury to Plaintiffs is a threat of classic antitrust injury—limitation of Plaintiffs' product choices resulting from Dentsply's coercive conduct in what otherwise would be an unregulated and competitive market.[15]

None of the other cases cited by Dentsply involved the federal antitrust laws.

*Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 469-72, 474-76 (6th Cir. 2004), which Dentsply describes as "highly instructive," is, in fact, not relevant.  In *Gallatin Steel*, plaintiffs sought an injunction under the Clean Air Act, which, by stark contrast with the antitrust laws, authorizes private suits "only when environmental officials '**fail** to exercise their enforcement responsibility.'"  *Id.* at 475 (emphasis in original).  Under such an act, the pre-existence of a Government injunction has a dramatically different legal impact than under the antitrust laws.  Moreover, unlike here, where it's unlikely that Plaintiffs will ever be able to recover damages from Dentsply, plaintiffs in *Gallatin Steel* had already been awarded compensatory and even punitive damages for violations similar to those that they sought to enjoin.  *Id.* at 469-72.

---

[15] Dentsply shamelessly misrepresents the holding of *W. Penn Power*.  Far from holding, as Dentsply argues, that the utilities were "barred from engaging in acts that would have anticompetitive effects," Dentsply's Br., at 14, the court essentially held that the defendants were barred from engaging in **competitive** acts.  *Id.* at 267 ("competitive process does not even exist because of regulatory restraints").

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 495 (1986), cited by Dentsply without explanation, also did not involve any Government injunction, and held nothing more than that "a plaintiff seeking injunctive relief under § 16 of the Clayton Act must show a threat of antitrust injury."

In *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 230-32 (3d Cir. 2003), plaintiffs sought an injunction under the Lanham Act—not the antitrust laws—against a defendant whose violation, unlike Dentsply's, was held to be unintentional (*i.e.*, defendant was an "innocent" infringer). *Compare* 277 F. Supp. 2d at 419 (testimony by Dentsply's director of sales that purpose of Dentsply's exclusive dealing is that "you don't want to give your end user, the customer, meaning a laboratory and/or a dentist a choice[; h]e has to buy Dentsply teeth").

Dentsply's remaining "authority" is nothing but dicta from a single common law case.[16]

### C.    Conduct of the Parties in *Jersey Dental* Supports Granting Plaintiffs  an Injunction

Dentsply argues that Plaintiffs "acknowledged" that they "do not face any real threat of future injury," because, in the *Jersey Dental* Amended Complaint (filed on October 10, 2006), Plaintiffs alleged that they "may continue to be damaged," and did not allege that they "will continue to be damaged."  Dentsply's Br. at 18-19.

First, Dentsply is wrong.  A threat of future injury will support a grant of injunctive relief even where the threat is less than a certainty.  *See In re Nat'l Credit Mgmt. Group, LLC*, 21 F. Supp. 2d 424, 440 (D.N.J. 1998) (injunction pursuant to statutory provision will be issued so long as there is "some reasonable likelihood" of future violations, and even *without* a "showing of the exact way" in which violations will cause harm).

Second, the arguments made by Dentsply in its motion to dismiss the *Jersey Dental* Amended Complaint demonstrate that Dentsply still refuses to acknowledge the "wrongful nature of its

---

[16] *See Hartman v. Witty*, 480 F.2d 337 (3d Cir. 1973) (action to enforce a common law injunction previously granted to plaintiff and providing for damages upon its breach; district court held that on-going harm was of a type outside the limits of the injunction and plaintiff should ask for another, different one; plaintiff did **not** ask for a second injunction; Third Circuit held that the existing injunction was broad enough to cover the on-going harm; and Third Circuit's comment that a second injunction would have been denied was nothing but dicta and has nothing to do with Government and private party injunctions under the antitrust laws); *see also* 43A C.J.S. *Injunctions* § 69 (2004) (cited by Dentsply but relying on no other authority except *Hartman v. Witty*).

conduct," which, in turn, provides fresh evidence that there is a very real threat of future violations by Dentsply. *Nat'l Credit Mgmt. Group*, 21 F. Supp. 2d at 440.

Thus, despite having been held liable by the Third Circuit for using "unfair practices" to "choke[ ] off the market for artificial teeth," 399 F.3d at 196, Dentsply repeatedly argues in its motion to dismiss the *Jersey Dental* Amended Complaint that its exclusive dealing was nothing but "routine vertical agreements." *Jersey* D.I. 273, at 6, 15.

Similarly, despite trial testimony by Dentsply's director of sales that the purpose of Dentsply's exclusive dealing was that "you don't want to give your end user, the customer, meaning a laboratory and/or a dentist, a choice[; h]e has to buy Dentsply teeth[; t]hat's the only thing that's available" 277 F. Supp. 2d 387, Dentsply now argues that "plaintiffs do not allege that Dentsply intended to harm them," and that the causal connection between Dentsply's conduct and any harm to Plaintiffs is "attenuated" and "remote." *Jersey* D.I. 273, at 20-21.

Moreover, the Dentsply lawyers making these arguments include Brian Addison, the person appointed by Dentsply, under the Government's injunction, as Dentsply's "Antitrust Compliance Officer." *See Jersey* D.I. 273, at 24, *Hess* D.I. 262, at Ex. A; *United States v. Dentsply*, 2006 WL 2612167, at "Compliance Program," ¶ A (D. Del. Apr. 26, 2006); *see also Hess* D.I. 257, at 21-22.

### D.    The Public Interest Will Be Served by Granting Plaintiffs an Injunction

As Plaintiffs demonstrated in their Opening Brief, "granting an injunction to Plaintiffs will not be redundant, but rather, will substantially enhance the effectiveness of the injunctive relief already granted in the Government's case," because "no one is better situated to monitor Dentsply's exclusive dealing practices than is a dental laboratory." D.I. 257, at 22-24.

Dentsply has responded that the Government "is in a far better position to know what is in the public interest." Dentsply's Br. 20. However, Dentsply's response misses the point.

It is the Court, and not merely the Department of Justice, who must determine the public interest, and who must do so while taking into account the Congressional policy in favor of "cumulative, not mutually exclusive" enforcement of the antitrust laws by both Government and private actions. *Borden Co.*, 347 U.S. at 517-18, 520; *see Nat'l Credit Mgmt. Group,* 21 F. Supp. 2d at 440 ("[w]here an injunction is sought pursuant to a statutory provision . . . . the public interest must be examined"); *Nationwide Mut. Ins. Co. v. Automotive Serv. Councils, Inc.,* 490 F. Supp. 282, 286 (D. Del. 1980) (goal of ensuring compliance with antitrust laws "stands clearly in the public interest").

E. **The Relief Unique to Plaintiffs' Request Will Help Eliminate the Threat of Injury from Dentsply's Unlawful Conduct**

Plaintiffs' Opening Brief explains, at length, why injunctive relief for Plaintiffs should include certain provisions not included in the Government's injunction. D.I. 257, at 25-29.

Dentsply fails to address Plaintiffs' argument that, at least initially, the injunction should be permanent, because the industry at issue is a "stagnant, no growth" market, 399 F.3d at 196, and because the Court is empowered to modify the injunction, if and "when a significant change of facts has taken place," *Developments in the Law: Injunctions*, 78 Harv. L. Rev. 994, 1082 (1965).

Regarding distribution of the Court's order, contrary to Dentsply's argument, distribution only to Dentsply's dealers—which is all that is required by the Government's injunction—does **not** "serve[s] the same purpose" as posting the injunction on Dentsply's web-site—as required under Plaintiffs' proposed order—since the former arrangement does nothing more than distribute the order among those who implemented the exclusive dealing, while the latter arrangement distributes the order to those who have been harmed by and can monitor any exclusive dealing.

As described, *supra*, the conduct in *Jersey Dental* of Brian Addison, Dentsply's self-appointed "compliance monitor," is a sufficient showing, if any were necessary, as to why a monitor should be appointed who is approved by, and reports to, the Court.

Plaintiffs' proposal to limit Dentsply's presence at meetings **between dealers and laboratories** (unless the laboratory requests Dentsply's presence)—so that Dentsply will not be able to police dealers' offers to laboratories—is blatantly mischaracterized by Dentsply as if it were a prohibition on meetings between **Dentsply and dealers**, or between **Dentsply and laboratories** *Compare* D.I. 257 at 28; *with* Dentsply's Br. at 22.

Finally, Dentsply does not cite any authority for it's argument that divestiture supposedly is a remedy only permitted in cases involving unlawful mergers.  On the contrary,

> [a]fter finding significant acts of monopolization by a clearly
> dominant firm, dissolution of the monopoly may be the best or
> perhaps the only means of deterring further exclusionary acts.

3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 653c (2d ed. 2002).  Moreover, there is no reason to believe, and Dentsply does not even argue, that divesting the Trubyte division from Dentsply would negatively affect the efficiency of either Trubyte or Dentsply.

## **CONCLUSION**

For the reasons stated herein and in Plaintiffs' Opening Brief, Plaintiffs' request for summary judgment and injunctive relief should be granted.

Dated:  March 2, 2007

Respectfully submitted,

LABATON SUCHAROW & RUDOFF LLP
Thomas A. Dubbs (No. 4868)
Richard T. Joffe (No. 2712)
100 Park Avenue
New York, New York  10017-5563
(212) 907-0700

Attorneys for Plaintiffs

CHIMICLES & TIKELLIS LLP


/S/Scott M. Tucker
Pamela S. Tikellis (No. 2171)
Robert J. Kriner, Jr. (No. 2546)
Scott M. Tucker (No. 4925)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19801
(302) 656-2500

Attorneys for Plaintiffs