IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOWARD HESS DENTAL LABORATORIES INC. and PHILIP GUTTIEREZ d/b/a Dentures Plus, on behalf of themselves and all others similarly situated, )))))) | |
| Plaintiffs, )) | |
| v. ) | Civ. No. 99-255-SLR |
| DENTSPLY INTERNATIONAL, INC., ))) | |
| Defendant. ) | |

| | |
|---|---|
| JERSEY DENTAL LABORATORIES f/k/a Howard Hess Dental Laboratories Incorporated, and PHILIP GUTTIEREZ d/b/a Dentures Plus, on behalf of themselves and all others similarly situated, ))))))))) | |
| Plaintiffs, )) | |
| v. ) | Civ. No. 01-267-SLR |
| DENTSPLY INTERNATIONAL, INC., and named dental dealers, )))) | |
| Defendants. ) | |

Pamela S. Tikellis, Esquire, Robert J. Kriner, Jr., Esquire, and A. Zachary Naylor, Esquire of Chimicles & Tikellis LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Thomas A. Dubbs, Esquire, Richard T. Joffe, Esquire, and Craig L. Briskin, Esquire of Labaton Sucharow & Rudoff LLP, New York, New York.

W. Harding Drane, Jr., Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants Accu Bite, Inc., Dental Supplies and Equipment, Inc., Hendon Dental Supply, Inc., Henry Schein Inc., Kentucky Dental Supply Co. Inc. n/k/a KDSC Liquidation Corp., Mohawk Dental Co., and Nowak Dental Supplies, Inc.

Of Counsel for Defendant Nowak Dental Supplies, Inc.; H. Cary A. Des Roches, Esquire of the Law Offices of Cary A. Des Roches, APLC, New Orleans, Louisiana.

Kathleen Jennings, Esquire and Karen V. Sullivan, Esquire of Oberly Jennings & Rhodunda, P.A., Wilmington, Delaware. Counsel for Defendant Arnold Dental Supply Co.

Henry E. Gallagher, Esquire and Jaclyn M. Mason, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware. Counsel for Defendants Atlanta Dental Supply Co., Benco Dental Co., and Darby Dental Laboratory Supply Co., Inc.

Kurt M. Heyman, Esquire and Particia L. Enerio, Esquire of Proctor Heyman LLP, Wilmington, Delaware. Counsel for Defendant Burkhart Dental Supply Co.

William D. Johnston, Esquire and Christian Douglas Wright, Esquire of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendant Dentsply International Inc. Of Counsel: Margaret M. Zwisler, Esquire, Eric J. McCarthy, Esquire, Charles R. Price, Esquire, and Amanda P. Biles, Esquire of Latham & Watkins LLP, Washington, D.C., and Brian M. Addison, Esquire, of Dentsply International Inc., York, Pennsylvania.

Edward M. McNally, Esquire and Fotini Antonia Skouvakis, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendants Iowa Dental Supply, Co., LLC, Johnson & Lund Co., Inc. and Marcus Dental Supply Co.

William J. Wade, Esquire of Richards, Layton & Finger, Wilmington, Delaware. Counsel for Defendant Patterson Dental Co.

James J. Maron, Esquire, Wayne A. Marvel, Esquire, and Antionette Hubbard, Esquire of Maron Marvel Bradley & Anderson, P.A., Wilmington, Delaware. Counsel for Defendant Pearson Dental Supply, Inc.

Thomas P. Preston, Esquire of Blank Rome LLP, Wilmington, Delaware. Counsel for Defendant Ryker Dental of Kentucky, Inc. Of Counsel: Charles W. Jirauch, Esquire of Quarles & Brady LLP, Pheonix, Arizona.

## MEMORANDUM OPINION

September 26, 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Currently pending before the court are several motions in two related cases.

Plaintiffs Howard Hess Dental Laboratories, Inc. ("Hess") and Philip Guttierez d/b/a

Dentures Plus ("Dentures Plus") filed an antitrust class action against Dentsply

International, Inc. ("Dentsply") on April 21, 1999. Hess Dental Laboratories, et. al v.

Dentsply International Inc. ("the Hess action"), Civ. No. 99-255 (D.I. 1). Hess

subsequently became Jersey Dental Laboratories ("Jersey Dental") and, on April 24,

2001, the same plaintiffs filed an antitrust class action against Dentsply and twenty-six

dental dealers.[1] Jersey Dental Laboratories f/k/a Howard Hess Dental Laboratories,

Inc. and Philip Guttierez d/b/a Dentures Plus v. Dentsply et. al ("the Jersey Dental

action"), Civ. No. 01-267 (D.I. 1). An amended complaint was filed in the Jersey Dental

action on October 10, 2006, wherein plaintiffs allege that defendants have conspired to

maintain a purported monopoly on the manufacture of artificial teeth for sale in the

United States, to restrain trade by the implementation of exclusive dealing

arrangements, and to sell such teeth at anticompetitive prices. (Civ. No. 01-267, D.I.

---

[1]The defendants are Dentsply; A. Leventhal & Sons, Inc.; Accubite Dental Lab, Inc.; Addium Dental Products; Arnold Dental Supply Company; Atlanta Dental Supply Company; Benco Dental Company; Burkhart Dental Supply Company; Darby Dental Laboratory Supply Co., Inc.; Dental Supplies and Equipment, Inc.; Edentaldirect.com, Inc., as successor to Crutcher Dental, Inc.; Hendon Dental Supply, Inc.; Henry Schein, Inc. and its affiliates, including, without limitation, Zahn Dental Co., Inc.; Iowa Dental Supply Co.; Jahn Dental Supply Company; JB Dental Supply Co., Inc.; Johnson & Lund Co., Inc.; Kentucky Dental Supply Company, Inc., a/k/a KDSC Liquidation Corp.; Marcus Dental Supply Co.; Midway Dental Supply Inc.; Mohawk Dental Co. Inc.; Nashville Dental, Inc.; Nowak Dental Supplies, Inc.; Patterson Dental Company, its subsidiaries, predecessors, successors, assigns, affiliates, and related companies; Pearson Dental Supplies, Inc.; Ryker Dental Supplies, Inc.; and Thompson Dental Company.

259 at ¶ 45) Plaintiffs seek damages, equitable relief, and costs.

Currently before the court is plaintiffs' motion for summary judgment in the Hess

action. (Civ. No. 99-255, D.I. 256) For the reasons that follow, the court denies

plaintiffs' motion. In the Jersey Dental action, several motions to dismiss have been

filed: (1) motions to dismiss for lack of personal jurisdiction and improper venue

pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3), brought by nine non-

resident defendants (D.I. 266)[2] and by defendant Nowak Dental Supplies, Inc.

("Nowak") (D.I. 274) (collectively, the "non-Delaware defendants"); (2) certain dental

dealer defendants' motion to dismiss counts II and IV of the amended complaint (D.I.

264);[3] and (3) Dentsply's motion to dismiss counts III and V of the amended complaint

(D.I. 279). For the reasons that follow, the court grants each of these motions.

## II. BACKGROUND

### A. The Parties

Plaintiffs Jersey Dental and Dentures Plus are dental laboratories that purchase

Dentsply products, including Dentsply's "Trubyte" brand of artificial teeth, indirectly

---

[2]The moving defendants are Arnold Dental Supply Company; Atlanta Dental Supply Company; Dental Supplies and Equipment, Inc.; Iowa Dental Supply Company, LLC; Johnson & Lund Co., Inc.; Kentucky Dental Supply Company, Inc. n/k/a KDSA Liquidation Corporation; Marcus Dental Supply Company, Inc.; Mohawk Dental Co.; and Ryker Dental of Kentucky, Inc..

[3]The moving defendants are Accubite Dental Lab, Inc.; Arnold Dental Supply Company; Atlanta Dental Supply Company; Benco Dental Company; Burkhart Dental Supply Company; Darby Dental Laboratory Supply Co., Inc.; Dental Supplies and Equipment, Inc.; Hendon Dental Supply, Inc.; Henry Schein, Inc.; Iowa Dental Supply Co.; Jahn Dental Supply Company; Johnson & Lund Co., Inc.; Kentucky Dental Supply Company, Inc., a/k/a KDSC Liquidation Corp.; Marcus Dental Supply Co.; Mohawk Dental Co. Inc.; Nowak Dental Supplies, Inc.; Patterson Dental Company; Pearson Dental Supplies, Inc.; and Ryker Dental Supplies, Inc.. (D.I. 264)

through dental dealers. They bring this action on behalf of themselves and other similarly situated dental laboratories that have purchased and regularly purchase Dentsply's Trubyte brand of artificial teeth. According to the amended complaint, the class includes "thousands of other similarly situated dental laboratories." (Civ. No. 01-267, D.I. 259 at ¶¶ 2, 3)

Defendant Dentsply is a leading manufacturer and worldwide distributor of products and equipment for the dental market. Through its Trubyte Division, Dentsply manufactures and markets products used by dental laboratories to make dentures and other removable dental prosthetics. (Id. at ¶ 4)

The remaining defendants are dental dealers that distribute Dentsply's products, including Trubyte brand teeth, through direct sales to dental laboratories. (Id. at ¶¶ 5-26) The dental dealers are the primary source of distribution of artificial teeth to dental laboratories. (Id. at ¶¶ 55, 59) Dental dealers stock a "full array" of products needed to make dentures, including artificial teeth, and generally employ skilled sales and service people to provide services to dental laboratory customers. (Id. at ¶ 60)

## B. History of this Antitrust Litigation

For more than fifteen years, Dentsply operated under a policy that discouraged the dental dealers from carrying competitors' artificial teeth. U.S. v. Dentsply Int'l, 399 F.3d 181, 185 (3d Cir. 2005), cert. denied, 126 S. Ct. 1023 (2006). In 1993, Dentsply adopted "Dealer Criterion 6," which provided that dental dealers promoting Dentsply's products "may not add further tooth lines to their product offering." Id. Dentsply's relationship with the dealers is "especially terminable at will" because Dentsply operates on a purchase order basis. Id. Dealer Criterion 6 was enforced against dealers that

3

were not "grandfathered" for sales of competing products, i.e., that had carried competing products before 1993. Id. "[I]n the recent past, none of [the dental dealers] have given up the popular Dentsply teeth to take on a competitive line." Id. Dentsply also rebuffed attempts by [the grandfathered dealers] to expand their lines of competing products beyond the grandfathered ones." Id.

### 1. The government action

The first suit to be filed regarding Dealer Criterion 6 was an antitrust action filed by the United States("the government action") on January 5, 1999. (Civ. No. 99-005, D.I. 1) In its suit, the government alleged that Dentsply: (1) acted unlawfully to maintain a monopoly in violation of § 2 of the Sherman Act, 15 U.S.C. § 2; (2) entered into unlawful restrictive dealing agreements that substantially lessened competition in violation of § 3 of the Clayton Act, 15 U.S.C. § 14; and (3) entered into unlawful agreements in unreasonable restraint of interstate trade and commerce in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. (Id.) Following a bench trial, this court entered judgment in favor of Dentsply on August 12, 2003. (Id., D.I. 517) This court found that Dealer Criterion 6 did not preclude Dentsply's main rivals from marketing their teeth directly to the dental laboratories and, therefore, Dentsply had no power to control prices or exclude competitors from the consumers. (Id., D.I. 514 at 157-59) The Third Circuit reversed, finding that Dealer Criterion 6 functionally excluded competitors from the dealers' network, "a narrow, but heavily traveled channel to the dental laboratories," and ultimately was "a solid pillar of harm to competition." U.S. v. Dentsply, 399 F.3d at 190-91.

Following the Third Circuit's mandate (Civ. No. 99-005, D.I. 534), the court

4

entered injunctive relief in favor of the government (id., D.I. 559). The injunction was entered on April 26, 2006 and directed, inter alia, Dentsply to cease requiring its dealers to be exclusive Dentsply dealers and to remove Dealer Criterion 6 from its list of dealer requirements. (Id.) The injunction will be in effect for seven and one-half years, or until October 26, 2013. (Id.)

### 2. The private actions

Plaintiffs Hess and Dentures Plus filed the Hess action against Dentsply on April 21, 1999. (Civ. No. 99-255, D.I. 1) Plaintiffs alleged the same antitrust violations as the government and, in addition, added causes of action for attempt to monopolize and conspiracy to monopolize, as well as damages claims, against Dentsply. (Id.) Dentsply moved for summary judgment against plaintiffs on April 3, 2000. On March 30, 2001, this court granted in part Dentsply's motion. Specifically, the court found that plaintiffs are indirect purchasers who lack standing to sue for damages under Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977). (Id., D.I. 181, 182) Therefore, the court granted Dentsply's motion "to the extent the Hess plaintiffs [sought] damages" and denied the motion to the extent they sought injunctive relief. (Id., D.I. 182 at 33, found at 2001 WL 624807 (D. Del. Mar. 30, 2001))

Less than a month later, on April 24, 2001, plaintiffs filed the Jersey Dental action in this court, alleging Sherman Act violations against Dentsply and twenty-six dental dealers (the "dealer defendants") arising from the same exclusive dealing arrangement alleged in the government and Hess actions. (Civ. No. 01-267, D.I. 1⁴)

---

⁴In their original complaint, the Jersey Dental plaintiffs alleged that the named defendants conspired to restrain trade in violation of Section 1 of the Sherman Act, 15

This time, plaintiffs alleged that they were direct purchasers. The court subsequently granted Dentsply's motion to dismiss the damages portion of the antitrust claims against it, finding that the indirect purchaser rule still applied to plaintiffs (i.e., that the "co-conspirator" exception to Illinois Brick did not apply). (Id., D.I. 166; D.I. 167, found at 180 F. Supp. 2d 541 (D. Del. 2001)) The court reasoned that despite plaintiffs having named, or attempted to name, all alleged co-conspirators as co-defendants, the policy concerns of Illinois Brick were still implicated, namely: (1) nothing prevented the dental dealers, who were not "substantially equal" participants in the alleged conspiracy under any set of alleged facts, from filing their own lawsuits against Dentsply; (2) the difficulties of damage apportionment between direct and indirect purchasers was still present; and (3) plaintiffs did not fall within the group of private attorneys general that Congress created to redress Dentsply's assumed antitrust violation through use of the treble damage remedy. (Id., D.I. 166)

Plaintiffs thereafter moved to amend their complaint in an attempt to overcome some of these deficiencies. The proposed amended complaint alleged that defendants have engaged in a retail price-fixing conspiracy, that intermediary dental dealers act only as agents for Dentsply, that plaintiffs suffered lost profits from the unrealized sale of competitive teeth, and that the dental dealers will not sue Dentsply. (Id., D.I. 170, exs. A & B) The court denied leave to amend, reasoning that plaintiff's amended claims would not withstand a motion to dismiss; the co-conspirator exception to Illinois Brick

---

U.S.C. § 1; conspired to monopolize in the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and conspired to restrain trade in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14.

still did not apply because the dental dealers could still sue Dentsply; and Illinois Brick barred recovery of lost profits damages because plaintiffs were indirect purchasers. (Id., D.I. 208, found at 2002 WL 2007916 (D. Del. Aug. 27, 2002))

On September 21, 2005, having heard the appeal of the Hess action, the Third Circuit affirmed this court's decision that plaintiffs, as indirect purchasers, lacked standing to sue for damages on its exclusive dealing claims. See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc., 424 F.3d 363 (3d Cir. 2005). The Third Circuit held that a co-conspirator exception for conspiracies that are not resale price maintenance conspiracies "would only exist in circumstances where the middlemen would be barred from bringing a claim against their former co-conspirator – the manufacturer – because their involvement in the conspiracy was 'truly complete'." Id. at 378-79. The Court found that plaintiffs did not qualify for such an exception "because the [d]istrict [c]ourt concluded, and [p]laintiffs have conceded, that the dealers' involvement in the alleged conspiracy with Dentsply was **not** 'truly complete'." Id. at 383 (emphasis in original). Plaintiffs' admission on appeal that the dealers and Dentsply were not "substantially equal,"[5] therefore, was fatal to its claim for damages for the alleged exclusive dealing; plaintiffs were nevertheless permitted to proceed under the co-conspirator exception to pursue an action for overcharge damages caused by the alleged vertical price-fixing conspiracy. Id. at 384 & n.19.

## C. The Amended Jersey Dental Complaint

[5](Civ. No. 01-267, D.I. 273 at 9 (citing Appellants' Reply Br. at 23 n.16)) Plaintiffs do not contest defendants' recount of these statements in their responsive brief. (D.I. 290 at 26)

Plaintiffs responded to the Third Circuit's <u>Hess</u> decision by filing an amended complaint in the <u>Jersey Dental</u> action on October 10, 2006. (Civ. No. 01-267, D.I. 259) Plaintiffs continue to assert claims against all defendants for retail price-fixing;[6] these claims are not challenged in the present motions to dismiss. (<u>Id.</u> at ¶¶ 131-136) The amended complaint alleges that Dentsply and the dental dealers engaged in an exclusive dealing conspiracy in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. In counts II and III, plaintiffs allege that Dentsply and the dental dealers conspired to monopolize the artificial teeth market. (<u>Id.</u> at ¶¶ 137-165) In count II, plaintiffs seek both damages and injunctive relief against the dealer defendants for this alleged conspiracy. (<u>Id.</u> at ¶¶ 148-149) In count III, plaintiffs seek only an injunction, and not damages, against Dentsply for its role in this alleged conspiracy. (<u>Id.</u> at ¶¶ 161, 165)

In counts IV and V, plaintiffs allege that Denstply and the dental dealers conspired to restrain trade which, they allege, constituted a group boycott of Dentsply's competitors. (<u>Id.</u> at ¶¶ 166-187) Once again, plaintiffs seek both damages and injunctive relief against the dealer defendants (count IV) (<u>id.</u> at ¶¶ 175-176), but seek only an injunction against Dentsply (count V) (<u>id.</u> at ¶ 186).[7]

---

[6]Omitted from the amended complaint are originally-named defendants A. Leventhal & Sons, Inc.; Midway Dental Supply Inc.; Nashville Dental, Inc.; and Thompson Dental Company. (D.I. 259) Zila, Inc. is presently named "as successor to Ryker Dental of Kentucky, Inc." (<u>Id.</u>)

[7]Plaintiffs state in the heading for count V that this claim is "[a]gainst Dentsply, for [i]njunctive [r]elief," but, aside from alleging that plaintiffs have no adequate remedy at law (<u>id.</u> at 175), fail to particularly request injunctive relief vis-a-vis Dentsply in the body of the amended complaint. (<u>Compare id.</u> at ¶ 176 (seeking "damages from the [d]ealer [d]efendants, . . . and a permanent injunction enjoining the continuing violation

8

## III. STANDARDS OF REVIEW

### A. Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See

---

of [s]ection 1 of the Sherman Act, 15 U.S.C. § 1"))

For each count discussed above, plaintiffs also seek a declaratory judgment that the complained-of actions constitute Sherman Act violations. (Id. at ¶¶ 149, 165, 176, 187)

9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## B. Motion to Dismiss for Lack of Personal Jurisdiction

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. See Reach & Assoc., P.C. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. See id. As for the constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. See id.; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

## C. Motion to Dismiss for Improper Venue

A court may dismiss a lawsuit for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). However, the Federal Rules of Civil Procedure do not contain any specific

10

venue provisions or requirements. A court, therefore, must determine whether venue is proper in accordance with the appropriate statutes when deciding a motion to dismiss for improper venue. See Albright v. Gore, Civ. A. No. 02-304, 2002 WL 1765340, \*3 (D. Del. July 31, 2002) (citations omitted). The moving party has the burden of proving that venue is improper. See id. (citing Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982)). "[I]n ruling on defendant['s] motion the plaintiff's choice of venue should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

## D. Motion to Dismiss Pursuant to Rule 12(b)(6)

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1959.

11

## IV. DISCUSSION

### A. Plaintiffs' motion for summary judgment in the Hess action

In the Hess action, the dental laboratory plaintiffs have moved for summary judgment on their claim against Dentsply for "exclusive dealing/monopoly maintenance" (count II). (Civ. No. 99-255, D.I. 256, D.I. 257 at 1, 5) Plaintiffs claim that, because the Third Circuit found that Dentsply violated section 2 in the government action, Dentsply is collaterally estopped from contesting its liability vis-a-vis the Hess complaint. Although Dentsply's violations are claimed to be the same, plaintiffs also claim that they are presently entitled to greater injunctive relief than that awarded by this court in the government action.

#### 1. Collateral estoppel

The doctrine of collateral estoppel states that, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. U.S., 440 U.S. 147, 153 (1979). Plaintiffs must establish the following four requirements for collateral estoppel to apply: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted). Doubts about application of the doctrine of collateral estoppel should usually be resolved against its use. See Witkowski v. Welch, 173 F.3d 192, 206

12

(3d Cir. 1999) (citing Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970)).

## 2. Discussion

The complaint in the Hess action contains certain causes of action pled in the government action, and some new claims. Both cases involve monopoly maintenance, restrictive dealing, and restraint of trade claims against Dentsply.[8] U.S. v. Dentsply, 399 F.3d at 184; (Civ. No. 99-255, D.I. 1 (counts I, II, and V)) The section 2 claim brought in the government action was a monopoly maintenance claim. U.S. v. Dentsply, 399 F.3d at 184. "Unlawful maintenance of a monopoly is demonstrated by proof that a defendant has engaged in anti-competitive conduct that reasonably appears to be a significant contribution to maintaining monopoly power . . . There must be proof that competition, not merely competitors, has been harmed." Id. at 187 (citations omitted). Following its review of the relevant market, Dentsply's power to exclude, and the efficacy of Dealer Criterion 6, the Third Circuit found in U.S. v. Dentsply that "the government established that Dentsply's exclusionary policies and particularly Dealer Criterion 6 violated [s]ection 2" of the Sherman Act. 399 F.3d at 196. Plaintiffs assert that, in view of this determination, Dentsply is collaterally estopped from contesting its liability for monopoly maintenance in the Hess case. (Civ. No. 99-255, D.I. 257 at 10-14) Dentsply counters that collateral estoppel does not apply because the issue of antitrust injury, specifically, the question of whether plaintiffs paid higher prices due to

---

[8]Plaintiffs acknowledge that the Hess complaint contains two claims against Dentsply not pled in the government action: attempt to monopolize; and conspiracy to monopolize in violation of section 2 of the Sherman Act. (Civ. No. 99-255, D.I. 257 at 2; D.I. 1 (counts III and IV)) Plaintiffs limit their motion to count II, or their "exclusive dealing/monopoly maintenance" claim. (Id. at 1, 5)

13

Dentsply's conduct, was never litigated in the government action. (Id., D.I. 262 at 8-10)

The relevant market for Dentsply's teeth, as defined by the Third Circuit, consists of two consumers combined: the dental dealers and the dental laboratories. Id. at 188. The question posed by plaintiffs' motion is, essentially, whether the Third Circuit's finding that competition in this market was harmed necessarily means that plaintiffs have suffered antitrust injury. Put another way, do plaintiffs' claims require proof of specific injuries to plaintiffs, such as higher prices paid?

In support for their argument that an acknowledgment of their injuries is implicit in the Third Circuit's decision, plaintiffs highlight the Court's finding that Dentsply's exclusive dealing had two anti-competitive effects: (1) "keep[ing] sales of competing teeth below the critical level necessary for any rival to pose a real threat to Dentsply's market share"; and (2) "impair[ing] the laborator[ies'] choice in the marketplace." (D.I. 266 at 6-7, 11 (citing U.S. v. Dentsply, 399 F.3d at 191, 194) Certainly, these findings are to be given preclusive effect. See Montana v. U.S., 440 U.S. at 153; Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1231 (3d Cir. 1995).

Plaintiffs' estoppel argument, however, impermissibly combines the concepts of causation and injury. Antitrust injury "is an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." Angelico, M.D. v. Lehigh Valley Hospital, 184 F.3d 268, 273 (3d Cir. 1999) (citing Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 109 (1986)) (additional citations and internal quotations omitted). Plaintiffs, therefore, must have both suffered an injury, and that injury must have resulted from the occurrence of the condemned

14

events, here, the use of Dealer Criterion 6 and other exclusionary practices to maintain Dentsply's monopoly. It is certainly plausible that plaintiffs, representing one of two consumer groups who collectively form the relevant market in this case, lost profits as the result of Dentsply's exclusionary practices. See U.S. v. Dentsply, 399 F.3d at 190-91 ("experts for both parties testified that were Dealer Criterion 6 abolished, prices would fall," presumably raising the profit margin for the laboratories). The Third Circuit, however, has issued no such finding.

The court declines to infer that a "finding of anticompetitive effects necessarily implies a finding that consumers [here, the dental laboratories] have been hurt" (D.I. 257 at 19-20),[9] in view of the lack of a determination that plaintiffs have suffered an injury in fact (which is demonstrably linked to the conduct which has been proscribed by the Third Circuit) and the nature of such injury. The court, therefore, declines to grant plaintiffs' motion for summary judgment on the ground of collateral estoppel. See In re

---

[9]The authority cited by plaintiffs on this point is not persuasive. (D.I. 257 at 19-20) In The Serpa Corp. v. Mewane, Inc., 199 F.3d 6 (1st Cir. 1999), the First Circuit affirmed a finding that plaintiff did not have standing based on antitrust injury where plaintiff brought "its claim as [n]either a competitor [n]or a consumer but as a distributor whose injuries resulted from the loss of [market] position." Id. at 12. In Bell v. Dow Chem. Co., 847 F.2d 1179 (5th Cir. 1988), the Fifth Circuit also affirmed the district court's holding that plaintiff, a manufacturer-seller who was "neither a consumer nor a competitor" in the relevant market, did not have standing where "there [was] no evidence that [defendant's] conduct caused the loss of future sales, as opposed to any number of factors – e.g. price, market conditions, unproven technology, limited product uses, or [plaintiff's] inability to purchase technical material from other distributors." Id. at 1183. Finally, the Third Circuit's decision in In re Doctoroff, 133 F.3d 210 (3d Cir. 1997), in which the Court found that a plaintiff who was barred from contesting liability for a debt as a sanction for discovery abuses could not challenge the debt in a subsequent bankruptcy proceeding, is equally unpersuasive in this context. Id. at 215 ("We do not hesitate in holding that a party such as Docteroff, who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application.").

15

Microsoft Corp. Antitrust Litig., 232 F. Supp. 2d 534, 538 (D. Md. 2002) (denying motions for partial summary judgment where "[n]othing in the [previous] government case against Microsoft demonstrate[d] that the consumer plaintiffs . . . suffered any such injuries").

### 3. Injunctive relief sought

The court notes that the fact that plaintiffs seek only injunctive relief rather than damages does not alter plaintiffs' obligation to establish its antitrust injuries. It does, however, provide an additional basis for the court's denial of plaintiffs' motion in view of the fact that Dentsply has already been enjoined from the monopolist activities condemned by the Third Circuit. (Civ. No. 99-005, D.I. 559)

Plaintiffs assert that granting another injunction "will not be redundant but, rather, will substantially enhance the effectiveness of the injunctive relief already granted." (Civ. No. 99-255, D.I. 257 at 23) In addition to provisions that are "essentially the same" as the prohibitions set forth in the government's injunction, plaintiffs additionally request that another injunction: (1) be of unlimited duration, as compared to seven and a half years; (2) require that Dentsply (a) post the injunction on its website and (b) hire an outside, independent monitor, in contrast to the employee it has designated as the antitrust compliance officer for the government's injunction; and (3) prohibit Dentsply's participation in meetings or phone calls between dental dealers and laboratories absent the laboratories' request. (Id. at 25-28)

Aside from its theories on why additional relief would be beneficial to them, plaintiffs have not adequately explained why the government's injunction is insufficient to prevent Dentsply from engaging in anticompetitive practices. In fact, despite seeking

16

a permanent injunction, plaintiffs assert only that they are "threatened with loss or injury proximately resulting from the recurrence of Dentsply's exclusive dealing/monopoly maintenance." (D.I. 257 at 24)  Even if plaintiffs could meet the stringent requirements of the permanent injunction standard (and the court believes they cannot),[10] plaintiffs nevertheless fail to demonstrate a need for further, non-duplicative measures to those already in place.[11]  The court, therefore, denies plaintiffs' motion on the alternative basis that plaintiffs have not demonstrated that they are entitled to additional injunctive relief.[12]  See Harthman v. Witty, 480 F.2d 337, 339-40 (3d Cir. 1973) (holding that "a

_____

[10]In deciding whether to grant a permanent injunction, courts must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).

The Third Circuit has recently recognized a conflict in its precedent regarding whether irreparable harm is a prerequisite to the grant of a permanent injunction relief. See Stolt-Nielsen, S.A. v. U.S., 442 F.3d 177, 185 n.5 (3d Cir. 2006) (collecting cases).

[11]This case presents a scenario opposite to that presented in U.S. v. Borden Co., 347 U.S. 514 (1954), where the Court found a refusal to grant the **government** an injunction under the Clayton Act in view of the existence of a **private** injunction already in place. In Borden, the Court noted that a private litigant "may be expected to exercise [its remedy] only when its personal interest will be served," while the "[g]overnment [has a] right and duty to seek an injunction to protect the public interest [ ] without regard to any private suit or decree." Id. at 518-19.

While plaintiffs argue in this case that it would be advantageous to have over 7,000 dental laboratories police Dentsply's conduct (Civ. No. 99-255, D.I. 257 at 23), clearly any dental laboratory can notify the government of any further antitrust violations by Dentsply, regardless of the status of the instant private litigation.

[12]It appears as though the record in this case is closed; it is unclear to the court whether plaintiffs have, but did not put forward, evidence sufficient to demonstrate antitrust injury and that additional injunctive relief is warranted (notwithstanding the presence of the government's injunction).  The court will provide a mechanism for the parties to address these issues.

17

second injunction was unnecessary and it would have been the duty of the court to

refuse to grant it" where a first, permanent injunction of broad terms was in place, and

plaintiff could have sought relief for continuing violations under that injunction) (vacating

district court's order denying plaintiff's motion for damages); see also Ellis v. Gallatin

Steel Co., 390 F.3d 461, 476 (6th Cir. 2004) (district court committed reversible error in

concluding irreparable harm had been shown, and awarding injunctive relief, three

months after standing consent decree was obtained by the government).

## B. The Non-Delaware Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue

Nine non-Delaware defendants move to dismiss in the Jersey Dental action for

lack of jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure

12(b)(2) and (b)(3). (Civ. No. 01-267, D.I. 266)[13] Defendant Nowak has filed its own

motion on these grounds. (D.I. 274)

### 1. The Clayton Act

Section 12 of the Clayton Act provides:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an **inhabitant**, but also in any district wherein it may be **found** or **transacts business**; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (emphasis added). The first clause relates to venue, while the second

clause concerns service of process and, therefore, personal jurisdiction. In re:

Automotive Refinishing Paint Antitrust Litigation (hereinafter, "Automotive Refinishing"),

---

[13]Hereinafter, all docket items referenced by the court refer to the Jersey Dental action, Civ. No. 01-267.

18

358 F.3d 288, 293 (3d Cir. 2004).

## 2. Jurisdiction

In response to defendants' challenge to personal jurisdiction by this court, plaintiffs bear the burden of showing that personal jurisdiction exists. Marten v. Godwin, No. Civ. A. 05-5520, 2007 WL 2377807, *2 (3d Cir. Aug. 22, 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). Plaintiffs must meet this burden through "affidavits or other competent evidence." Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996) (citations omitted). Personal jurisdiction must be considered separately from venue pursuant to section 12 of the Clayton Act. See Automotive Refinishing, 358 F.3d 294-97.

Plaintiffs assert that the jurisdictional clause of the Clayton Act requires only that personal jurisdiction be demonstrated by "national contacts," rather than specific contacts with the jurisdiction in which defendants have been sued. (D.I. 289 at 6-13) Since each of the moving defendants are incorporated in one of the states of the United States, plaintiffs assert that sufficient national contacts exist. (Id. at 12) In support for their argument, plaintiffs rely on the Third Circuit's decision in Automotive Refinishing, 358 F.3d 288, 296-97 (3d Cir. 2004); defendants dispute the applicability of Automotive Refinishing to the present case.

Automotive Refinishing involved an antitrust class action filed against two German corporations that subsequently brought a motion to dismiss for lack of personal jurisdiction. Id. at 290. In contrast to the case at bar, the Automotive Refinishing Court was not confronted with a challenge to personal jurisdiction brought by domestic corporate defendants. The dispute involved whether the jurisdiction and venue clauses

19

of section 12 operate independently of each other; the Automotive Refinishing Court resolved this question by stating that "the service of process provision on **foreign** corporations is independent of, and does not require satisfaction of, the specific venue provision under [s]ection 12 of the Clayton Act." Id. at 297 (emphasis added). The Automotive Refinishing Court next proceeded to analyze appellants' arguments that section 12 did not confer personal jurisdiction over them, and concluded that "personal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole." Id. at 298.

Though this holding is not, in literal terms, limited to jurisdiction over foreign corporations, there are several compelling reasons for limiting Automotive Refinishing to its facts. First, the authority relied upon by the Automotive Refinishing Court does not concern domestic defendants. The Automotive Refinishing Court relied upon prior Third Circuit precedent set forth in Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002), in which the Court assessed a foreign defendant's "national contacts" in determining that jurisdiction was appropriate. Automotive Refinishing, 358 F.3d at 298-99; see also Pinker, 292 F.3d at 371-72 ("A foreign corporation that purposefully avails itself of the American securities market has adequate notice that it may be haled into an American court for fraudulently manipulating that market."). The Automotive Refinishing Court also stated that its holding is consistent with Federal Rule of Civil Procedure 4(k)(2), which establishes personal jurisdiction over foreign defendants. 358 F.3d at 298-99; see also Fed. R. Civ. P. 4(k)(2)(A) (2007) (personal jurisdiction may be established by service "if the defendant is not subject to jurisdiction in any state's courts of general jurisdiction").

20

Secondly, and perhaps most importantly, the Automotive Refinishing Court had no occasion to consider jurisdiction vis-a-vis domestic defendants; it acknowledged, however, a "crucial" distinction between alien and domestic corporations in its discussion of venue. Automotive Refinishing, 358 F.3d at 297 n.10 ("The general venue provision of 28 U.S.C. § 1391(c) governing such **domestic** corporations is, in contrast to § 1391(d) governing **alien** corporations, **more** difficult to satisfy than the [s]ection 12 venue requirements.") (quoting Gen. Elec. Co. v. Bucyrus-Erie Co., 550 F. Supp. 1037, 1041 (S.D.N.Y. 1982)) (internal brackets omitted) (emphasis in original); see also Cumberland Truck Equipment Co. v. Detroit Diesel Corporation, 401 F. Supp. 2d 415, 421 (E.D. Pa. 2005) (noting that the Automotive Refinishing Court "emphasized the importance of distinguishing between out-of-state and foreign corporate antitrust defendants" in its opinion) (citing Automotive Refinishing, 358 F.3d at 296 n.10).

Insofar as the Third Circuit has never applied a "national contacts" test for establishing personal jurisdiction over a domestic antitrust defendant, the court declines to extend the holding of Automotive Refinishing in a manner that would counterindicate traditional long-arm jurisprudence with respect to such defendants.[14] The court, therefore, will review whether plaintiffs have alleged facts sufficient to satisfy both the Delaware long-arm statute,[15] i.e., specific jurisdiction, and the Constitutional due process requirements of the Fifth Amendment, i.e., general jurisdiction, with respect to

---

[14]Cf. Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004).

[15]10 Del. C. § 3104(c).

21

the domestic defendants.[16] See Automotive Refinishing, 358 F.3d at 299 ("[P]ersonal jurisdiction under [s]ection 12 of the Clayton Act is as broad as the limits of due process under the Fifth Amendment.") (citations omitted).

Specific jurisdiction arises when a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's actions within the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). As for the Constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. See Reach & Assoc. P.C. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003); see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

In the case at bar, the moving defendants have submitted affidavits which demonstrate that they are not incorporated in Delaware, and have conducted no business within the State.  (D.I. 267, exs. A-H; D.I. 276; D.I. 295, ex. A[17])  In response, plaintiffs have put forward no evidence that defendants "purposefully availed" themselves of doing business with Delaware citizens.[18]  Likewise, the court is not

---

[16]Defendants have not challenged the sufficiency of service under Delaware's long-arm statute.

[17]Plaintiffs assert that Ryker Dental has been succeeded by Zila, Inc., a Delaware corporation. (D.I. 289 at 20)  Ryker Dental asserts that Zila, Inc. is not its successor, but its parent corporation, and has submitted a Certificate of Existence issued by the Commonwealth of Kentucky which demonstrates that Ryker Dental is a distinct corporate entity in good standing in that state. (D.I. 295, ex. A)  As Zila, Inc. is not a party to this litigation, and the record demonstrates that Ryker Dental and Zila, Inc. maintain distinct corporate indentities, plaintiffs' assertions that Ryker Dental is an inhabitant of Delaware (and has "waived any objection to venue") are unpersuasive.

[18]Because jurisdiction based on specific contacts is lacking, there is clearly no general jurisdiction based upon "systematic" or regular contacts with this forum.  10 Del.

22

satisfied that defendant Nowak or the non-Delaware defendants "[had] certain minimum contacts with [the State] such that the maintenance of [plaintiffs'] suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). For these reasons, the court grants the moving defendants' motions to dismiss on the basis of lack of jurisdiction. (D.I. 266, 274)

### 3. Venue

Although the court need not address the moving defendants' arguments regarding venue in view of this holding, the court notes that there is no indication that venue in this district is appropriate and, therefore, improper venue provides an alternative basis for the court's disposition of the motions.

In order to establish that venue is improper in this case, defendants must demonstrate that they are not inhabitants of, found in, or do not transact business in, the District of Delaware pursuant to section 12. 15 U.S.C. § 22. A defendant is an "inhabitant" if it is "incorporated under the laws of [Delaware]." Automotive Refinishing, 358 F.3d at 293 n.6 (citation omitted).

> Being "found" in a district is generally equated with "doing business" there, and requires greater contacts than does "transacting business." A corporation is "found" where it has "presence" and "continuous local activities" in the district.

Id. (citations omitted). Defendants' affidavits demonstrate no such activities within this district.

In response, and despite pleading that venue in this district is proper pursuant to

---

C. § 3104(c)(4).

section 12 of the Clayton Act, 15 U.S.C. § 22, plaintiffs argue that venue in the District

of Delaware is proper pursuant to the general venue statute, 28 U.S.C. § 1391(c), which

provides that a corporation is a resident of "any judicial district in which [defendant

corporation] is subject to personal jurisdiction at the time the action is commenced."

(D.I. 259 at ¶ 27; D.I. 289 at 14) Plaintiffs argue, based on their interpretation of

Automotive Refinishing and the "national contacts" theory rejected above, that all

defendants "reside" in Delaware because "there is personal jurisdiction in this district

over each and every [d]efendant." (D.I. 289 at 14)

The court finds that domestic defendants' national contacts do not suffice to

render venue appropriate in the District of Delaware. Put another way, section 12 of the

Clayton Act may not be supplemented with the general venue provisions of 28 U.S.C.

1391(b) and/or (c) for purposes of establishing venue for domestic defendants, and

must be considered independently of those provisions. See Cumberland Truck

Equipment Co., 401 F. Supp. 2d at 420-21, 424 (finding that Third Circuit precedent

supported "allowing [s]ection 12's venue clause to be supplemented for alien but not

24

domestic defendants.") (citing Automotive Refinishing, 358 F.3d at 296 & n.10).[19] To

extend Automotive Refinishing in such a manner would effectually, and improperly,

create unlimited venue for antitrust actions against domestic corporations. Id. at 423.

Plaintiffs do not contest the facts as alleged in defendants' affidavits (D.I. 289 at

21), and have provided only legal argument, rather than counter-evidence, in opposition

to defendants' motion. The court, therefore, finds that the moving defendants have

satisfied their burden to establish that venue in this district is improper; defendants'

motions (D.I. 266, 274) are properly denied on this alternate ground.

## C. Motions to Dismiss Counts II-V in the Jersey Dental Action Pursuant to Rule 12(b)(6)

---

[19]The court in Cumberland Truck Equipment Co. v. Detroit Diesel Corporation, 401 F. Supp. 2d 415 (E.D. Pa. 2005), analyzed in detail three distinct approaches utilized by district courts for assessing proper venue when a plaintiff asserts personal jurisdiction pursuant to section 12: (1) courts that "suggest that a plaintiff suing a domestic defendant for antitrust violations must use the [s]ection 12 venue clause exclusively, but allow a plaintiff suing an alien defendant to use the general alien venue statute, 28 U.S.C. § 1391(d)"; (2) courts that allow plaintiffs to establish venue under section 12 or an alternative source interchangeably; and (3) courts that "find that the [s]ection 12 venue claims is the exclusive venue for all defendants, alien and domestic, and it preempts the general venue statutes." Id. at 420 (collecting cases).

The district court in Automotive Refinishing, affirmed by the Third Circuit, noted that

[t]he broad grant of venue under [Section 1391(d)] is inapplicable to domestic corporations. . . [N]othing in Go-Video[, Inc. v. Akai Electric Co., 885 F.2d 1406 (9th Cir. 1989)] permits a domestic corporation to be sued in any district. Rather, a domestic corporation could only be sued [ ] according to [s]ection 12. . . .

In re Automotive Refinishing Paint Antitrust Litigation, No. Civ. A. 1426, 2002 WL 31261330, *9 (E.D. Pa. July 31, 2002) (citation omitted). The court, therefore, agrees with the rationale of Cumberland Truck that the Third Circuit approves of the first approach discussed above, or allowing supplementation of section 12 venue only for alien corporations. See Cumberland Truck Equipment Co., 401 F. Supp. 2d at 420-21.

Counts II and III of the amended complaint contain plaintiffs' conspiracy to monopolize claims against the dealer defendants (count II) and Dentsply (count III). (D.I. 259 at ¶¶ 137-165) Counts IV and V of the amended complaint contain plaintiffs' exclusive dealing claims, in which plaintiffs allege that the dealers (count IV) and Dentsply (count V) conspired to restrain trade, which constituted a group boycott of Dentsply's competitors. (Id. at ¶¶ 166-187) Several defendants[20] and Dentsply have separately moved to dismiss these claims. (D.I. 264, 279[21]) The court will address defendants' arguments in turn.

## 1. Injunctive relief sought against Dentsply for violations asserted in counts III and V

Dentsply asserts that, even assuming plaintiffs have stated viable claims against it, plaintiffs would still lack standing to seek injunctive relief in view of the injunction that has already been secured by the government. (D.I. 279) As discussed above, plaintiffs have not alleged any facts that could demonstrate a threat of future injury and/or irreparable harm. Absent such a proffer, plaintiffs cannot establish that they are entitled to a second injunction against Dentsply for the same conduct currently enjoined by the government's injunction.[22] Count V, for which only injunctive relief is sought, therefore,

_____

[20]Supra n.3

[21]The current motion is a corrected version of D.I. 272, which is denied as moot.

[22]There is no indication, and the court does not assume, that the injunction sought by plaintiffs in the Jersey Dental suit would contain stricter measures than those imposed by the government's injunction, such as has been asserted by plaintiffs in the Hess action.

26

is dismissed for failure to state a claim upon which can be granted.[23]  With respect to

Dentsply's conduct asserted in count III, plaintiffs also seek "a declaratory judgment

that Dentsply's actions complained of herein are violations of the prohibition against

combining or conspiring to monopolize, under [s]ection 2 of the Sherman Act, 15 U.S.C.

§ 2," and for this court to order the "divestiture of the Trubyte division from Dentsply."

(D.I. 259 at ¶ 165)  The parties do not address this proposed relief in their submissions;

the court, therefore, proceeds to evaluate defendants' additional arguments with

respect to claim III.

## 2. Damages sought from the dealers for violations asserted in counts II and IV

The dealer defendants assert that plaintiffs are barred from suing for damages

by reason of the Third Circuit's prior decision in the Hess case, in which the Court held

that plaintiffs, as indirect purchasers, had no standing to sue under Illinois Brick.  (D.I.

265 at 23-24 (citing Howard Hess Dental Labs., 424 F.3d at 376, 384))  Plaintiffs

respond that, although plaintiffs are indirect purchasers from Dentsply, they are direct

purchasers from the dealers, and should not be deemed to be "indirect purchasers"

regardless of who plaintiffs' claims are brought against.  (D.I. 288 at 37-40)

This court previously determined, and the Third Circuit agreed, that "[t]he

---

[23]As discussed supra (fn.7), plaintiffs characterize count V as "[a]gainst Dentsply, for [i]njunctive [r]elief," but, aside from alleging that plaintiffs have no adequate remedy at law (id. at 175), plaintiffs fail to particularly request injunctive relief with respect to Dentsply in the body of that count. (See D.I. 249 at ¶ 187 (seeking damages from the dealer defendants, a declaratory judgment that the dealers' actions violate section 1 of the Sherman Act, and generally, "a permanent injunction enjoining the continuing violation of [s]ection 1")) The parties have not addressed this discrepancy. For purposes of the present motion, and consistently with the parties' arguments, the court has treated count V as seeking injunctive relief from Dentsply.

intermediate dental dealers suffer the direct harm from any lost opportunity to sell a greater volume of Dentsply products or to sell competitive product lines and profit therefrom. Any harm suffered by plaintiffs remains indirect." See Howard Hess Dental Labs., 424 F.3d at 376. Plaintiffs "claim[ed] that they come within the [general] 'co-conspirator exception' to Illinois Brick because their purchases from Dentsply's dealers were made [directly] from members of an exclusive-dealing conspiracy." Id. at 378. The Third Circuit disagreed, since the facts did not demonstrate that "the [dealer] middlemen would be barred from bringing a claim against [Dentsply]." Id. at 379.

Plaintiffs are correct that the Third Circuit had no occasion in Hess to evaluate plaintiffs' standing to sue the dealers for damages, as the dealers were not parties to that action. Nevertheless, counts II and IV in the case at bar allege non-vertical price-fixing conspiracies that are subject to the Third Circuit's ruling. Howard Hess Dental Labs., Inc., 424 F.3d at 378 (a general co-conspirator exception "would only exist in circumstances where . . . [the dealers'] involvement in the conspiracy was 'truly complete'.") This is so regardless of the fact that plaintiffs purchased artificial teeth "directly" from the dental dealers. As in Hess, and as discussed in further detail infra, the amended complaint in the present action contains no indication that Dentsply and the dealers were equal participants in the alleged conspiracies. Consequently, there is no indication that plaintiffs may pursue overcharge damages from the dealers pursuant to the general co-conspirator exception of Illinois Brick. Dismissal of counts II and IV is appropriate, therefore, on the basis that plaintiffs cannot obtain the relief sought.

### 3. Counts II and III - specific intent

The court also finds that dismissal of counts II and III is appropriate for failing to

28

allege any factual allegations that support plaintiffs' claim that the dental dealers shared Dentsply's specific intent for Dentsply to monopolize the artificial tooth market. (D.I. 265 at 17-22; D.I. 279)

To state a conspiracy to monopolize claim, plaintiffs must allege: (1) an agreement or understanding between the dealers and Dentsply; (2) a specific intent to monopolize; and (3) overt acts in furtherance of the alleged conspiracy. See Untracht v. Fikri, 454 F. Supp. 2d 289, 315 (W.D. Pa. 2006) (citation omitted); ID Security Systems Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622, 657 (E.D. Pa. 2003) (citing Pontius v. Children's Hosp., 552 F. Supp. 1352, 1377 (E.D. Pa. 1982)). The specific intent element requires plaintiffs to plead that both alleged conspirators "had a conscious commitment to [Dentsply's] common scheme designed to achieve an unlawful objective, namely that of endowing [Dentsply] with monopoly power." ID Security Systems Canada, Inc., 249 F. Supp. 2d at 660 (citation and internal quotations omitted).

To this end, plaintiffs have pled that the dealer defendants "have conspired with Dentsply and with each other to, among other things, restrict Dentsply's dealers from carrying the artificial teeth of any competing manufacturer, and to restrict which dealers are allowed to carry Dentsply's artificial teeth." (D.I. 259 at ¶ 72) Plaintiffs further assert that "the intended effect of this exclusive dealing arrangement, known to each and every [d]efendant, has been the elimination of any and all competition to Dentsply sufficiently significant to pose a threat to its monopoly of the markets for artificial teeth and/or premium artificial teeth sold in the U.S." (Id. at ¶ 73) Finally, "each and every [d]efendant knew that this exclusive dealing arrangement was and is an illegal restraint

29

of trade designed to maintain Dentsply's monopoly." (Id. at ¶ 74)

On its face, the asserted complaint contains the general allegation that the dealers intended for Dentsply to maintain a monopoly. (Id. at ¶¶ 73, 156)[24]  The court finds that plaintiffs have not, however, pled "facts from which it can reasonably be inferred that the [dealers] formulated [the] intent" that "maintaining [Dentsply's] monopolies was a goal that they themselves wanted to accomplish."  In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d 728, 731 (D. Md. 2001).

The amended complaint does not appear to contain and, indeed, plaintiffs do not point out any facts that could supplement their general assertion of intent.  In contrast, and as discussed previously, plaintiffs have maintained throughout this litigation that the dealers were coerced into accepting Dentsply's terms.  Plaintiffs have pled that Dentsply demanded the dealers' participation in the exclusive dealing arrangement (id. at ¶¶ 81, 84); in fact, several dealer relationships were terminated by Dentsply when dealers did not accept its terms (id. at ¶¶ 91-99).  Based on plaintiffs' own allegations, "it is at least as likely that the [dealer] defendants simply chose to make the best of a bad situation" in order to have access to the Dentsply tooth line.  In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d at 732.

In response to Dentsply's motion, plaintiffs assert that a specific intent is "inferable, without more, from [the dealers'] participation in a conspiracy whose purpose and means is the unlawful . . . creation or maintenance of a monopoly." (D.I. 288 at 34) This logic, however, is circular; an element required to prove the existence of

[24]Plaintiffs point only to paragraphs 71-74 of the amended complaint in support for their argument that specific intent was pled.  (D.I. 288 at 34; D.I. 290 at 27-28)

conspiracy cannot be inferred from the existence of a conspiracy. Plaintiffs also assert

that "the fact that a conspirator has been threatened does not necessarily mean that

when it finally decides to **agree to conspire**, its only motive is fear." (D.I. 288 at 35)

(emphasis added). This argument, again, presumes the presence of a conspiracy in

the first instance. Even if the dealer defendants were compensated for their

acceptance of Dealer Criterion 6, it does not follow that they shared the specific intent

for Dentsply to achieve a monopoly.

Finally, plaintiffs' allegation that the defendants have conspired, "each with all of

the others," to achieve a Dentsply monopoly does not substantiate plaintiffs' claim that

defendants were part of a single conspiracy. No facts have been pled from which it

could be inferred that the dealer defendants acted in unison, "sharing a unity of

purpose" or a "meeting of the minds," rather than in parallel.[25] For all of these reasons,

---

[25]Similarly, plaintiffs have not proffered facts that could demonstrate a "concerted action" between the defendants as required for plaintiffs' section 1 claims (counts IV & V). See Cosmetic Gallery, Inc. v. Schoeneman Corp., 495 F.3d 46, 55 (3d Cir. 2007) ("[u]nilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation.") (citation omitted); Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 182 (3d Cir. 1988) ("[A] plaintiff must plead the essential facts of a horizontal restraint or group boycott in order to plead either properly. . . . A general allegation of conspiracy without a statement of facts is an allegation of a legal conclusion and insufficient to constitute a cause of action.") (quoting Black & Yates v. Mahogany Ass'n, 129 F.2d 227, 231-32 (3d Cir. 1941)) (internal quotations omitted).

This deficiency is especially troubling considering that the dealers had no rational motive to join a conspiracy with Dentsply which would limit the dealers' ability to sell a variety of products to its customers. See U.S. v. Dentsply, 399 F.3d at 192 (dealers "provide laboratories the benefit of 'one stop shopping' and extensive credit services. Because dealers typically carry the products of multiple manufacturers, a laboratory can order, with a single phone call to a dealer, products from multiple sources."). Dismissal of these counts, therefore, is appropriate on this alternate ground. See Brunson Communs., Inc. v. Arbitron, Inc., 239 F. Supp. 2d 550, 562 (E.D. Pa. 2002) ("[U]nder any theory, Plaintiff has not alleged the essential statutory element of concerted activity. . . The facts alleged in the Amended Complaint are extremely vague and do not

the court finds that plaintiffs have not sufficiently pled a section 2 conspiracy to monopolize claim. See In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d at 733-34 (granting defendant's motion to dismiss conspiracy to monopolize claim under similar circumstances).

## V. CONCLUSION

For the aforementioned reasons, plaintiffs' motion for summary judgment in the Hess action (Civ. No. 99-255, D.I. 256) is denied, and each of the motions to dismiss in the Jersey Dental action (Civ. No. 01-267, D.I. 264, 266, 274, 279) are granted. An order shall follow.

---

sufficiently describe any contract, combination or conspiracy") (dismissing section 1 claim).