IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
HOWARD HESS DENTAL LABORATORIES :
INCORPORATED and PHILIP GUTTIEREZ d/b/a :
DENTURES PLUS, on behalf of themselves and all others :
similarly situated, :
:
      Plaintiffs, :    C.A. No. 99-255 (SLR)
:
  -against- :
:
DENTSPLY INTERNATIONAL, INC., :
:
      Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO
SUPPLEMENT THE RECORD, AND REQUESTING THAT THE COURT'S PRIOR
ORDER BE AMENDED TO REFLECT SUCH SUPPLEMENTATION**

Pamela S. Tikellis (No. 2172)
Robert J. Kriner, Jr. (No. 2546)
Scott M. Tucker (No. 4925)
CHIMICLES & TIKELLIS LLP
One Rodney Square
P.O. Box 1035
Wilmington Delaware 19801
(302) 656-2500

Thomas A. Dubbs
Richard T. Joffe
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
(212) 907-0700

October 30, 2007

# **TABLE OF CONTENTS**

                                                                                                       **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING ...................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 8

STATEMENT OF FACTS ............................................................................................................ 8

        Dr. Hartman's Expert Opinion .......................................................................... 8

        Government Evidence ..................................................................................... 10

        Testimony of Dentsply's Expert ..................................................................... 11

        Testimony of Dentsply's Tooth Products Manager ........................................ 12

ARGUMENT ............................................................................................................................... 12

I        PLAINTIFFS' EVIDENCE SUBMITTED HEREIN SHOULD BE INCLUDED
         IN THE SUMMARY JUDGMENT RECORD ................................................ 12

II       THE ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
         JUDGMENT SHOULD BE AMENDED TO REFLECT THAT THE RECORD
         HAS BEEN SUPPLEMENTED AS INTENDED BY THE ORIGINAL ORDER ......... 13

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................6

## INTRODUCTION

By Order, dated September 26, 2007, the Court denied Plaintiffs' motion for summary judgment and injunctive relief on their claim herein against Dentsply for monopoly maintenance.

Subsequently, for reasons described, *infra*, Plaintiffs stipulated to the dismissal, with prejudice, of all of their other claims and requests for relief herein, and the stipulation has been "so ordered."

The Court's order denying Plaintiffs' motion for summary judgment raises a question regarding whether Plaintiffs have any additional evidence to proffer regarding the two alternative grounds on which the Court denied Plaintiffs' motion. In order to answer that question, Plaintiffs now move to supplement the record with such additional relevant evidence as they have to proffer, and request that the Court amend the order denying Plaintiffs' motion for summary judgment, to reflect the fact, nature and any effect of such supplementation.

For the reasons described below, Plaintiffs do not expect that such supplementation and amendment will reverse the Court's prior decision, but Plaintiffs do expect that such supplementation and amendment will serve both justice and judicial efficiency by rendering the amended order, as it applies herein, ripe for appeal, and by thus advancing the ultimate termination of this litigation.

## NATURE AND STAGE OF THE PROCEEDING

On April 21, 1999, Plaintiffs filed the Complaint herein against the sole Defendant, Dentsply Int'l, Inc. D.I. 1.

The Complaint pleads causes of action, based on Dentsply's exclusive dealing, for monopoly maintenance, attempt to monopolize, and conspiracy to monopolize, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as conspiracy to restrain trade in violation

of Section 1 of the Sherman Act, 15 U.S.C. § 1, and restraint of trade in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14.  D.I. 1, at 18-25.

The Complaint alleges that the relevant market is "the market for prefabricated, artificial teeth in the United States," alleges that each of the named Plaintiffs is a dental laboratory purchaser of artificial teeth manufactured by Dentsply, and purports to bring this action as a class action on behalf of all dental laboratories who have purchased Dentsply teeth through Dentsply dealers, or lost the opportunity to buy other manufacturers' teeth, during the period from January 1, 1987, through the filing of the Complaint.  D.I. 1, ¶¶ 4-5, 8, 10.

The Complaint asks for both damages and equitable relief—the latter including an injunction as well as a declaratory judgment.  D.I. 1, ¶¶ 58, 64, 71, 80, 86 and Prayer for Relief.

Several months prior to Plaintiffs filing the Complaint, on January 5, 1999, the Government filed suit against Dentsply regarding the same exclusive dealing conduct alleged herein.  D.I. 258 at Ex. A (Complaint in the Government's action).  The Government's complaint pled, *inter alia*, just a single cause of action under Section 2 of the Sherman Act—alleging Dentsply has "abused its monopoly power in the relevant market."  Like Plaintiffs' complaint, the Government's complaint alleged that the relevant market is "the sale of prefabricated, artificial teeth in the United States."  The Government's complaint requested only equitable relief.  D.I. 258, at Ex. A, at Introductory Para., ¶¶ 5, 40-44, & Request for Relief.

Although the Complaint herein adds causes of action not pled by the Government—*i.e.*, for attempt to monopolize and conspiracy to monopolize—and asks for relief not asked for by the Government—*i.e.*, money damages—the allegations of unlawful conduct by Dentsply are the same in both complaints.  In his Opinion, dated October 29, 1999, determining Dentsply's motion for consolidation of pretrial proceedings in this case, the Government's case, and a third

2

case then pending, Senior District Judge Murray M. Schwartz stated that there was a "virtual correspondence of the substantive antitrust allegations in the three cases," and that such allegations in the three complaints were "nearly identical." D.I. 64, at 7, 9.

On April 3, 2000, Dentsply moved for summary judgment against Plaintiffs on, among other grounds, that Plaintiffs lacked standing under the rule of *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), to recover damages from Dentsply, because only Dentsply's dealers are direct purchasers from Dentsply.

In a Memorandum Opinion and Order, dated March 30, 2001, the Court granted Dentsply's motion "to the extent that the *Hess* plaintiffs seek damages." *United States v. Dentsply Int'l, Inc.*, No. CIV. A. 99-005-SLR, 99-255-SLR, 99-854-SLR, 2001 WL 624807, at *13 (D. Del. Mar. 30, 2001); D.I. 182, at 33. The Court also held that "[Dentsply's] motion is denied to the extent that [the *Hess* plaintiffs] seek injunctive relief." 2001 WL 624807, at *13; D.I. 182, at 33.

By Order, dated January 28, 2004, the Court certified for interlocutory appeal to the Third Circuit its order dismissing Plaintiffs' damages claims against Dentsply. D.I. 234.

On September 21, 2005, the Third Circuit issued its decision regarding Plaintiffs' appeal, which, among other things, affirmed the Court's decision dismissing Plaintiffs' damages claims herein against Dentsply. *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363 (3d Cir. 2005).

While the issues regarding Plaintiffs' standing to sue Dentsply for damages were being resolved herein, the Government's case against Dentsply was being resolved on the merits. After a bench trial, the Court entered judgment for Dentsply. *United States v. Dentsply Int'l, Inc.*, 277

F. Supp. 2d 387, 453 (D. Del. 2003) ("Trial Court Decision"), *rev'd*, 399 F.3d 181 (3d Cir. 2005).

The Government appealed, and the Third Circuit reversed, holding that Dentsply's exclusive dealing had "effectively choked off the market for artificial teeth" made by Dentsply's competitors, and that Dentsply is liable for violating Section 2 of the Sherman Act, and instructed the District Court to enter an injunction. *United States v. Dentsply*, 399 F.3d 181, 196-97 (3d Cir. 2005) ("Third Circuit Decision").

Dentsply petitioned for certiorari, and its petition was denied. *See United States v. Dentsply Int'l, Inc.*, 126 S. Ct. 1023 (2006).

On April 26, 2006, the Court issued a final judgment granting the Government an injunction against Dentsply's exclusive dealing practices. *United States v. Dentsply Int.'l, Inc.*, No. Civ. A. 99-005(SLR), 2006 WL 2612167 (D. Del. Apr. 26, 2006).

On October 23, 2006, Plaintiffs herein moved for "summary judgment on their claim against Dentsply for exclusive dealing/monopoly maintenance" in violation of Section 2 of the Sherman Act, and for "an injunction prohibiting the recurrence of Dentsply's unlawful conduct." D.I. 257 at 1 (opening brief); *see* D.I. 256 (motion).

Plaintiffs' argument in support of Dentsply's liability for monopoly maintenance in violation of Section 2 was based entirely on their assertion that Dentsply is collaterally estopped from contesting its liability for monopoly maintenance in violation of Section 2 of the Sherman Act, based on the Third Circuit's decision in *United States v. Dentsply*, 399 F.3d 181 (3d Cir. 2005). *See* D.I. 257 at 10-14. Plaintiffs also argued that they had satisfied the requirements for being awarded injunctive relief, *see* D.I. 257 at 18-24, and that the existence of the Government's injunction against Dentsply's exclusive dealing is not a bar to Plaintiffs also being

4

granted an injunction with provisions that are, at a minimum, overlapping with the provisions in the Government's injunction, *see* 16-29.

Because Plaintiffs' claim against Dentsply for monopoly maintenance is Plaintiffs' only claim that has the same elements as the claim proven by the Government, Plaintiffs moved for summary judgment only on their claim for monopoly maintenance.

On September 26, 2007, the Court issued a memorandum opinion and order, which, among other things, denied Plaintiffs' motion. See D.I. 271 (memorandum opinion); D.I. 272 (order); (together, the "Order").[1]

The Court denied Plaintiffs motion on each of two **alternative** grounds.

**First**, the Court held that Plaintiffs' collateral estoppel argument failed to prove that plaintiff dental laboratories had suffered "antitrust injury" as a consequence of Dentsply's exclusive dealing, and that, without proof of having suffered antitrust injury, Plaintiffs could not prove they were entitled to an injunction. Order at 14, 16.

Although the Court acknowledged the Third Circuit's conclusion that Dentsply's exclusive dealing had the effect of "impairing the laborator[ies] choice in the marketplace," Order at 14, the Court concluded that Plaintiffs had not proven that they had suffered antitrust injury, because the Third Circuit had not found that Plaintiffs had been subject to such injuries as "higher prices paid" or "lost profits as the result of Dentsply's exclusionary practices." Order at 14, 15.

**Second**, the Court denied Plaintiffs' motion "**on the alternative basis**" that, given the existence of the Government's injunction against Dentsply's exclusive dealing, plaintiffs "fail to

---

[1] Page numbers in citations to the Order refer to page numbers in the memorandum opinion part of the Order.

5

demonstrate a need for further, non-duplicative measures to those already in place." Order at 17 (emphasis added).[2]

     Finally, in a footnote, the Court added the following:

> It appears as though the record in this case is closed; it is unclear to the court whether plaintiffs have, but did not put forward, evidence sufficient to demonstrate antitrust injury and that additional injunctive relief is warranted (notwithstanding the presence of the government's injunction). The court will provide a mechanism for the parties to address these issues.

Order at 17 n.12.[3]

     On October 26, 2007, the parties filed a stipulation and proposed order dismissing **with prejudice** all of the counts in the complaint that were not at issue in Plaintiffs' motion for summary judgment—*i.e.*, counts I, III, IV and V—and "Plaintiffs' requests for declaratory relief, as to all Counts, including Counts I through V." Because the Third Circuit's *Hess* decision previously denied Plaintiffs standing to recover damages on any and all of their claims, and because the part of this Court's Order that denied Plaintiffs' request for an injunction, if well grounded, would be equally applicable to any and all of Plaintiffs' claims, the continuing pendency of the claims not addressed by the Order would have served no purpose except to prevent the Order from becoming a final judgment as regards the *Hess* case.

---

[2] Plaintiffs do not agree with either the Order's conclusions or its reasoning regarding either of the alternative grounds on which the Order denied Plaintiffs' motion for summary judgment and injunctive relief.

[3] Because Dentsply had not cross moved for summary judgment dismissing Plaintiffs' claim for monopoly maintenance, arguably, the Court could not grant Dentsply summary judgment, *sua sponte*, without first giving Plaintiffs an opportunity to submit all of the evidence that they have that they can use for the purpose of defending against such a dismissal, not limited to the evidence that Plaintiffs submitted in support of their own motion. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence").

On October 29, 2007, the stipulation of dismissal of Plaintiffs' claims and requests for relief not at issue in the Order was "so ordered" by the court, and on October 30, 2007, such order was entered.

In response to the Court's statement in the Order, in footnote 12, Plaintiffs now move the Court to supplement the summary judgment record with the evidence that Plaintiffs are submitting herein, and to amend the Order to reflect that such supplementation has been made.

Specifically, Plaintiffs move to supplement the record with additional evidence that Plaintiffs suffered an antitrust injury of the type that the Order held was necessary in order for Plaintiffs to prove Dentsply's liability and Plaintiffs' entitlement to an injunction, *i.e.*, evidence that Dentsply's exclusive dealing resulted in "higher prices paid" by plaintiffs than they would have paid in the absence of such anticompetitive conduct by Dentsply.

Because the issue of whether Plaintiffs have proven that they suffered antitrust injury is only one of two alternative grounds on which the Order denied Plaintiffs' motion, and because Plaintiffs are not submitting any additional evidence relevant to the second ground—which, in Plaintiffs' view, essentially is a question of law[4]—it is reasonable to assume that the supplementation requested herein will not change the Order's determination of Dentsply's liability and/or Plaintiffs' right to injunctive relief.

However, in view of the stipulated dismissal with prejudice of Plaintiffs' other claims, it is reasonable to expect that, following such supplementation of the record as is requested herein,

---

[4] To the extent that there is a factual component to the issue of whether Plaintiffs have proven their entitlement to injunctive relief despite the presence of the Government's injunction, Plaintiffs have argued, first, that any future injury to them from continued exclusionary conduct by Dentsply will be irreparable, because, as indirect purchasers from Dentsply, Plaintiffs have been held barred from recovering any damages from Dentsply regarding such conduct (*see* D.I. 257 at 22), and, second, that, the deterrent effect of an injunction enforceable by Plaintiffs will be greatly enhanced by the fact that there are approximately 7,000 dental laboratories that use artificial teeth to make dentures (*id.* at 23 (citing 399 F.3d at 185)).

7

and amendment of the Order to reflect such supplementation, the Order will dispose of this case finally, and, having done such, will be ripe for appeal.

## SUMMARY OF ARGUMENT

The Order reasonably raises a question regarding whether Plaintiffs have any additional evidence regarding either of the grounds on which the Court denied Plaintiffs' request for summary judgment.

Plaintiffs should be permitted to answer that question by supplementing the record, and the answer should be acknowledged by an amendment being made to the Order.

Because Plaintiffs are offering supplemental evidence regarding only one of the two alternative grounds on which the Court denied Plaintiffs' motion for summary judgment, Plaintiffs do not expect that the original determination in the Order will be reversed by any amendment.

Nevertheless, because Plaintiffs have stipulated to the dismissal of all of their other claims and requests for relief herein, other than those addressed by the Order, such supplementation of the record and amendment of the Order as Plaintiffs request by this motion will serve justice and judicial efficiency, by rendering the Order ripe for appeal, and by thus advancing the ultimate termination of this litigation.

## STATEMENT OF FACTS

### Dr. Hartman's Expert Opinion

Plaintiffs' evidentiary appendix to their brief, filed on May 3, 2000, in opposition to Dentsply's motion for summary judgment based on, among other things, *Illinois Brick* (*see* D.I. 153) contained, among other things, the report of Plaintiffs' expert, Dr. Raymond S. Hartman, dated February 29, 2000, which previously, already had been served on Dentsply, *see* D.I. 120 (certificate of service). *See* Appendix hereto ("App.") at A-1 to A-106.

8

Dr. Hartman's qualifications are set forth at A-1 to A-3, and A-47 to A-65.

Dr. Hartman opined that Dentsply's exclusive dealing **raised the prices of artificial teeth to dental laboratories**. App. at A-37 to A-39, and A-42 to A-43 (¶¶ 36-37, 43).

In order to calculate what the "but-for" prices of Dentsply teeth would have been during 1987-1999, in the absence of Dentsply's exclusive dealing policies, Dr. Hartman compared Dentsply's gross profit margins for their teeth—which were sold subject to Dentsply's exclusive dealing policies enforced by Dentsply's market power—with Dentsply's gross profit margins for their merchandise product lines—which were sold in markets not subject to Dentsply's exclusive dealing policies enforced by Dentsply's market power. App. at A-39 to A-43 (¶¶ 38-43). In the absence of Dentsply's exclusive dealing policies for its teeth, Dentsply's profit margins should have come down to a level roughly similar to the profit margins on their merchandise produce lines, and Dentsply's tooth prices should have come down by a similar percentage to the drop in Dentsply's profit margins. *Id.* Dr. Hartman calculated that, "but for" Dentsply's exclusive dealing policies, the price to dental laboratories of Dentsply's teeth would have been "34% to 53% lower." App. at A-6 (¶ 10(g)) and A-42 to A-43 (¶ 43).

Dr. Hartmann further calculated that, as a result of the artificial price rise resulting from Dentsply's exclusive dealing policy, the "class-wide overcharges" to dental laboratories during 1987-1999 "range from $225 million to $351 million," depending on which of several "but for" scenarios is applied. App. at A-42 to A-43 (¶ 43). Dr. Hartman also opined that "[g]iven the fact that Dentsply is the dominant firm and price leader in this market, and given the fact that competitive rivals are price followers, the prices of rival artificial teeth have been higher than they would have been absent Dentsply's foreclosure." App. at A-38 (¶ 36(f)).

9

**Government Evidence**

Plaintiffs' evidentiary appendix to their brief, filed on May 3, 2000, in opposition to Dentsply's motion for summary judgment based on, among other things, *Illinois Brick* (*see* D.I. 153) also contained, among other things, the report of the Government's expert, Dr. David Reitman. *See*, *e.g.*, App. at A-107 to A-109.

Dr. Reitman's qualifications are set forth at A-107, and A-139 to A-141.

Dentsply's exclusive dealing policy was formalized in what Dentsply referred to as "Dealer Criterion 6." 399 F.3d at 185. Referring to Dealer Criterion 6, Dr. Reitman opined that "[p]rices that dental labs pay for artificial teeth are higher than they would be without the exclusionary provision." App at A-108 to A-109.

Dr. Reitman further opined that:

> [a]s dealers start distributing other brands of artificial teeth, the prices charged by Dentsply and its competitors should fall. The price that maximizes profits for each manufacturer depends on the price elasticity of demand for its products, which is defined as the percentage that the output sold increases if the price of its product is cut by one percent, holding the prices of competing brands constant. Having competing brands available through current Dentsply dealers will tend to increase the demand elasticity for the brands carried since, with multiple brands available at the same outlet, it is simpler for labs to substitute between the various choices that match the instructions of the dentist and the requirements of their patients. These lower switching costs make it more likely that labs will substitute among suitable brands in response not only to such things as stock-outs at the dealer but also to price differences. The demand elasticity would also tend to increase because the brands are less differentiated in terms of the service that accompanies the brand. Again, economic theory predicts that products that are less differentiated will have more elastic demand, as customers are more willing to substitute among products that are more similar.

App. at A-130.

During the trial of the Government's case, as the Third Circuit found, based on its review of the record, "experts for both parties testified that were Dealer Criterion 6 abolished prices would fall." 399 F.3d at 190-91; *see* Order at 15 (quoting Third Circuit's decision).

10

The Government's expert, Dr. David S. Reitman, testified during the trial that "I believe that Dentsply's exclusionary policies have a significant anti-competitive harm." Declaration of Richard T. Joffe, signed on October 29, 2007 ("Joffe Decl."), at Exhibit A, page 1463, lines 8-9. Dr. Reitman continued that, because of Dealer Criterion 6, "[c]onsumers would end up paying higher prices and not always getting the best choice for the case that comes along in their dentures." *Id.* at page 1463, lines 14-16. "[T]he policy has resulted in higher prices in the market." *Id.* at page 11527, lines 1-2. "[I]f we get rid of the exclusionary policy, prices will be lower in the marketplace." *Id.* at page 1528, lines 19-20. Dr. Reitman added that, if you remove Dealer Criterion 6, "you get lower prices and you see those effects in the short and long run." *Id.* at page 3903, lines 20-21.

Although a survey taken by the Government was excluded from the evidence at trial, Dr. Reitman testified that he already had formed his opinion regarding the qualitative effects of Dealer Criterion 6, if not the quantitative amount of such effects, prior to his having reviewed the results of the Government's survey. *See id.* at page 1463, line 17, to page 1464, line 22; and page 3904, lines 17 to 18. Thus, Dr. Reitman's testimony regarding the qualitative effects of Dealer Criterion 6 was independent of any review by him of the Government's survey results, and stands on its own.

**Testimony of Dentsply's Expert**

Also during trial of the Government's case, Dentsply's expert, Professor Howard P. Marvel (*see* Joffe Decl, Exhibit B, at page 3532, lines 11-13), testified as follows:

11

>   Question:  "[L]et's say Dentsply's policy is pro-competitive, but Dealer Criterion 6 is withdrawn.  Would you expect in that circumstance for prices to fall?"
>
>   Answer:  "Sure."
>
>   Question:  "And let's take the opposite, Dentsply Criterion 6 is anti-competitive and Dealer Criterion No. 6 is removed.  Would you expect prices to fall?"
>
>   Answer:  "Yes."

Joffe Decl. at Exhibit B, page 3649, line 18, to page 3650, line 1.

### Testimony of Dentsply's Tooth Products Manager

Also during trial of the Government's case, there was testimony by William B. Turner. Mr. Turner was Senior Product Manager for Trubyte's tooth products from 1993 until 2002, and "concerning tooth pricing," he "consulted with division management on annual price increases and pricing adjustments." Joffe Decl. at Exhibit C, at pages 400-404.  Mr. Turner testified that "[a]s the price leader, Dentsply usually sets the prices in the marketplace and everyone else contributes or competes under that broad umbrella."  *Id.* at page 456, lines 6-8.  Mr. Turner also testified that, for the purpose of determining the prices of Dentsply's teeth, Dentsply did not look at the tooth prices of any other tooth manufacturer. *Id.* at 456.

## ARGUMENT

### I

### PLAINTIFFS' EVIDENCE SUBMITTED HEREIN SHOULD BE INCLUDED IN THE SUMMARY JUDGMENT RECORD

The Order raises a question regarding whether Plaintiffs have any additional evidence regarding either of the grounds on which the Court denied Plaintiffs' request for summary judgment.

Plaintiffs should be permitted to answer that question by supplementing the record with the evidence contained on the specific pages in the Appendix hereto and in the exhibits to the Declaration of Richard T. Joffe, referenced in the Fact section, *supra*.

Plaintiffs acknowledge that their supplementation is not likely to cause a reversal of the Court's position regarding Plaintiffs' motion, because Plaintiffs are offering supplemental evidence regarding only one of the two alternative grounds on which the Court denied Plaintiffs' motion for summary judgment.

Nevertheless, as demonstrated by the citations in the Fact section, *supra*, Plaintiffs do have additional evidence to submit, at least regarding the question of whether they have suffered antitrust injury.

Justice requires that Plaintiffs be permitted to supplement the summary judgment record with such additional evidence as they have; and judicial efficiency—as well as justice—requires that Plaintiffs' opportunity to complete the record regarding the claim addressed by the Order not be delayed.

II

**THE ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE AMENDED TO REFLECT THAT THE RECORD HAS BEEN SUPPLEMENTED AS INTENDED BY THE ORIGINAL ORDER**

By this motion Plaintiffs are providing such additional evidence as they have and can submit in response to the question stated in footnote 12 of the Order, and are representing that they have no other evidence responsive to the question in footnote 12 that they can submit.

Because the question in footnote 12 of the Order will have been answered by the granting of Plaintiffs' request to supplement the record and by the nature of that supplementation, the Order should be amended to reflect the fact that the question in footnote 12 has been answered, and to reflect the content and effect of the answer.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court issue an order that Plaintiffs' additional evidence cited in the Fact section, *supra*, is deemed part of the summary judgment record, and amending the Order (D.I. 271 and D.I. 272) to reflect the fact, nature and effect of such supplementation.

Dated: October 30, 2007

                                              CHIMICLES & TIKELLIS LLP

                                              /s/ Scott M. Tucker
                                              Pamela S. Tikellis (No. 2172)
                                              Robert J. Kriner, Jr. (No. 2546)
                                              Scott M. Tucker (No. 4925)
                                              One Rodney Square
                                              P.O. Box 1035
                                              Wilmington, Delaware 19801
                                              (302) 656-2500

                                              and

                                              LABATON SUCHAROW LLP
                                              Thomas A. Dubbs
                                              Richard T. Joffe
                                              140 Broadway
                                              New York, New York 10005
                                              (212) 907-0700

                                              Attorneys for Plaintiffs